UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,
ALLSTATE FIRE AND CASUALTY INSURANCE
COMPANY,
ALLSTATE NORTH AMERICAN INSURANCE
COMPANY,
ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY, and
ALLSTATE COUNTY MUTUAL INSURANCE
COMPANY,

          Plaintiffs,

v.

SOHAIL ROOPANI,
PIONEER HEALTHCARE, LLC,
SUNNY TRAIL INVESTMENTS, LLC D/B/A
EDLOE VENTURES,
FMCH, LLC D/B/A ELITE HEALTH SERVICES,
EDLOE HEALTH, LLC,
ELITE GP, LLC,
ELITE HS HOLDCO, L.P.,
ELITE HSR, LLC,
CLAY HEALTHCARE SERVICES, LLC D/B/A
EDLOE IMAGING - WEST HOUSTON AND
D/B/A ELITE HEALTH SERVICES-WEST
HOUSTON,
MED CENTER HEALTHCARE SERVICES, L.P.
D/B/A EDLOE IMAGING - MEDICAL CENTER
AND D/B/A ELITE HEALTH SERVICES –
MEDICAL CENTER,
GRAND PARKWAY IMAGING & SLEEP
CENTER, INC. D/B/A EDLOE IMAGING -
SUGAR LAND AND D/B/A ELITE HEALTH
SERVICES – SUGAR LAND,
FOCUS MEDCARE, INC. D/B/A EDLOE
IMAGING - BAYTOWN,
CORE MD MANAGEMENT, PLLC F/K/A CORE
MD MANAGEMENT, LLC,
CENTERS FOR PAIN RELIEF, PLLC,

C.A. No.: ___

1

PRIME ORTHOPEDIC, PLLC,
OLYMPIC SPINE AND JOINT, PLLC,
PAIN ALLEVIATION AND INTERVENTIONAL
NEEDS, PLLC F/K/A PAIN ALLEVIATION AND
INTERVENTIONAL NEEDS, LLC,
ANIL ROOPANI,
RAHIL ROOPANI, M.D.,  and
BARKETALI ROOPANI,

Defendants.

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate North American Insurance Company, Allstate Vehicle and Property Insurance Company, and Allstate County Mutual Insurance Company (collectively, "Allstate" and/or "plaintiffs"), by their attorneys, King, Tilden, McEttrick & Brink, P.C., allege as follows:

## I.     INTRODUCTION

1.      Sohail Roopani ("Sohail") and his co-conspirators, Barketali Roopani ("Barketali"),  Anil Roopani ("Anil"), Rahil Roopani, M.D. ("Dr. Rahil") (hereinafter collectively referred to as the "Roopani family"), by and through the their managerial businesses, Sunny Trail Investments, LLC d/b/a Edloe Ventures; Pioneer Healthcare, LLC ("Pioneer Healthcare"); Edloe Health, LLC (formerly FMCH, LLC d/b/a Elite Health Services ("FMCH"); Elite GP, LLC ("Elite GP"); Elite HSR, LLC ("Elite HSR"); and Elite HS Holdco, L.P. ("Elite HS Holdco") (hereinafter referred to collectively as "Roopani managerial businesses"), and the healthcare businesses, Clay Healthcare Services LLC d/b/a Edloe Imaging - West Houston ("EHS-Clay"); Med Center Healthcare Services, L.P., ("EHS-Med Center"); Grand Parkway Imaging & Sleep Center, Inc. d/b/a Edloe Imaging - Sugar Land ("EHS-Grand Parkway"); Focus Medcare Inc. d/b/a Edloe Imaging - Baytown ("EHS-Focus"); Core MD Management, PLLC ("Core"); Centers for Pain

2

Relief, PLLC ("CPR"); Prime Orthopedic, PLLC ("Prime"); Pain Alleviation and Interventional Needs, PLLC ("PAIN")  and Olympic Spine and Joint, PLLC ("Olympic") (hereinafter referred to collectively as the "Roopani healthcare businesses"), devised and executed a scheme to defraud Allstate by submitting and causing to be submitted false and fraudulent records and bills ("false medical documentation") for unnecessary medical services purportedly provided to motor vehicle accident victims (hereinafter referred to collectively as "Allstate claimants"), through the U.S. Mail and/or interstate wires, which sought and collected payment from its intended target, Allstate.

2.      The scheme illustrated below, was intentionally initiated, promoted, financed, operated and/or maintained by the Defendants.

3.      The Defendants' scheme involved intentional fraudulent conduct, including:

- Unlawful and improper ownership and/or control of named medical facilities;

- Unlawful patient self-referrals;

- Unlawful and improper fee-splitting and patient referral agreements with others, which involved illegal kickback payments;

- Ceding medical decision-making to unlicensed laypersons who dictate and control the healthcare services[1] administered to Allstate claimants;

- Fraudulently billed for medically unnecessary services pursuant to a predetermined treatment protocol regardless of the Allstate claimants' individual medical needs, including unnecessary injections and other medical procedures purportedly performed at Core, PAIN, CPR, Olympic, and Prime;

- Fraudulently billed for services that were not rendered as represented;

- Fraudulently billed for services that were not rendered; and

---

[1] The term "healthcare services" shall include medical consultations, treatment, procedures, and related services.

- Collected and laundered payments issued by Allstate for the above-referenced fraudulent services involving Allstate claimants.

4.    The Defendants intentionally and improperly targeted Allstate by billing Allstate claimants for healthcare services and siphoning payments from insurance proceeds intended to cover the claimants' medical and bodily-injury expenses.

5.    The insurance fraud scheme perpetrated by the Defendants was designed to, and did in fact, result in payments from Allstate to and for the benefit of the Defendants.

6.    The Defendants caused false medical documentation to be mailed and/or wired directly to Allstate.

7.    The Defendants also caused false medical documentation to be mailed and/or wired directly to Allstate claimants and/or their attorneys.  In turn, the Defendants caused Allstate claimants and/or their attorneys to mail and/or wire the false medical documentation directly to Allstate.

8.    In all cases set out and referenced in the attached exhibits, Allstate reasonably relied upon the Defendants' false medical documentation, and the misrepresentations and omissions of material fact contained therein concerning (1) unlawful referrals and kickbacks; (2) layperson control of medical decision-making; (3) fraudulent billing for medically unnecessary healthcare services provided pursuant to a predetermined treatment protocol at grossly excessive charges; (5) fraudulent billing for services that were not rendered as represented; and (6) fraudulent billing for services that were not rendered.

9.    The Defendants intended for Allstate to rely on the representations made in the Defendants' records and bills when determining whether to pay medical expenses and bodily-injury claims.

10. Allstate made payments on these claims based on the Defendants' fraudulent medical documentation, and before it was aware of the fraud.

11. As a result of the Defendants' fraudulent acts, Allstate has paid millions of dollars to resolve insurance claims that were based on the false medical documentation submitted by or on behalf of the Defendants.

12. Allstate made payments to the Defendants in the amount of $426,960.67.

13. Allstate was also caused to make payments based on the Defendants' false billings in connection with bodily-injury claims presented by the Allstate claimants in the amount of $7,478,757.76.

14. By this Complaint, Allstate asserts claims against the Defendants for: (a) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.*; (b) common law fraud; (c) civil conspiracy to commit fraud; and (d) restitution of money had and received.

15. Allstate also seeks declaratory relief that no pending claims submitted to it by, or on behalf of, the Defendants, Core, EHS-Clay, EHS-Med Center, EHS-Grand Parkway, EHS-Focus, PAIN, CPR, Olympic, and Prime are compensable.

## II. THE PARTIES

### A. PLAINTIFFS

16. Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate North American Insurance Company, Allstate Vehicle and Property Insurance Company, and Allstate Fire and Casualty Insurance Company are corporations duly organized and existing under the laws of the State of Illinois, having their principal place of business in Northbrook, Illinois.

17.    Allstate County Mutual Insurance Company is a corporation duly organized and existing under the laws of the State of Texas, having its principal place of business in Irving, Texas.

18.    At all relevant times to the allegations contained in this Complaint, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate North American Insurance Company, Allstate Vehicle and Property Insurance Company, and Allstate County Mutual Insurance Company were each authorized to conduct business in Texas.

B.    **DEFENDANTS**

1.    **Sunny Trail Investments, LLC d/b/a Edloe Ventures**

19.    Sunny Trail was established in 2018.

20.    Since its inception, the listed members of Sunny Trail Investments, LLC have been Sohail, Barketali, Dr. Rahil, and Anil.

21.    In or around November 2023, Sunny Trail assumed the name Edloe Ventures.

22.    The Defendants used the company, which is structured around two primary divisions—realty ventures and healthcare ventures—uses these divisions to commit fraud.

23.    Edloe Realty, the company's real estate arm, controls properties owned by the Roopani family and its businesses, including those housing the Roopani healthcare operations.

24.    The Roopani family used the ill-gotten gains from their insurance fraud scheme to invest in Edloe Realty, which allowed them to use the money without attracting suspicion.

25.    The healthcare division is further broken down into Edloe Health and Edloe Imaging.

26.    As part of a recent rebranding initiative, Edloe Imaging has replaced the Elite Health Services name at all affiliated imaging center locations.

6

27.    Also as part of a recent rebranding initiative, Edloe Health has replaced Elite Health Services as the umbrella entity in charge of all the Roopani healthcare businesses. Edloe Health's control of these Roopani healthcare businesses is fraudulent because Edloe Health is controlled by lay persons. Moreover, Edloe Health's control of all these businesses is further improper because the Roopani Family, directly and through the Roopani managerial businesses, established a predetermined treatment protocol that included predetermined referrals from Core to other Roopani healthcare businesses, regardless of whether the evaluations, treatment, diagnostic testing, or procedures were medically necessary.

28.    Through Edloe Realty, the Defendants by way of Anil, and through the managerial businesses, deposited rent payments for Edloe Imaging, Elite Health Services, and other Roopani healthcare businesses. These rent payments were not legitimate business expenses but were instead designed to launder money that the Defendants received from their fraudulent schemes.

### 2.    Pioneer Healthcare, LLC

29.    Pioneer Healthcare was established in 2013, with its initial managers listed as Sohail, Barketali, and Barketali's brother, Firozali Roopani ("Firozali").

30.    Sohail has served as the managing member of Pioneer Healthcare since 2014.

31.    Since at least 2014, and continuing to the present, Pioneer Healthcare has held a 100% ownership interest in Elite GP, LLC.

32.    As of 2022, the listed members of Pioneer Healthcare include Sohail, Anil, Barketali, Dr. Rahil.

7

### 3.    FMCH, LLC d/b/a Elite Health Services

33.    FMCH, LLC was formed by Sohail in 2010.

34.    In 2013, FMCH, LLC assumed the name and began doing business as Elite Health Services.

35.    Sohail has served as the managing member from the company's formation to the present.

36.    Elite Health Services was the umbrella company that controlled the Roopani healthcare businesses before Edloe Health, offering diagnostic imaging, occupational health, pain management, and injection procedures. Elite Health Services' control of these businesses was fraudulent because it was controlled by lay persons. Moreover, Elite Health Services' control was further improper because the Roopani family, both directly and through their managerial businesses, established a predetermined treatment protocol that included predetermined referrals from Core to other Roopani healthcare businesses, regardless of whether the evaluations, treatment, diagnostic testing, or procedures were medically necessary.

37.    On information and belief, Elite Health Services owns the property located at 3711 Garth Road, Baytown, Texas 77521.

38.    The location at 3711 Garth Road, Baytown, Texas 77521, is where other Roopani healthcare businesses, including but not limited to EHS-Focus, Core, and CPR, are located and have provided fraudulent medical services to Allstate claimants.

### 4.    Edloe Health, LLC

39.    Edloe Health was formed in 2023, with Anil listed as the initial manager.

40.    Edloe Health is a branch of Edloe Ventures' healthcare division.

41.    Sohail serves as Edloe Health's president and CEO.

8

42.     As part of a recent rebranding initiative, Edloe Health has replaced the Elite Health Services name as the umbrella entity in charge of all the Roopani healthcare businesses.

### 5.     Elite HSR, LLC

43.     Elite HSR was formed in 2013, with Sohail serving as the managing member since its inception.

44.     From 2013 until about 2021, the company's members were Sohail, Barketali, Firozali, and Anil. The membership changed in 2022, and the current members are Sohail, Anil, Barketali, and Dr. Rahil.. Since 2022, Elite HSR has held a majority ownership in Elite HS Holdco, owning 91% in 2022 and 89% from 2023 to the present.

45.     Additionally, Elite HSR has been listed as the manager of Elite GP, LLC since 2025.

### 6.     Elite HS Holdco, L.P.

46.     Elite HS Holdco was formed in 2013, with Elite GP as its sole partner.

47.     Since its inception, Sohail has served as the director and managing partner.

48.     Since 2016, Elite HS Holdco has wholly owned Elite HS Staffing, LLC. Additionally, since approximately 2021, Elite HS Holdco has held majority ownership interests in the following entities: Prime Orthopedic Management, LLC; Elite HS Management, LLC; EHS-Med Center; EHS-Clay; and non-party PA Management, LLC, among others.

### 7.     Elite GP, LLC

49.     Elite GP was formed in 2013 with Sohail, Barketali, Firozali, and Anil as its original members.

50.     From 2014 to 2021, Pioneer Healthcare served as the managing member and continuously owned 100% of Elite GP, maintaining complete ownership and control. Since 2022,

the listed members of Elite GP have been Sohail (as the managing member), Anil, Barketali, and Dr. Rahil.

51.    In 2025, the governance structure was amended to replace all individual managers with Elite HSR, LLC as the sole manager.

**8.    Sohail Roopani**

52.    Sohail is a resident and citizen of the State of Texas.

53.    Sohail is identified as the principal architect behind the fraudulent scheme discussed in this Complaint.

54.    Sohail is a layperson.

55.    Sohail currently serves as a partner at Edloe Ventures, and as the president and CEO of Edloe Health. In this role, Sohail has admitted that he manages "orthopedic clinics" and "pain management" clinics in the Greater Houston area.

56.    A true and accurate excerpt from Sohail's Facebook account is below:

## About

I am the President and CEO of Edloe Health, which are diagnostic imaging centers, manage orthopedic clinics, pain management and family practice that service the greater Houston area. As the CEO I get to take part in creating a comfortable environment that provides affordable imaging to those on their journey to healthy living.

Thanks to our incredible medical staff and the amazing care they give our patients, we have been growing rapidly and have four easily accessible locations as of 2019. I encourage you to check out our website to learn more!

57.    Sohail owned, controlled and managed each of the entities involved in case, either directly or indirectly, including Sunny Trail, the Roopani managerial businesses, and the Roopani healthcare businesses.

58. Sohail knowingly, intentionally and personally created, implemented and directed a multifaceted scheme involving both fraudulent billing and illegal renumeration of patient referrals in direct violation of Texas law.

59. Despite lacking the necessary medical license, Sohail exercised control and direction over the provision of medical services throughout each of the Roopani healthcare businesses.

60. Sohail directed the company to submit claims for reimbursement to federal and/or private healthcare programs for medical services that were never actually provided to patients, or were fraudulently misrepresented.

61. Sohail orchestrated and established unlawful medical referral arrangements between the businesses he controlled and other external healthcare providers or facilities.

62. These arrangements involved the knowing and willful offer or payment of remuneration (a kickback, bribe, or anything of value) to these other providers to induce or reward the referral of patients to the Roopani healthcare businesses.

63. Because Sohail directly participated in the operation and management of the Roopani managerial businesses and the Roopani healthcare businesses throughout the course of this scheme, Sohail is responsible for the fraudulent services rendered to Allstate claimants, and is thus jointly and severally liable for the payments that Allstate was wrongfully induced to make to and on behalf of the Roopani healthcare businesses.

### 9. **Barketali Roopani**

64. Barketali is a resident and citizen of the State of Texas.

65. Barketali is a layperson.

11

66.     Barketali, despite lacking formal medical training, is identified as holding managerial or membership roles in numerous Roopani healthcare businesses and their associated ownership or management entities.

67.     He currently serves as an advisor for Edloe Ventures.

68.     Based on information and belief, Barketali co-founded Elite Health Services, now known as Edloe Health.

69.     Barketali  has managed EHS-Grand Parkway as its director and president.

70.     Based on information and belief, Barketali continues to be a member of PAIN.

71.     Barketali is also the managing member of non-party Roop Clay Properties, LLC, and the owner of its assets.

72.     Based on information and belief, Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

73.     4001 W Sam Houston Parkway North, Houston, Texas 77043 is among the locations where multiple Roopani healthcare businesses conduct their operations and fraudulent activity.

74.     Barketali participated in the scheme, discussed throughout this complaint, as a controlling financial principal and active co-conspirator in the creation, maintenance, and concealment of the multifaceted fraud scheme discussed herein. Barketali leveraged his considerable real estate holdings, specifically his ownership of several properties that housed the Roopani healthcare businesses and related medical providers, to enforce adherence to the illegal scheme. This property ownership was used as economic leverage to pressure medical providers to comply with the directives of Sohail and his family. The threat of non-renewal of favorable leases

or other adverse real estate action was a key mechanism used by Barketali to force providers to engage in, or turn a blind eye to, the scheme of fraudulent billing and illegal referrals.

75.    Because he directly participated in the operation and management of the Roopani managerial businesses and the Roopani healthcare businesses throughout the course of this scheme, Barketali is responsible for the fraudulent services rendered to Allstate claimants, and is thus also jointly and severally liable for the payments that Allstate was wrongfully induced to make to and on behalf of Roopani healthcare businesses.

### 10.    **Rahil Roopani**

76.    Dr. Rahil is a resident and citizen of the State of Washington.

77.    Dr. Rahil is a licensed physician in the State of Texas, with medical license number R4628.

78.    Dr. Rahil is one of the partners at Edloe Ventures.

79.    Dr. Rahil was the president / director of PAIN, since around 2018.

80.    Dr. Rahil has held the title of president of CPR since around 2020.

81.    Dr. Rahil knowingly conspired with his family to allow the use of his professional credentials, medical license, and federal provider numbers to operate the Roopani healthcare businesses, despite his full-time commitment to his out-of-state hair restoration practice. This action was essential to the fraud, as it enabled the submission of thousands of false claims to Allstate and others, creating the false pretense of legitimacy that services (whether rendered or not) were overseen by a licensed physician.

82.    As the physician of record and the only licensed physician purportedly involved, Dr. Rahil possessed a non-delegable legal duty to ensure that all services billed at these clinics were medically necessary and properly performed. By being physically absent and delegating all

control over treatment, billing, staffing, and financial aspects to his unlicensed family members (led by Sohail), he abdicated his mandatory supervisory responsibilities, thereby facilitating the submission of fraudulent claims and endangering patient care.

83.    Dr. Rahil was as a nominal figurehead, failing to perform the duties of an owner or medical director. Dr. Rahil did not maintain an active physical presence at the facilities, did not participate in medical decision-making, and did not supervise the medical staff.

84.    This arrangement provided a fraudulent cover for the facilities, allowing them to bill insurance companies, including Allstate, for services that were not medically necessary, were not rendered as represented, or at all, and were dictated by a predetermined, one-size-fits-all treatment protocol. As a result, Dr. Rahil is responsible for the fraudulent services rendered to Allstate claimants, and is thus also jointly and severally liable for the payments that Allstate was wrongfully induced to make to and on behalf of the Roopani healthcare businesses.

85.    Because he directly facilitated the operation and management of the Roopani managerial businesses and the Roopani healthcare businesses throughout the course of this scheme, Dr. Rahil is responsible for the fraudulent services rendered to Allstate claimants, and is thus also jointly and severally liable for the payments that Allstate was wrongfully induced to make to and on behalf of Roopani healthcare businesses.

### 11.    <u>Anil Roopani</u>

86.    Anil is a resident and citizen of the State of Texas.

87.    Anil is a layperson.

88.    Anil is a partner at Edloe Ventures.

89.    Anil serves as the Chief Financial Officer ("CFO") of Edloe Health, formerly known as Elite Health Services.

90.     Anil has also been listed as CFO of the following Roopani healthcare businesses, Core, EHS-Med Cetner, and EHS-Grand Parkway.

91.     In his capacity as CFO, Anil was the chief implementer and conspirator of the fraudulent financial structure used by the Roopani healthcare businesses. He actively designed, created, and maintained the internal systems, billing protocols, and documentation that directly led to the submission of thousands of false and fraudulent claims to insurers. His actions were taken with the knowledge and intent to systematically defraud by billing for services that were either not rendered, not medically necessary, or were illegally procured.

92.     Anil had direct, operational knowledge, and control over the financial mechanisms used to commit the fraud. He was personally responsible for implementing the payment processes to illegally compensate third-party providers for patient referrals. As CFO, he ensured the flow of funds for these kickbacks and disguised the illegal remuneration as legitimate business expenses in the financial records to conceal the fraudulent scheme from auditors and regulatory scrutiny.

93.     Anil orchestrated a scheme of money laundering by engaging in financial transactions designed to conceal the nature, source, ownership, and control of the illegal proceeds derived from the healthcare fraud and kickback schemes. He directed the integration of these illicit funds back into the legitimate economy through the acquisition of assets, including the reinvestment into other Roopani businesses and properties, thereby insulating the illegal profits from legal seizure.

94.     Anil is also a member and/or manager of various Roopani healthcare businesses and the managing companies, dating back as far as 2013.

95.     Because Anil directly participated in the operation and management of the Roopani managerial businesses and the Roopani healthcare businesses throughout the course of this

scheme, Anil is responsible for the fraudulent services rendered to Allstate claimants, and is thus jointly and severally liable for the payments that Allstate was wrongfully induced to make to and on behalf of the Roopani healthcare businesses.

### 12. **Core MD Management, PLLC f/k/a Core MD Management, LLC**

96. Core was formed in 2017 as a general limited liability company (LLC), with its principal place of business and official mailing address located at 4001 W Sam Houston Pkwy N, Suite 140, Houston, Texas 77043.

97. Core is a general practice clinic with various locations across Texas that include:

- 19875 Southwest Freeway, Sugar Land, Texas 77479.

- 2416 W Holcombe Blvd, Ste B, in Houston, Texas 77030.

- 3711 Garth Rd, Ste D, in Baytown, Texas 77521.

- 4001 W Sam Houston Pkwy N, Ste. 110 in Houston, Texas 77043.

98. As discussed further below, all of these locations house Elite Health Services imaging centers.

99. At the time of its formation, Core's managing members were listed as Elite GP, LLC and Elite HS Holdco, L.P.

100. Elite GP, LLC and Elite HS Holdco, L.P. are owned and controlled by the Roopani family, with Sohail as the managing member.

101. Since 2018, nurse practitioner Mary Agustin ("Agustin, APRN") has been listed as a member and president of Core.

102. In March 2024, Core transitioned from Core MD Management LLC to Core MD Management PLLC, a Professional Limited Liability Company.

16

103.    As part of this 2024 conversion, Core's governing documents were amended to remove all previously listed managers and appoint Agustin, APRN as the sole manager.

104.    Despite being the sole manager, Agustin allowed the Roopani family, through the Roopani managerial business, to maintain control over Core.

105.    The Roopani family, through the Roopani managerial businesses, used Core as a mechanism to improperly direct Allstate claimants to other Roopani healthcare businesses, often serving as the initial point of contact for Allstate claimants within the Roopani healthcare network.

106.    Allstate claimants consulted at Core offices, which were co-located with other Roopani healthcare businesses, including PAIN, CPR, Olympic, Prime, and Elite Health Services imaging centers.

107.    Although a general practice clinic, Core also allegedly provided x-rays to Allstate claimants, with diagnostic reports authored by Dr. Mustafa Gomberawalla, M.D. ("Dr. Gomberawalla") and Dr. Kristin Coleman, M.D. ("Dr. Coleman").

108.    Core does not possess a license from the Texas Department of State Health Services to have an x-ray machine or provide radiologic imaging services.

109.    The Defendants and/or someone under their direction and control, created fraudulent records and bills for the services purportedly rendered to Allstate claimants.

110.    The operations of Core were based on an unlawful scheme unknown to Allstate when payments were issued.

111.    As part of this scheme, Core billed Allstate for fraudulent healthcare services related to the claimants referenced in this Complaint and its attachments, which are incorporated herein in their entirety.

17

112. The Core records and bills contained material misrepresentations that Allstate relied on when it issued payment.

113. Due to their ownership and control over Core, the Roopani family, by and through, the Roopani managerial businesses, are responsible for the unlawful, unreasonable and medically unnecessary services billed by Core in connection with Allstate claimants.

### 13. Clay Healthcare Services, LLC d/b/a Edloe Imaging - West Houston, formerly d/b/a Elite Health Services-West Houston

114. EHS-Clay was originally established in 2013.

115. In or around 2014, the entity began doing business as Elite Health Services-West Houston.

116. The initial managers/members were Sohail, Nooruddin S. Punjwani, M.D., ("Punjwani"), and Dr. Gomberawalla, but Dr. Gomberawalla was removed as a member later in 2013.

117. EHS-Clay is a diagnostic testing facility located at 4001 W Sam Houston Pkwy N, Suite 140, Houston, Texas 77043, which is Core's principal place of business.

118. Since 2021, EHS-Clay has reported that Elite HS Holdco, L.P. holds a 75% ownership interest in the entity, and EHS-Clay listed its members as Sohail Roopani, Dr. Punjwani, Sohail Alibhai ("Alibhai"), and Abid Sattani ("Sattani").

119. In October 2024, the entity began doing business as Edloe Imaging-West Houston.

120. Sohail served as the managing member from the entity's inception until early 2025.

121. In early 2025, Elite HS Holdco, L.P., replaced Sohail as manager. Sohail is still the director and manager of Elite HS Holdco.

18

122.    Dr. Punjwani served as the Radiation Safety Officer for EHS-Clay from 2013 until 2024, responsible for safety procedures, regulatory compliance, and managing radiation exposure. Since 2024, Dr. Gomberawalla has held this role.

123.    Dr. Gomberawalla and Dr. Coleman were the primary medical providers for EHS-Clay, providing imaging diagnostic reports for Allstate claimants. Based on these reports, claimants were often referred for unnecessary and excessive medical treatment at other Roopani healthcare businesses.

124.    As part of this scheme, Sohail, Dr. Punjwani, Dr. Gomberawalla, Dr. Coleman, and/or someone else under the Roopani family's direction and control, created fraudulent records and bills for services purportedly rendered to Allstate claimants.

125.    These documents contained material misrepresentations that Allstate relied on when it issued payments. Allstate was unaware that the operations of EHS-Clay were based on this unlawful scheme at the time of payment.

126.    Due to their purported ownership and control over EHS-Clay, the Roopani family, by and through the Roopani managerial businesses are responsible for the unlawful, medically unnecessary, and unreasonably charged fees billed by EHS-Clay in connection with Allstate claimants.

**14.    <u>Med Center Healthcare Services, L.P. d/b/a Edloe Imaging –
Medical Center, formerly d/b/a Elite Health Services - Medical
Center</u>**

127.    Elite Health Services - Medical Center, established in 2013, is a diagnostic testing facility located at 2416 W Holcombe Blvd, Houston, Texas 77030. Its official mailing address is 4001 W Sam Houston Pkwy N, Suite 140, Houston, Texas 77043. Again, 4001 W Sam Houston Pkwy N, Suite 140, Houston, Texas 77043 is Core's principal place of business.

128. The facility began operating under the assumed name "Elite Health Service - Medical Center" in 2014, and since 2021, Elite HS Holdco has held a 99% ownership interest. Sohail is the manager and director of Elite HS Holdco. In November 2024, it began doing business as Edloe Imaging-Medical Center.

129. Dr. Punjwani served as the Radiation Safety Officer for EHS-Med Center from 2016 to 2024. Since 2024, Dr. Coleman has been responsible for overseeing safety procedures, ensuring regulatory compliance, and managing radiation exposure.

130. Dr. Gomberawalla and Dr. Coleman were the primary medical providers for EHS-Med Center, creating imaging diagnostic reports for Allstate claimants. These reports were then used to refer claimants for unnecessary and excessive medical treatment from other Roopani healthcare businesses.

131. As part of this scheme, Sohail, Dr. Punjwani, Dr. Gomberawalla, Dr. Coleman, and/or someone else under the Roopani family's direction and control, created fraudulent records and bills for services purportedly rendered to Allstate claimants.

132. These documents contained material misrepresentations that Allstate relied on when it issued payments. Allstate was unaware that the operations of EHS-Med Center were based on this unlawful scheme at the time of payment.

133. Due to their purported ownership and control over EHS-Med Center, the Roopani family, by and through the Roopani managerial businesses are responsible for the unlawful, medically unnecessary, and unreasonably charged fees billed by EHS-Med Center in connection with Allstate claimants.

**15.** **Grand Parkway Imaging & Sleep Center, Inc. d/b/a/ Edloe Imaging – Sugar Land, formerly d/b/a Elite Health Services – Sugar Land**

134.    EHS-Grand Parkway was established in 2011.

135.    EHS-Grand Parkway is a diagnostic testing facility physically located at 19875 Southwest Freeway, Suite 110, Sugar Land, Texas 77479.

136.    EHS-Grand Parkway's official mailing address and principal office is located at 4001 W Sam Houston Pkwy N, Suite 140, Houston, Texas 77043. Again, 4001 W Sam Houston Pkwy N, Suite 140, Houston, Texas 77043 is the principal place of business for Core.

137.    Barketali is the director and president of EHS-Grand Parkway.

138.    In 2011, the entity began doing business as Greatwood Imaging Center.

139.    In November 2023, the entity began doing business as Elite Health Services-Sugar Land.

140.    In October 2024, the entity began doing business as Edloe Imaging-Sugar Land.

141.    On information and belief, Dr. Gomberawalla is the radiation safety officer of EHS-Grand Parkway since 2019, responsible for establishing and overseeing safety procedures, ensuring compliance with regulations, and managing radiation exposure.

142.    Dr. Gomberawalla and Dr. Coleman were the primary medical providers for EHS-Grand Parkway, creating imaging diagnostic reports for Allstate claimants. These reports were then used to refer claimants for unnecessary and excessive medical treatment from other Roopani healthcare businesses.

143.    As part of this scheme, Sohail, Barketali, Dr. Punjwani, Dr. Gomberawalla, Dr. Coleman, and/or someone else under the Roopani family's direction and control, created fraudulent records and bills for services purportedly rendered to Allstate claimants.

21

144. These documents contained material misrepresentations that Allstate relied on when it issued payments. Allstate was unaware that the operations of EHS-Grand Parkway were based on this unlawful scheme at the time of payment.

145. Due to their purported ownership and control over EHS-Parkway, the Roopani family, by and through the Roopani managerial businesses are responsible for the unlawful, medically unnecessary, and unreasonably charged fees billed by EHS-Grand Parkway in connection with Allstate claimants.

### 16.    Focus Medcare, Inc, d/b/a Edloe Imaging – Baytown

146. EHS-Focus is a diagnostic testing facility formed in 2010.

147. EHS-Focus is located at 3711 Garth Rd. Suite C, Baytown, Texas 77521.

148. EHS-Focus' official mailing address and principal office is located at 4001 W Sam Houston Pkwy N, Suite 140, Houston, Texas 77043. Again, 4001 W Sam Houston Pkwy N, Suite 140, Houston, Texas 77043 is also Core's principal place of business.

149. Sohail has served as the director and president of EHS-Focus.

150. In October 2024, EHS-Focus began doing business as Edloe Imaging-Baytown.

151. On information and belief, Dr. Gomberawalla is the radiation safety officer of EHS-Focus since 2018, and is responsible for establishing and overseeing safety procedures, ensuring compliance with regulations, and managing radiation exposure.

152. Dr. Gomberawalla and Dr. Coleman were the primary medical providers for EHS-Focus, creating imaging diagnostic reports for Allstate claimants. These reports were then used to refer claimants for unnecessary and excessive medical treatment from other Roopani healthcare businesses.

153.    As part of this scheme, Sohail, Dr. Punjwani, Dr. Gomberawalla, Dr. Coleman, and/or someone else under the Roopani family's direction and control, created fraudulent records and bills for services purportedly rendered to Allstate claimants.

154.    These documents contained material misrepresentations that Allstate relied on when it issued payments. Allstate was unaware that the operations of EHS-Focus were based on this unlawful scheme at the time of payment.

155.    Due to their purported ownership and control over EHS-Focus, the Roopani family, by and through the Roopani managerial businesses are responsible for the unlawful, medically unnecessary, and unreasonably charged fees billed by EHS-Focus in connection with Allstate claimants.

### 17.    Centers for Pain and Relief, PLLC

156.    Established in 2018, CPR is a medical clinic located in Houston, Texas, with its principal place of business at 4001 W Sam Houston Parkway N., Suite 140, Houston, Texas 77043. The clinic focuses on pain management. Again, 4001 W Sam Houston Parkway N., Suite 140, Houston, Texas 77043 is also Core's principal place of business.

157.    Sara Goel, D.O., was the initial managing member. However, since 2020, Dr. Rahil has served as its president. The primary medical provider at CPR is Dr. Naveendra Korivi ("Korivi").

158.    CPR was a direct referral for Allstate patients from Core, with consultations typically occurring at the same Elite Health Services imaging center location where the patient was initially seen.

159.    CPR evaluated and treated Allstate claimants at various Elite Health Services imaging centers, subjecting them to unnecessary procedures.

160. CPRs bills to Allstate listed the billing address of EHS-Med Center, a location also used as an operational base for other Roopani healthcare businesses. The Roopani family, through its managerial businesses and under the direction of Dr. Rahil, Dr. Korivi, Sohail, Barketali, and Anil, created fraudulent records and bills to make services appear medically necessary.

161. As part of this scheme, CPR billed Allstate for fraudulent services, relying on records and bills containing material misrepresentations. Allstate was unaware of this unlawful scheme when it made payments.

162. Due to their ownership and control over CPR, the Roopani family and its managerial businesses are responsible for the unlawful, unreasonable, and medically unnecessary services billed by CPR.

### 18. Pain Alleviation and Interventional Needs, PLLC f/k/a Pain Alleviation and Interventional Needs, LLC

163. PAIN was originally formed as an LLC in 2015 by Alibhai. It is a medical clinic located at 4001 W Sam Houston Parkway N., Suite 140, Houston, Texas 77043, and focuses on pain management services. Again, 4001 W Sam Houston Parkway N., Suite 140, Houston, Texas 77043 is also the principal place of business for Core and CPR. Anil replaced Alibhai as the manager in 2016, and Barketali became a member in 2017. Sohail is also believed to have been a member/owner.

164. In 2018, PAIN's structure was amended from an LLC to a PLLC, with Dr. Rahil designated as its manager, president, and director. It is believed that Sohail, Anil, and Barketali are still members of the PLLC.

165. Core directly referred Allstate patients to PAIN for pain management consultations, which usually occurred at Elite Health Services imaging center locations. Dr. Punjwani provided

medical services at PAIN, and the clinic evaluated and treated Allstate claimants at locations including EHS-Clay, EHS-Med Center, EHS-Grand Parkway, and EHS-Focus.

166. Due to their ownership and control over PAIN, the Roopani family, by and through the Roopani managerial businesses, are responsible for the unlawful, unreasonable and medically unnecessary services billed by PAIN in connection with Allstate claimants.

### 19. Olympic Spine and Joint, PLLC

167. Olympic was formed in 2021.

168. Olympic is a medical clinic that focuses on pain management, with its principal place of business located at 10101 Southwest Freeway, Suite 400, Houston, Texas 77074.

169. Dr. David Eidelson ("Dr. Eidelson") has served as the president and manager of Olympic since its formation.

170. Dr. Eidelson is the primary medical provider for Olympic. Upon information and belief, Olympic has replaced PAIN at several Elite Health Services imaging center locations, as its logo has been seen replacing PAIN's at many of these sites.

171. Olympic is one of the entities that Core directly refers Allstate patients to for pain management consultations, which usually take place at the same Elite Health Services imaging center locations, including EHS-Clay, EHS-Med Center, and EHS-Grand Parkway.

172. Based on available information, the Roopani family, led by Sohail, controlled and managed Olympic, and, on information and belief, Sohail has or had signature authority on Olympic's bank account. Dr. Eidelson, Barketali, Anil, and Sohail—or someone under their direction—created fraudulent records and bills to make it seem like the services were medically necessary. As part of this scheme, Olympic billed Allstate for fraudulent healthcare services.

173. The records and bills contained material misrepresentations that Allstate relied on when issuing payments. Allstate was unaware that Olympic's operations were based on this unlawful scheme.

174. Because of their ownership and control, the Roopani family, through the Roopani managerial businesses are responsible for the unlawful, unreasonable, and medically unnecessary services billed by Olympic in connection with Allstate claimants.

### 20. Prime Orthopedic, PLLC

175. Prime was formed in 2017.

176. Prime is a medical clinic that focuses on orthopedics and pain management, with its principal place of business located at 4001 W Sam Houston Parkway N., 140, Houston, Texas 77043.

177. Dr. Angelo D. Parameswaran ("Dr. Parameswaran") serves as the manager and president of Prime.

178. Sohail is listed as another manager and director of Prime. Dr. Parameswaran is the primary medical provider for Prime, a clinic to which Core directly refers Allstate patients for pain management and orthopedic consultations. These consultations typically occur at Elite Health Services imaging centers, including the EHS-Clay, EHS-Med Center, EHS-Grand Parkway, and EHS-Focus locations, where Prime evaluates and treats Allstate claimants.

179. As part of an unlawful scheme, Dr. Parameswaran, Sohail, or someone else under their direction control, created fraudulent records and bills to make it appear that the services rendered were medically necessary.

180. These documents contained material misrepresentations that Allstate relied on when issuing payments. Allstate was unaware of this scheme when payments were issued.

181. Due to their ownership and control over Prime, the Roopani family, by and through the Roopani managerial businesses, are responsible for the unlawful, unreasonable, and medically unnecessary services billed to Allstate.

## III.   JURISDICTION AND VENUE

182. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

183. Supplemental jurisdiction over the Plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1967.

184. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) whereas the majority of the acts at issue in this Complaint were carried out within the Southern District of Texas.

## IV.   FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.   IMPACT OF DEFENDANTS' SCHEME TO DEFRAUD ON ALLSTATE

185. Allstate provides automobile insurance coverage, including personal injury protection and medical payments coverage, to insureds in the State of Texas.

186. Healthcare providers, like the Defendant healthcare businesses, routinely submit invoices to Allstate in connection with bodily injury claims.

187. Healthcare providers, like the Defendants, either bill Allstate directly or bill the Allstate claimants, who then submit the bills and supporting records to Allstate through their legal representatives, pursuant to applicable insurance policies.

188. The Defendants fraudulently billed Allstate and Allstate claimants for healthcare services by falsely representing in their records and bills submitted to Allstate that the services were rendered and/or administered to the Allstate claimants pursuant to Texas law.

189. Defendants purposely obfuscated that the Roopani healthcare businesses were controlled by non-professional corporations and laypersons, who were not licensed to provide medical treatment in Texas.

190. Defendants furthered their fraudulent scheme by making unlawful self-referrals to healthcare facilities they controlled, including the Roopani healthcare businesses. These referrals were unlawfully solicited and made despite a lack of medical necessity for the services.

191. Defendants submitted or caused to be submitted fraudulent medical bills to Allstate and to Allstate claimants. These records and bills falsely represented that services were rendered, medically necessary, lawfully prescribed and performed.

192. Allstate reasonably relied on the Defendants' material misrepresentations and omissions and, as a result, made payments to or for the benefit of the Defendants.

**B.      STRUCTURE OF THE DEFENDANTS' SCHEME TO DEFRAUD**

193. The scheme described in this Complaint was driven by the provision of unauthorized, unnecessary, and fraudulent medical services purportedly administered to Allstate claimants in the State of Texas.

194. The Defendants perpetrated their scheme by giving the appearance that the businesses were legitimate companies in the business of facilitating and/or providing healthcare.

195. The Defendants' conduct, as described herein, constitutes an intentional violation of Texas law regarding qualifications for the administration of services, kickback payments, unlawful medical referrals, and the submitting of false medical documentation.

196. To achieve their goal, the Defendants colluded to unlawfully operate and/or control the Roopani healthcare businesses by billing for and submitting false medical documentation and

invoices for healthcare services that were unlawful, unnecessary, overpriced, and/or not performed as represented.

197.    The Defendants regularly submitted bills to Allstate seeking payment for treatments and services that were: (1) medically unnecessary; (2) unreasonable; and (3) not rendered as represented to the patients at issue. As a direct and proximate result of the conduct described herein, the Defendants rendered and/or facilitated the rendering of services, and procedures to patients that were medically unnecessary. These services were not based on legitimate medical need or sound clinical judgment, but were a function of improper and unlawful referrals.

198.    Unless otherwise pled to the contrary, all documents, notes, reports, health invoices, medical diagnoses, Current Procedural Terminology ("CPT") codes, code tally sheets, referrals, letters and request for payments in connection with the insurance claims referenced throughout this pleading traveled through the U.S. Mail and/or interstate wires.

199.    As set out below, the Defendants unlawfully billed for healthcare services in connection with Allstate claimants.

### 1.    Defendants' Unlawful Ownership and/or Control of Medical Clinics

200.    The Roopani family and their managerial businesses operated and controlled the Roopani healthcare businesses in violation of Texas law, with their involvement extending beyond mere administration.

201.    Elite Health Services, Core, Olympic (after the closure of PAIN), CPR, and Prime engaged in a coordinated and joint marketing and referral scheme, thereby operating as a unified conglomerate within the larger Roopani healthcare business structure.

202.    Despite their purported independent operations, in 2021, the Defendants jointly advertised their services. This collaborative advertising strategy was a significant component of a

29

broader effort to systematically funnel patients into the Roopani healthcare businesses' scheme. A true an accurate depiction of an invitation shared with attorneys and referring providers is demonstrated below.



203.    The Defendants, leveraging the various Roopani healthcare businesses under their dominion and control, systematically funneled Allstate claimants between these entities through a battery of predetermined treatment not tailored to the healthcare needs of their patients. This

network of referrals was not driven by legitimate medical necessity or the best interests of the patients, but rather was a calculated and illicit strategy designed solely to maximize profit generation for the broader Roopani enterprise. Claimants were thus subjected to a predetermined pathway of referrals, ensuring they remained within the Roopani family's controlled system, regardless of their individual medical needs.

204.   The Roopani family, and the Roopani managerial businesses, with Sohail at the helm, strategically created a complex, multi-layered corporate structure to obscure the true ownership and control of the Roopani healthcare businesses.

205.   The use of holding companies, such as Elite HS Holdco, was a deliberate tactic to fraudulently conceal the scheme by creating layers of separation between the operational healthcare businesses and the individuals who directly benefit from them.

206.   Despite this convoluted structure, Sohail Roopani has consistently maintained key leadership positions across these entities, demonstrating the Roopani family's continuous control.

207.   This intricate web of ownership was designed to hide the Roopani family's direct financial interests and shield them from liability.

208.   Under the Texas Business Organizations Code, a professional limited liability company (PLLC) must be owned and governed exclusively by "authorized persons"—specifically, individuals licensed to provide the same professional service. The law explicitly requires any individual or entity that is not a licensed professional to transfer their ownership interest.

209.   Despite these legal requirements, the Roopani family—none of whom are licensed medical professionals, with the sole exception of Dr. Rahil—holds ownership and control. Dr. Rahil's involvement is insufficient to legitimize the ownership structure, as he is an absentee provider operating primarily out of Washington who has never treated an Allstate claimant.

31

210.    Even if his involvement were more significant, Dr. Rahil is prohibited from sharing ownership with unlicensed individuals, including his brothers and father, under the legal framework that bars business entities from practicing medicine. This prohibition, known as the Corporate Practice of Medicine Doctrine (CPOM), exists to protect the doctor-patient relationship and prevent laypersons from controlling medical decisions.

211.    Sohail and the Roopani family committed fraud by intentionally concealing their unlawful ownership and/or control of Core, CPR, PAIN, Prime, and Olympic from Allstate, knowing the insurer would refuse to pay claims if it were aware that unlicensed laypersons were in control and dictating treatment.

212.    Unaware of the deception, Allstate issued payments for medical services.

213.    Consequently, the family's unlawful control over Roopani healthcare businesses' treatment protocols renders any billings submitted to Allstate for services allegedly rendered at Core, CPR, PAIN, Prime and Olympic fraudulent and improper under Texas law.

### i.    *Layperson Ownership and/or Control of Core*

214.    The Roopani family further circumvented these laws by recruiting licensed medical professionals to create the false appearance that the businesses were properly operated.

215.    Core was formed in 2017 as a standard limited liability company (LLC), not as a professional entity as required by Texas law for the lawful provision of medical services.  The listed managing members of Core, Elite GP and Elite HS Holdco, are corporations both owned and controlled by the Roopani family, with Sohail Roopani at the forefront.

216.    In preparation of the opening, Anil and Sohail advertised for nurse practitioners to join the Elite Health Services team. A true and accurate Facebook posts depicts this plan for

laypersons to hire medical professionals for the common purpose of referring patients from Core to other Roopani healthcare businesses.



217.    A true and accurate copy of the certificate of formation submitted to the Texas Secretary of State in 2017 by Core MD Management LLC is provided below:



218.    Since 2018, nurse practitioner Agustin has been listed as a member and president of Core. However, it is the Roopani family that controls the company, dictates the predetermined treatment protocols discussed below, and directs Agustin and other hired nurse practitioners to administer unnecessary services.

219.    In June 2023, Edloe Health acknowledged this control by congratulating *Edloe Health* employee, Diana Rodriguez for completing seven years as the manager of Core.

220.    A true and accurate excerpt of the Edloe Health's Instagram page is depicted below:

34





221.    In July 2023, Edloe again acknowledged its control of Core, and PAIN, by singling out *Edloe Health* employee, Wendy Aguilar, as the billing manager for Edloe Imaging, Core, and PAIN.

222.    A true and  accurate excerpt of the Instagram post is depicted below:



223.    In March 2024, Core underwent a structural change, converting from Core MD Management LLC to Core MD Management PLLC. This conversion aligns with regulations like the Texas Business Organizations Code, specifically for professional service entities, and formally designated its purpose as providing medical services. Concurrently, Core amended its Article 3, which governs authority, removing all previously listed managers and appointing Agustin as the sole manager.

224.    Even after Core's purported transition to a PLLC, the Roopani family members, who are not licensed medical professionals, maintained their control. Just weeks after the March 2024 amendments were filed with the Texas Secretary of State, Anil, the Chief Financial Officer of Edloe Health, continued to sign legal documents for the new entity, Core MD Management, PLLC.

225.   The Roopani family's unlawful control extends beyond corporate structure to the very physical locations of their clinics. By owning and/or controlling the real estate where their medical clinics, including Core, operate, they create a coercive dynamic and extract ill-gotten gains. This arrangement allows them to launder illicit profits by disguising them as legitimate rental income from the healthcare professionals who practice within these facilities.

226.   Core is a general practice clinic that has locations at the following addresses:

- 19875 SW Fwy Ste 110 in Sugar Land, Texas 77479;

- 711 Garth Rd, Ste D, in Baytown, Texas 77521;

- 2416 W Holcombe Blvd, Ste B, in Houston, Texas 77030; and

- 4001 W Sam Houston Pkwy N, Ste. 110 in Houston, Texas 77043.

227.   The Roopani family, through various associated real estate and business entities, has ownership and control of the properties utilized by Core.

228.   The property located at 19875 SW Fwy Ste 110, Sugar Land, Texas 77479, for instance, is a facility within the Edloe Imaging network. Public records indicate that Edloe Ventures, a company with ties to the Roopani family, has an ownership or controlling interest in this location. Both the medical clinic known as Core and the diagnostic imaging service, Edloe Imaging, operate from this location.

229.   The property located at 4001 W Sam Houston Pkwy N, Ste. 110, Houston, Texas 77043 is owned by Roop Clay Properties, LLC.  Roop Clay Properties, LLC, is owned by Barketali.

230.   The Edloe Imaging-West Houston imaging center, formerly known as EHS-Clay, also operates at this location.

231. The property located at 3711 Garth Rd, Ste D, Baytown, Texas 77521 is owned by FMCH, which does business as Elite Health Services.

232. The Edloe Imaging center, formerly known as EHS-Focus, also operates at 3711 Garth Rd, Ste D, Baytown, Texas 77521.

233. Sohail is the managing member of FMCH.

234. The Edloe Imaging center, formerly known as EHS-Med Center, also operates at 2416 W Holcombe Blvd, Ste B, Houston, Texas 77030.

235. Although Core's official address was listed as 19875 Southwest Freeway, Suite 100, Sugar Land, TX 77479, the company actively served Allstate claimants at this imaging center location, which was owned and controlled by the Roopani family.

236. The Roopani family used their control over real estate as a tool to illegally influence and control Core. By having Core exclusively operate out of locations owned or controlled by the Roopani family—including EHS-Focus (owned by FMCH), EHS-Clay (owned by Roop Clay), and a new Sugar Land location (owned by Roop University Blvd, LLC)—the family exerted a coercive dynamic.

237. On information and belief, the Roopani family pressured physicians and nurse practitioners into following predetermined, and often fraudulent, treatment protocols by using the threat of increased rent or eviction for non-compliance. Conversely, in other instances, on information and belief, the Roopani family offered improper inducements, such as below-market-value rent or free rent, in exchange for compliance, ultimately jeopardizing patient care and violating legal and ethical standards.

238. This practice created a deceptive impression that Core was an independent entity while in reality, it was operating as an integrated part of the Roopani family's business network.

37

This arrangement provided the Roopani family with undue leverage to ensure that Core's business practices aligned with the Roopani family's interests, which included steering patients to their imaging centers (whether imaging was necessary or not) in violation of Texas laws prohibiting illegal remuneration for patient referrals.

239. The Roopani family intentionally concealed their unlawful control over Core from Allstate, knowing Allstate would not have paid claims if it had known Core was controlled by unlicensed laypersons and layperson-owned corporations.

### ii. *Unlawful Layperson Ownership and/or Control of CPR*

240. The Defendants used Dr. Sara Goel ("Dr. Goel") and Dr. Rahil to create the appearance of a legitimate medical practice, but neither physician exercised meaningful control over CPR's operations. Despite being listed as managing member and president, respectively, their roles were merely for fulfilling minimum filing requirements with the Texas Secretary of State.

241. Dr. Goel, listed as the managing member, rarely treated patients at CPR and maintained a separate, independent medical practice. Dr. Rahil's role was even more egregious; while listed as president, he lived in Washington State, and never once treated a patient at CPR.

242. A majority of the services rendered at CPR to Allstate claimants were purportedly provided by Dr. Korivi. The Roopani family's choice to install him as the primary provider at the clinic appears strategic, as his medical license was already significantly limited, making him a perfect candidate to be directed by laypersons.

243. On June 9, 2023, the Texas Medical Board disciplined Dr. Korivi, prohibiting him from using his Texas medical license to diagnose, treat, or prescribe controlled substances for chronic, post-surgical, or persistent pain, and from engaging in the practice of pain management in Texas. This action followed findings that he operated an unregistered pain management clinic,

non-therapeutically prescribed controlled substances to patients, failed to follow treatment guidelines, and maintained inadequate medical records.

244.    As part of an agreed order, Dr. Korivi was required to refer pain patients to specialists within 30 days, undergo practice monitoring for 3 years, complete specific educational courses, pass the Medical Jurisprudence Exam, and pay a $3,000 penalty. He was also barred from supervising or delegating prescriptive authority.

245.    More importantly, sworn testimony from Dr. Korivi revealed the improper relationship between the Elite Health Services imaging centers and the entities operating out of those locations, including CPR. This testimony corroborates that CPR was, in reality, controlled by the Roopani family through their network of affiliated entities and non-licensed individuals, in violation of Texas's prohibition on the Corporate Practice of Medicine.

246.    A true and accurate excerpt of the testimony is depicted below:

Q.   Okay.  Give me just a second.

And where do you currently practice?

A.   I practice in several locations in Houston.

Q.   And what locations are those?

A.   The first one is Baytown, the second one is West Houston, and then the third one is on Edloe Street.

Q.   And what is the -- what are the names of those facilities that you just listed out?

A.   Okay.  The name of the company is Edloe Imaging.  There was a recent name change, but the corporation or the company that I'm working for is under Center for Pain Relief.

Q.   Okay.  So, can you elaborate a little bit as far as what you mean by the -- what you were just describing about it's under a certain name, Edloe Imaging, but you work for Center for Pain Relief?

I'm a little confused by what you mean by that.

A.   Okay.  So, the company that owns the facilities is Edloe Imaging.  There was a recent name

*     *     *

40

change from Elite Health Services to Edloe Imaging.
So, just go with Edloe Imaging.  They own the
facilities that I work in.

And I am under a certain -- they have
several physicians that work there.  And the, the
entity that I work under is Center for Pain Relief.

Q.   Okay.  So, does Edloe Imaging, formerly known
as Elite Health Services, contract with Center for Pain
Relief or you?

A.   I have a contract with Center for Pain Relief
to see patients for the company, which is Edloe
Imaging.

247.    Later in the deposition, Dr. Korivi corroborated earlier assertions by explicitly confirming that Edloe Imaging was the owner of CPR.

248.    A true and accurate excerpt of the testimony is depicted below:

41

Q.   Okay.  Let me see.  Give me just a moment.

So, for Centers of Pain Relief, do, do you know whether that organization or entity provides physician services to any other health care facilities besides the three that you work at that are owned by Edloe Imaging, I think is what you said?

MR. JOHNSON:  Objection.  Form.

A.   I'm not sure.  It's not my entity.  So, that's -- you'll have to ask the corporation.  I can't answer that.  It's not my company.

Q.   (BY MR. KENNAMER-CHAPMAN)  Fair enough.

A.   It's not my corporation.

Q.   Whose corporation is it?

A.   It's owned by Edloe Imaging.

249.    Dr. Korivi's testimony proves that the Roopani family and their agents, not licensed physicians, maintained control of CPR. When questioned about his reporting structure at CPR, Dr. Korivi testified that his primary contact was Sattani, the CEO of Edloe Imaging. This is a critical admission, as Sattani is a layperson with no medical license.

250.    Dr. Korivi further stated he was unaware of CPR's owners or officers and had no involvement in setting prices or managing billing, directly contradicting the notion that CPR was a physician-led practice.

251.    Moreover, Sattani's involvement further exposes the fraudulent scheme. His LinkedIn profile identifies him as the Chief Operations Officer of Elite Health Services since 2014, and he has been a listed member of EHS–Med Center since 2022.

252.    A true and accurate excerpt of the LinkedIn page is depicted below:



253.    This pattern of a non-physician holding key positions across the Roopani family's healthcare entities demonstrates a deliberate strategy to exert control through laypersons. It is evident that while physicians like Dr. Rahil and Dr. Goel were merely nominal figures on paper, the true operational and financial control of CPR rested with the Roopani family and their associates.

254.    This pervasive, unlicensed control is a clear attempt to obscure management responsibilities and circumvent regulations designed to protect patients and ensure proper medical oversight.

### *iii.*    *Unlawful Layperson Ownership and Control of PAIN*

255.    Sohail and the Roopani family unlawfully owned, controlled and operated PAIN in violation of Texas law, which prohibits the corporate practice of medicine by laypersons.

256.    In 2018, PAIN converted to a PLLC in an apparent effort to comply with Texas law, listing Dr. Rahil Punjwani ("Punjwani") as the sole manager.

257.    Upon information and belief, this restructuring was orchestrated by the Roopani family to hide layperson ownership. Consistent with this alleged scheme, as set out below, PAIN's 2019 annual report, filed with the Texas Secretary of State, listed Barketali—a non-physician—as a member.

258.    A true and accurate excerpt of the  2019 annual report is depicted below:



### iv. *Unlawful Layperson Ownership and Control of Prime*

259.    Prime, an orthopedic medical clinic, was established in 2017 with its principal place of business at 4001 W Sam Houston Pkwy N, Houston, Texas 77043. The Roopani family unlawfully controlled and operated the clinic, in violation of Texas law that prohibits the corporate practice of medicine by laypersons.

260.    When Prime was originally formed as a PLLC, its initial leadership included Dr. Angel Dushi Parameswaran ("Dr. Parameswaran"), who served as a manager and president and has been the primary medical provider at the clinic since it opened. However, in subsequent filings with the Texas Secretary of State, Sohail was also listed as a director and manager of Prime.

261.    A true and accurate excerpt of the 2018 annual report submitted by Prime, which lists Sohail as its director, is depicted below:



262.    Sohail is not a licensed physician and is therefore considered a layperson under Texas law. Upon information and belief, the Roopani family, most of whom are also laypersons, and the Roopani managerial businesses, owned and controlled Prime. Although Dr. Parameswaran was listed as a manager, the real operational control remained with the rest of the Roopani family, particularly Sohail.

263.    The Roopani family deliberately concealed their control over Prime through a complex web of companies. Prime Orthopedic Management, an entity owned by the Roopani family via Elite HS Holdco, is one such example. With Sohail listed as its managing member and Elite GP as a manager, this company handles key administrative functions like collections and litigation funding for Prime's patients, highlighting the family's hidden influence and control over the clinic's operations.

264. Sohail and other family members recruited and installed Dr. Parameswaran at Prime to give the appearance of lawful operation by licensed professionals, while the lay owners retained actual control. This scheme was intended to circumvent Texas laws that prohibit layperson ownership and control of medical practices.

265. The Roopani family's role was not limited to administrative or managerial functions; instead, they exercised direct control over treatment protocols and medical decision-making at the clinic. Similarly, Dr. Parameswaran's own conduct reflects a disregard for proper medical practice. In November 2021, Dr. Parameswaran agreed to a consent order with the Texas Department of Insurance, Division of Workers' Compensation (DWC) for improperly billing for manual muscle testing services between 2015 and 2019. He submitted claims using his license and modifiers to indicate proper supervision, though the medical records demonstrate he was not present during the procedures, in violation of state laws and rules. As part of the settlement, he accepted the findings, paid a $3,000 penalty, and agreed to complete training in medical recordkeeping and ethics.

266. The Defendants knowingly concealed the layperson control of Prime from Allstate and others, aware that disclosure would have resulted in denial of payment for claims. Allstate only discovered the Roopani family's unlawful control of Prime after reviewing documentation that revealed the various businesses used to operate and control the clinic. Allstate would not have issued any payments had it known that Prime was controlled and operated by the Roopani family and their associated businesses. Such conduct is improper and unlawful, and any billing submitted to Allstate for services purportedly rendered at Prime was fraudulent.

267.    On information and belief, Sohail and other Roopani family members recruited and installed Dr. Parameswaran at Prime for the purpose of giving the appearance of lawful operation by licensed professionals, while the lay owners retained actual control.

268.    This scheme was intended to circumvent Texas laws prohibiting layperson ownership and control of medical practices.

269.    On information and belief, the Roopani family's role was not limited to administrative or managerial functions. Instead, they exercised direct control over treatment protocols and medical decision-making at Prime.

270.    Defendants knowingly concealed the layperson control of Prime from Allstate and others, aware that disclosure would have resulted in denial of payment for claims.

271.    Allstate only discovered the Roopani family businesses' unlawful control of Prime after review of various documentation that shed light on the various businesses used by the Roopani family to operate and control Prime.

272.    Allstate would not have issued any payments had it known that Prime was controlled and operated by the Roopani family, and their various businesses.

273.    Such conduct is improper and unlawful, and any billing submitted to Allstate purportedly rendered at Prime was fraudulent.

### v.    *Unlawful Ownership and/or Control of Olympic*

274.    Roopani family unlawfully controlled and operated Olympic in violation of Texas law. This constitutes the corporate practice of medicine by laypersons, which is prohibited under state law.

275.    When Olympic was originally formed as a PLLC in 2021, its filings noted that the entity was being managed by managers, as opposed to being managed directly by its owners.

276.    At its formation, Olympic named Dr. Noah Godwin ("Dr. Godwin") as its organizer and manager.

277.    A true and accurate excerpt of part of the 2021 Certificate of Formation submitted by Olympic to the Texas Secretary of State is depicted below, which documents the above-mentioned management structure:



278.    On February 2, 2022, subsequent filings with the Texas Secretary of State amended the governing body of Olympic, replacing Dr. Godwin with Dr. David Eidelson ("Dr. Eidelson").

49

279.    The documents submitted with this amendment continued to state that Olympic would be managed by a manager, not by its owners. This maintained the facade of an independent, physician-led practice while obscuring the true controlling interests.

280.    Dr. Eidelson's name later appeared as the president of Olympic in subsequent annual filings with the Texas Secretary of State. Despite these filings, other documents and evidence demonstrate that the Roopani family has an instrumental role and exercises control over the operations of Olympic.

281.    Even though Olympic has an official place of business at 10101 Southwest Freeway, Suite 200, Houston, TX 77074, all services conducted on Allstate claimants were done at Roopani healthcare businesses' locations, including EHS-Clay, EHS-Med Center, and EHS-Grand Parkway.

282.    In recent years, Roopani healthcare businesses, including Olympic, have collectively filed breach of contract claims against personal injury attorneys in Harris County, Texas, seeking to collect on unpaid medical services. For example, on January 10, 2025, EHS-Med Center, EHS-Clay, EHS-Grand Parkway, Core, PAIN, Prime, CPR, and Olympic jointly sued former attorney Pejman Maadani for owed medical fees in the case of *Elite Health Services – Medical Center v. Pejman Maadani*, 202501855 (80th Civil Court, Harris County, December 2nd, 2024).

283.    In a counterclaim, the Defendant, Maadani, identified Sohail as the CEO and manager for all Plaintiffs, including Olympic. As Sohail is not a licensed physician, he is a layperson under Texas law. Regardless, Sohail, and the Roopani family and their associated businesses, owned and controlled Olympic. This scheme was an attempt to circumvent Texas laws that prohibit layperson ownership and control of medical practices.

50

284.   The Roopani family's role at Olympic was not merely administrative; they exercised direct control over treatment protocols and medical decision-making, which is an illegal practice of medicine.

285.   The Defendants knowingly concealed their layperson control of Olympic from Allstate, aware that disclosure would have led to a denial of payment for claims. Allstate only uncovered the Roopani family's unlawful control after reviewing various documents that shed light on the operation of their businesses.

286.   Allstate would not have issued any payments had it known that Olympic was controlled and operated by the Roopani family and their associated businesses. This conduct is unlawful and constitutes a fraudulent scheme, rendering all billing submitted to Allstate for services purportedly rendered at Olympic as fraudulent.

## 2.   Defendants' Improper Self-Referrals

287.   The Roopani family and their managerial businesses illegally practiced medicine by creating and enforcing a predetermined, fraudulent treatment protocol. This protocol, designed by non-medical professionals, stripped all independent medical judgment from the licensed physicians and nurse practitioners involved. The sole purpose of this protocol was to funnel patients into the Defendants' network of businesses, ensuring that unnecessary, pre-planned services were performed and billed for financial gain.

288.   In furtherance of their scheme, the Defendants specifically targeted Allstate claimants involved in motor vehicle accidents, resulting in illegal kickbacks and the overutilization of healthcare services.

289.   To facilitate and conceal this scheme, the Roopani family deliberately established a complex corporate structure to hide their complete ownership and control of all businesses within

the Roopani healthcare businesses. This intricate setup was the foundation for a fraudulent "one-stop shop" scheme.

290.    This arrangement was designed to obscure improper self-referrals and illegal kickbacks. For example, a patient could be sent down the hall for a diagnostic service without being informed of the common ownership or that the service would be billed under a separate business name. This intentionally hid the improper financial relationships and the fraudulent nature of the referrals.

291.    For example, on March 4, 2018, Allstate claimant, J.L. (Claim No. 0493922215) was in a car accident. After being discharged from the hospital with complaints of neck, back, and knee pain, she began treatment approximately one month later at a clinic she knew as Core. At the direction of her attorney, J.L. went to what she believed was one clinic, Core, for all her medical needs related to the accident. She had no idea that she was being billed by multiple Roopani businesses.

292.    J.L. was initially evaluated and treated at Core, where she was diagnosed with several injuries and recommended a series of treatments. She was referred for pain management and an orthopedic consultation. She followed up on these improper referrals, attending appointments at a facility she believed was a part of Core. At these appointments, she received injections and other services.

293.    During her deposition on June 16, 2022, J.L. only identified Core as the healthcare provider where she received healthcare services. This testimony clearly demonstrates her lack of understanding about the separate businesses involved.

294.    A true and accurate excerpt from J.L.'s testimony concerning the services at Core is depicted below:

Q.   Okay.  So you went to Tomball Regional on the day of the accident.  When did you next seek medical care for your injuries from this accident?

A.   I believe a month, a couple months after.

Q.   Okay.

A.   I went to a doctor's office.

Q.   You say a couple months after?

A.   Yes.

Q.   Do you know the name of that doctor?

A.   I don't remember.

Q.   Okay.  Was that -- could it be Core Health?

A.   Yes.

Q.   Okay.  How did you find Core Health?

A.   Through the -- through the lawyers.

Q.   Okay.  What were you complaining of at Core Health?

A.   I'm sorry?

Q.   What were you complaining of at Core Health?

\*       \*       \*

```
A.   My back.

Q.   Low back?

A.   Yes.

Q.   What kind of treatment did you receive there?

A.   I got a shot in my back.

Q.   Okay.  Did you just go that one time?

A.   No.

Q.   How many times did you go?

A.   I believe two or three.

Q.   And that was at the beginning of treatment;
right?

A.   Yes.

Q.   So did you go -- you said you went two or
three times.  Did you go once in the beginning, once in
the middle, once at the end, or all at the beginning?

A.   All at the beginning.
```

295.    Various entities, including PAIN and Prime (an orthopedic practice), operated under the same roof. The physical layout and coordinated patient flow were designed to facilitate this fraudulent scheme.

296.    Based on Allstate's investigation, J.L. was never made aware of the financial relationships or common ownership among these businesses. The Roopani family relied on this confusion and lack of understanding to conduct internal referrals and then bill Allstate for services rendered at each of their separate entities. This conduct is improper, unlawful, and all bills submitted to Allstate for services purportedly rendered at Core were fraudulent.

297.    Because of the inherent conflict of interest involved in medical providers referring patients to a facility in which the provider will profit, strict and complete disclosure to patients is mandated as a matter of law.  The Defendants intentionally ignored their disclosure obligations.

298.   Even where certain referral-related payments might otherwise be lawful, the Texas Patient Solicitation Act imposes strict disclosure requirements to render such arrangements permissible, which were not met.

299.   Pursuant to Texas law, any person receiving compensation for a referral must disclose two key facts to the patient: (1) their affiliation with the healthcare provider or facility to which the patient is being referred, and (2) that they are receiving compensation for making the referral. Tex. Occ. Code §102.006(a),

300.   These disclosures are required to be made both at the time of initial contact with the patient and again at the time of the referral.

301.   The purpose of these requirements is to ensure that patients are fully informed, free from deception, and able to make unbiased healthcare decisions based on transparent information.

302.   Here, the Roopani healthcare businesses, including Core, appeared to acknowledge the Texas Patient Solicitation Act in financial policy documents provided to Allstate claimants during initial consultations.

303.   During Allstate's investigation, a document titled "Financial Policy" was found for each of the Roopani healthcare businesses. Each form contained identical language, format, and sections, differing only by the presence of the individual company's logo.

304.   A true and accurate excerpt of the language from the financial policy from one of the Roopani healthcare businesses is depicted below:

**Regarding Insurance**

We may accept assignment of insurance benefits at our discretion if acceptable insurance identification is provided. Acceptable insurance identification is defined as a valid insurance card, policy/plan with applicable coverage, or telephone verification. As a courtesy to our patients, verifiable and assignable insurance will be billed by this surgeon's office. However, you will be personally responsible for your account balance regardless whether or not your insurance will pay for your total balance of your claims, unless you're eligible for discounts under our indigency policy pre-determined before the services are rendered. Your insurance policy/employee benefits plan is a contract between you and your insurance company/employee benefits plan. We are not a party to that contract. In the event we do not accept assignment of benefits we require that you be pre-approved on our extended payment plan by providing a credit card or personal checking account with authorization to charge that amount for the balance due, if your insurance company/employee benefits plan has not paid your account in full within 45 days or has determined your claims to be your responsibility for the reasons of annual deductible, co-payment, non-covered services and not medically necessary.

305.    Despite this acknowledgment, none of the Roopani healthcare businesses disclosed an ownership affiliation with one another, nor did they disclose the existence of any financial arrangements related to referrals made to other Roopani healthcare businesses.

306.    A notable example of the interconnected ownership structure within the Roopani healthcare businesses is Elite HS Holdco, which served as a member of Core.

307.    Since at least 2021, Elite HS Holdco, has also held majority ownership interests in multiple other healthcare businesses affiliated with the Roopani family, including EHS-Med Center, and EHS-Clay.

308.    Despite the overlapping ownership, the Roopani family and their entities— including EHS-Grand Parkway, EHS-Focus, PAIN, CPR, Olympic, and Prime—failed to disclose to Allstate claimants that Core was affiliated with the imaging, pain management, and orthopedic providers to whom patients were being referred. This intentional lack of transparency prevented patients from understanding the financial motivations behind their treatment plan.

309.    Furthermore, Core and the other Roopani businesses failed to disclose that they were receiving direct or indirect remuneration in connection with those referrals. This omission concealed a key element of the fraudulent referral scheme, which was designed to financially benefit the Roopani family at the expense of patients and their insurers.

310. The Defendants' failure to disclose their material financial relationships and affiliated ownership structures constitutes a violation of the plain language of the Texas Occupations Code § 102.006(a). This statute requires transparency to protect patients and prevent conflicts of interest.

311. Investigation by Allstate revealed that the company logos for Core, PAIN, Olympic, and Prime were displayed at the entrance doors of the Elite/Edloe imaging center locations, creating a false impression of distinct, separate entities.

312. However, once a patient entered the facility, the clear identification and separation of the various businesses were difficult to discern or, in most cases nonexistent. This intentional lack of distinction, despite the public-facing logos, was designed to confuse patients and conceal the true, unified nature of the operation.

313. The evidence, including the photograph from a Roopani healthcare businesses' holiday party below, demonstrates that the Roopani healthcare businesses operated as a single, unified enterprise with Sohail (to the right) at the helm, and the primary goal of enriching the Roopani family.

314. A true and accurate excerpt depicting the Roopani healthcare businesses' holiday party is depicted below:

57



315.    This unified operation was designed to facilitate the fraudulent scheme described in the allegations contained herein, allowing for the deceptive and improper self-referral of patients between businesses under the same roof.

316.    A prime example is Core.  Elite GP and Elite HS Holdco are owned by various Roopani managerial businesses. Elite GP and Elite HS Holdco, in turn,  own, control, and/or operate Core.

317.    Central to the scheme's fraudulent financial success was the Roopani family and Roopani managerial businesses' direct ownership and pervasive control of the Roopani healthcare businesses. This control enabled the Roopani family and Roopani managerial businesses to unlawfully dictate and manipulate patient referral patterns throughout their entire network, and subsequently, the treatment provided to those very patients.

318.    Core served as a conduit to route Allstate claimants to other Roopani-controlled healthcare businesses for services like MRIs, pain management, and orthopedic consultations. A review of claims submissions confirms that most of Core's referrals went to these other entities.

319.    The Roopani family, by and through the Roopani managerial businesses, engaged in unnecessary and unlawful self-referrals for diagnostic testing and medical procedures among their healthcare businesses.

320.    The predetermined treatment protocol created by the Roopani family typically began when Allstate claimants were referred to Core for an evaluation, often within days of their motor vehicle accident.

321.    Core, as well as the other Roopani healthcare businesses, regularly submitted bills to Allstate seeking payment for treatment and services that were (1) medically unnecessary; (2) unreasonable; and (3) not rendered as represented to patients at issue herein.

322.    The Roopani family, by and through the Roopani managerial businesses, directed Agustin and other nurse practitioners affiliated with Core to perform initial examinations of Allstate claimants involved in motor vehicle accidents. These employees, independent contractors,

and/or providers were financially incentivized to participate in the self-referral scheme, prioritizing personal gain over the claimants' best interests and legitimate medical necessity.

323.    The Texas Patient Solicitation Act prohibits payment to any person or entity for referring a patient for healthcare services. 3 Tex. Occ. Code § 102.001.

324.    Specifically, a "payment" under the Texas Patient Solicitation Act means any remuneration, whether it is cash or in kind.

325.    Thus, the scope of prohibited payments under the Texas Patient Solicitation Act is wide and includes veiled value for such exchanges, such as providing office space or "bonuses" or other services to referring providers for less than fair market value.

326.    Upon information and belief, Agustin and the other nurse practitioners were rewarded, in cash or in kind, for following the predetermined protocol created by the Roopani family, which included referrals to the other Roopani healthcare businesses.

327.    These referrals were not based on independent medical judgment but were instead part of a coordinated scheme to route patients through the Roopani family's network for financial gain.

328.    This is evident, as the exams performed by Agustin and other nurse practitioners were cursory, leading to vague, non-specific diagnoses of generalized pain, typically in the neck and lower back.

329.    These diagnoses lacked proper medical documentation and were created as a pretext for the treatments and billing that followed instead of serving a legitimate medical purpose.

330.    The Roopani family, by and through the Roopani managerial businesses, utilized Core, a medical business they owned and/or controlled, as a conduit to funnel Allstate claimants

60

to other healthcare businesses also owned and controlled by the Roopani family and/or the Roopani managerial businesses.

331.    Following these brief evaluations, the Roopani family, by way of the Roopani managerial businesses, placed claimants on a predetermined treatment protocol. This protocol included chiropractic or physical therapy, prescription medications, trigger point injections, and x-rays. In some cases, trigger point injections were administered on the same day as the initial evaluation.

332.    Although some x-rays were allegedly performed at Core, the majority of claimants were routinely referred to the Roopani family's own imaging centers, including EHS-Clay, EHS-Med Center, EHS-Grand Parkway, and EHS-Focus, which were co-located with Core. The initial x-ray diagnostic reports, largely authored by Dr. Gomberawalla and Dr. Coleman were then used to justify recommending medically unnecessary initial and subsequent trigger point injections.

333.    Even after these procedures were performed, Core consistently ordered more medically unnecessary diagnostic imaging, mainly MRIs of the neck and lower back, and continued to refer the Allstate claimants to the EHS imaging centers for the scans.

334.    Relying on MRI reports—again, primarily authored by Dr. Gomberawalla and Dr. Coleman—Core would refer Allstate claimants for pain management services to PAIN, CPR, Olympic, or Prime.

335.    By way of example, a true and accurate excerpt from Core's nurse practitioner, Mayla Garcia, directly referring a Core patient to Prime for further evaluation, as part of the encounter's note of the Plan/Recommendations, is depicted below:



Patient Name: ████████████   DOS: 02/23/2023 10:40 AM
DOB: ██████████   Gender: F
Clinician: MAYLA GARCIA, DNP, FNP-C
DOI

**ENCOUNTER 2**

5. Trigger points.
6. Thoracic spinal pain region.
7. Thoracic disc herniation on MRI of the thoracic spine report.
8. Lumbago.
9. Lumbar radiculopathy.
10. Lumbar disc herniation on MRI of the lumbar spine report.

Plan/Recommendations:
1. Continue chiropractic therapy/physical exercise for one to two weeks to improve muscle strength and functional mobility.
2. Will refer to Prime Orthopedics regarding thoracic disc herniation and lumbar disc herniation for further evaluation.
3. Status post TPI in right upper trapezius x1 and right lumbar paraspinal x1. Risks and benefits discussed with the patient. Patient verbalized understanding. Procedure tolerated well without any immediate complications.
4. Continue use of ice or heat therapy PRN to soothe the tensed muscles to improve circulation over the injured area.
5. Continue Biofreeze gel, to apply topically. Continue Flexeril PRN for muscle spasms, cautioned regarding dizziness or drowsiness effect.
6. Follow up in the clinic as needed if symptoms persist or worsen.

**Thank you for allowing us to participate in the care of your patient.**

Approved by: Garcia, Mayla F DNP, FNP-C
Approved Date: 02/24/2023 1:47 PM

336.   Indeed, Core almost exclusively referred Allstate claimants for further treatment at the other Roopani healthcare businesses, to include one of the imaging centers, EHS-Clay, EHS-Med Center, EHS-Grand Parkway, and EHS-Focus, one of the pain management entities, PAIN, CPR, Olympic or their orthopedic entity, Prime.

337.   Such conduct is improper and unlawful, and any billing submitted to Allstate based on these referral arrangements was fraudulent.

338. Any imaging services rendered to Allstate claimants who were referred by Core providers are deemed fraudulent based on the improper referral arrangements.

339. Any injection-based services rendered to Allstate claimants who were referred by Core providers are deemed fraudulent based on the improper referral arrangements.

340. This treatment pattern revealed Core's function as the central hub of the fraudulent scheme orchestrated by the Roopani family. Through Core, they funneled Allstate claimants into a cycle of unnecessary, predetermined treatments, generating substantial financial gains for their own healthcare entities.

341. The Defendants intentionally obfuscated these self-referral from Allstate and others by hiding the true ownership and control of the Roopani healthcare businesses, because they knew that Allstate would not have paid the claims, either directly or as part of bodily injury case payments, had it known that the Defendants were unlawfully participating in an unlawful referral agreement.

342. Core, EHS-Clay, EHS-Med Center, EHS-Grand Parkway, EHS-Focus, PAIN, CPR, Olympic, and Prime concealed the improper nature of these referrals from Allstate.

343. When submitting bills and medical records to Allstate, Core falsely represented that referrals to EHS-Clay, EHS-Med Center, EHS-Grand Parkway, EHS-Focus, PAIN, CPR, Olympic, and Prime were lawful and not made in violation of the Patient Solicitation Act.

344. Allstate would not have authorized any payments had it known that these providers were engaged in an unlawful referral and self-dealing scheme, and that the procedures were medically unnecessary.

345. The damages sought in this case relate to fees charged and in many cases, paid to the medical facilities: Core, EHS-Clay, EHS-Med Center, EHS-Grand Parkway, EHS-Focus, PAIN, CRP, Olympic, and Prime.

346. All of the fraudulent bills submitted by Core, PAIN, CPR, Olympic, and Prime for unlawful and unnecessary healthcare services, including those identified in Exhibits 1-5, traveled through the U.S. Mail and/or interstate wires.

347. Allstate is entitled to recover payments in connection with all claims identified in Exhibits 1-5.

### 3. Billing for Services That Were Not Medically Necessary

348. The Defendants' control over medical providers allowed them to enforce a predetermined treatment protocol.

349. The Defendants' ultimate goal was to bill for as much medically unnecessary treatment and testing as possible at exorbitant rates. This demonstrates a flagrant disregard by the providers of the Roopani healthcare businesses for their professional and ethical duties, which are governed by the Texas Occupations Code. Specifically, Tex. Occ. Code §101.203 mandates that healthcare professionals may not violate the Texas Health & Safety Code, and Tex. Health & Safety Code § 311.0025 prohibits the following:

> A hospital, treatment facility, mental health facility, or health care professional may not submit to a patient or a third party payor a bill for a treatment that the hospital, facility, or professional knows was not provided or knows was improper, unreasonable, or medically or clinically unnecessary.

350. The providers under the Roopani family's control, by and through the Roopani managerial businesses and the Roopani healthcare businesses, violated section 101.203 Texas Occupations Code by submitting charges for medical treatment they knew was improper, unreasonable and medically unnecessary.

351.     Had Allstate known of this violation, it would never have issued payment. Allstate's policy dictates that it will not cover costs associated with medically unnecessary treatments, fraudulent billing practices, or services that violate state law. The submission of false and fraudulent claims constitutes a material breach of the terms of service, which would have led to an immediate denial of coverage and a refusal to pay.

352.     The providers under the Roopani family's control, by and through the Roopani managerial businesses and the Roopani healthcare businesses, performed medically unnecessary treatments and tests. The Roopani family's healthcare businesses then knowingly submitted false and fraudulent claims to insurance companies and attorneys through the U.S. Mail and/or interstate wires. This conduct violates Section 105.002 of the Texas Occupations Code, which prohibits healthcare providers from presenting false claims and creating supporting documentation.

353.     The Allstate claimants who purportedly treated at the Roopani healthcare businesses routinely sustained soft-tissue type injuries and had no objective deficits to substantiate the predetermined treatment protocols, which as discussed above, included referrals for excessive healthcare services that the Allstate claimants did not need.

354.     These services were utilized broadly and indiscriminately, without regard for presenting complaints, noted progress, patient age, diagnosis or severity.

355.     Under this deceptive scheme, patients were fast-tracked through a series of services—including initial consultations, diagnostics, and procedures—without being told that each service was provided and billed by a separate, but commonly controlled, company.

356.     This practice also bypassed standard medical practices by directing patients to more aggressive and expensive treatments before less invasive, conservative options were given a chance to work.

357.    The Defendants' predetermined treatment protocol violated standards of care for the medical community, and the examinations, consultations, diagnostic testing, and procedures, purportedly performed at the Roopani healthcare businesses were medically unnecessary and performed, to the extent they were performed as represented, solely for the financial benefit of the Defendants, without basis or adequate substantiation.

358.    The Defendants failed to meaningfully assess patient response to prescribed treatments and tests, including physical therapy, medication, and injections. There is no recorded alteration of treatment based on these interventions or diagnostic results, which shows the services were predetermined and unnecessary.

359.    Services that are not medically necessary for a patient's care, recovery, or rehabilitation, which are discussed further below, are non-compensable under Allstate's policy.

360.    Allstate is not obligated to pay for the Defendants' medically unnecessary treatment and is therefore entitled to a return of the funds paid as a result of their fraudulent billing. Allstate was unaware of the full extent of these misrepresentations regarding the lack of lawfulness and necessity of the billed treatment until its investigation for this lawsuit was completed.

### i.        *Unnecessary Trigger Point Injections at Core*

361.    At the initial evaluation at Core, Allstate claimants were routinely prescribed trigger point injections ("TPIs") in various areas of the body, including the upper trapezius and lumbar paraspinal regions.

362.    The routine administration of TPIs before a course of conservative care is medically unwarranted and constitutes a departure from the standard of care. This practice is unnecessary, as minor soft tissue pain from an accident often resolves with rest and non-invasive treatments. The

premature use of TPIs, particularly before a comprehensive diagnosis, exposes patients to unnecessary risks and is often a hallmark of medically unnecessary billing.

363. At Core, TPIs were routinely administered during the second or subsequent visit, after diagnostic imaging.

364. However, on occasion, TPIs were administered during the first visit—before any diagnostic imaging was performed.

365. To justify the TPIs, Core routinely prescribed x-rays for Allstate claimants. Some of these x-rays were performed on the same day as the initial consultation at an Edloe imaging center, which shared space with that particular branch of Core, and were falsely billed directly by Core.

366. The results of the Allstate claimants' x-rays were immaterial to the treatment protocol at Core. The TPIs were prescribed and administered regardless of the diagnostic information, demonstrating that the x-rays were performed not for medical necessity, but simply to justify the predetermined treatment plan. This practice demonstrates a blatant disregard for the Allstate claimants' medical needs in favor of a predetermined, profit-driven protocol.

367. When prescribing TPIs to Allstate claimants, Core utilized a pre-printed form created by the Roopani family, by and through, the Roopani managerial businesses and Roopani healthcare businesses.

368. A true and accurate excerpt of the pre-printed form used by Core is depicted below:

67

369.    The form for these TPIs came with pre-filled information, including the injection site, procedures and results, and standardized follow-up instructions. This further demonstrates that the TPIs were part of a predetermined treatment protocol, not a course of treatment tailored to the patient's specific needs.

370.    Allstate claimants who received TPIs from Core were subjected to multiple procedures, even when they reported no meaningful improvement in their condition.

371. Despite the ineffectiveness of these TPIs, Core still referred the same patients to other pain management providers within the Roopani healthcare businesses for continued treatment of the same areas.

372. This cycle of medically unnecessary care was highly profitable, as each TPI procedure was billed at excessive rates, with the sole purpose of financially enriching the Roopani family.

373. Allstate was not required to pay Core for the medically unnecessary TPIs billed for by Core.

374. The Core medical providers, who were under the control and direction of the Roopani family, by and through the Roopani managerial businesses and the Roopani healthcare businesses, engaged pre-determined use of TPIs, regardless of the patients individual needs and regardless of the effectiveness of previous TPIs.

375. For example, on March 29, 2023, Allstate claimant A.M. (Claim No. 0711603597) was reportedly injured in a rear-end collision. After being transported to a hospital, she was diagnosed with a neck sprain and strain, given a prescription for Meloxicam, and discharged.

376. Approximately one week later, on April 4, 2023, A.M. presented for treatment at Core. During this initial visit, she was immediately referred for x-rays and, notably, received TPIs to the bilateral upper trapezius on the very same day, before conservative options (such as physical therapy) were given a chance to work. Moreover, these TPIs were administered to A.M. before the diagnostic report from the x-rays—which were purportedly performed at Core and read by Dr. Coleman—was even available.

377. The predetermined nature of Core's treatment protocol continued into A.M.'s second visit on April 20, 2023. At this appointment, after a brief review of the initial x-ray results,

Core recommended and administered a second round of TPIs to the same area. Core also ordered MRIs of the cervical, thoracic, and lumbar spine, as well as the brain, further demonstrating a pattern of excessive and unnecessary diagnostic testing.

378. A.M. returned to Core for her third visit on May 8, 2023. During this appointment, she reported persistent neck pain and explicitly stated she had received minimal benefit from the two prior sets of trigger point injections. Despite this documented lack of a therapeutic response, Core recommended and administered a third set of useless TPIs to the same area.

379. Core also referred A.M. to a Roopani healthcare pain management clinic, CPR for further evaluation of her cervical and lumbar spine issues, resulting in a cervical transforaminal epidural steroid injection ("ESI"). The treatment provided to A.M., and all other Allstate claimants receiving unnecessary TPIs, was improper and unlawful.

380. All of the fraudulent bills submitted by the Roopani healthcare businesses for unnecessary TPIs, including those identified in Exhibit 6, traveled through the U.S. Mail and/or interstate wires.

381. Allstate is entitled to recover payments in connection with the unnecessary TPIs in Exhibit 6.

### ii. *Unnecessary and Excessive MRIs*

382. The Roopani family, by and through the Roopani managerial businesses and Roopani healthcare businesses orchestrated a scheme that revolved around the performance of medically unnecessary MRIs at their own facilities, including EHS-Clay, EHS-Med Center, EHS-Grand Parkway, and EHS-Focus.

383. Allstate claimants were funneled into these diagnostic imaging services shortly after their accidents, bypassing conservative care options. With only one exception—a claimant

who requested an open MRI that Elite/Edloe imaging centers did not offer—every Allstate claimant who received treatment at Core was referred to Elite/Edloe Health imaging centers.

384. Allstate claimants were routinely ordered to undergo medically unnecessary MRIs within days of their accidents. This practice demonstrates a lack of medical necessity, as MRIs are typically warranted only after documented evidence of persistent pain following a course of conservative care.

385. The MRIs ordered at Core were improper, as they were based on vague or non-specific pain complaints and were ordered without the prescribing provider reviewing prior examinations or evaluating the justification for the orders. Many patients had prior x-rays from the hospitals they attended, yet Core's records did not reference or consider them.

386. The validity of the MRIs is called into question by this failure, as MRI findings can be misleading if not correlated with a patient's clinical history and examination.

387. The Elite/Edloe imaging centers, specifically EHS-Clay, EHS-Med Center, EHS-Grand Parkway, and EHS-Focus, have engaged in misconduct by accepting and billing for diagnostic services that lacked a valid medical basis.

388. Indeed, the diagnostic reports from EHS-Clay, EHS-Med Center, EHS-Grand Parkway, and EHS-Focus were not just part of the medical record; they were instrumental in creating the illusion that additional services were needed. These reports served as the basis for Core's referrals of Allstate claimants to other Roopani healthcare businesses—CPR, Olympic, PAIN, and Prime—for further evaluations and procedures.

389. The reports were also critical to these pain management entities, who relied on them to determine if an Allstate claimant required an injection procedure, thereby manufacturing a need for costly, predetermined treatments.

390. By way of example, the services provided to Allstate claimant, V.G. (Claim No. 0700995359), were medically unnecessary, beginning with her initial care at Core.

391. Her hip x-rays were not justified by her physical examination, and her TPIs were prematurely administered after an insufficient number of chiropractic visits. The MRIs of her spine and shoulder were also ordered too early in her treatment before conservative therapies had a chance to work. The MRI's were all performed at an Elite/Edloe imaging center.

392. The unnecessary care continued with her referral to CPR, which was based solely on MRI findings of common and often asymptomatic disc herniations. This escalation of care was unwarranted, especially since V.G.'s condition was already improving. At CPR, an unnecessary thoracic MRI was ordered despite no complaints of thoracic pain. The MRI was performed at an Elite/Edloe imaging center. The subsequent cervical medial branch blocks were not medically justified, as her physical exam did not indicate facet joint pain, and the procedure itself was performed incompletely and incorrectly. Because these primary procedures were unnecessary, the related office visits were also not required.

393. This justification of V.G.'s care, based on a common and often asymptomatic condition, is a manufactured reason to maximize financial gain rather than a genuine medical necessity.

394. All of the fraudulent bills submitted by the Roopani healthcare businesses for unnecessary MRIs, including those identified in Exhibit 7, traveled through the U.S. Mail and/or interstate wires.

395. Allstate is entitled to recover payments in connection with the unnecessary MRIs in Exhibit 7.

### iii.        *Unnecessary Pain Management Procedures*

396.    As part of a scheme, the Roopani family, by and through the Roopani managerial businesses and the Roopani healthcare businesses, routinely referred motor vehicle accident claimants to their pain management and orthopedic centers, including PAIN, CPR, Olympic, and Prime, regardless of medical necessity.

397.    Dr. Korivi's sworn testimony, provided as a provider for CPR, corroborates this pattern.

398.    A true and accurate excerpt from his statement, describing the types of patients he would see at CPR, is depicted below:

```
Q.    Okay.  And what -- in your -- yeah.

        In your work for Center for Pain Relief,
what kind of conditions do you -- do you treat your
patients for?

A.    Spine and joint type of injuries and
```

\*      \*      \*

```
musculoskeletal injuries that can occur from car
accidents or a slip and fall or a work type injury.
Those are the common type of cases that I see.

Q.    Okay.  Are your -- what -- well, yeah, and
we'll say in the last three years.  What percentage of
your patients at Center for Pain Relief are patients
that are involved in some kind of personal injury
claim?

A.    Probably a hundred percent.
```

399. Based on information and belief, all pain management entities within the Roopani healthcare network, including PAIN, CPR, Olympic, and Prime, focused exclusively on personal injury accident claimants.

400. This scheme was advanced by the Roopani family's control and ownership, through the Roopani managerial businesses, of the various Roopani healthcare businesses, and their active efforts to conceal this ultimate ownership and control.

401. The scheme was further advanced through sham consultations conducted by participating pain management physicians.

402. Allstate's investigation revealed that these consultations, performed by Dr. Punjwani, Dr. Korivi, Dr. Eidelson, Dr. Parameswaran, and others, were predominantly used to fabricate justifications for unnecessary services, including cervical and lumbar ESIs, facet joint injections (FJIs), and medial branch blocks (MBBs).

403. The decision to provide injections was predetermined. The Defendants, before patients were even evaluated by a pain management specialist, intended to order, perform, and bill for ESIs at PAIN, CPR, Olympic, and Prime.

404. ESIs are not appropriate for all types of neck or back pain. The mere presence of a disc herniation on imaging is not, by itself, an indication for an ESI, as disc herniations are often found in individuals without symptoms.

405. ESIs are specifically intended to treat radicular pain—pain that radiates into an arm or leg consistent with spinal nerve root involvement.

406. Objective MRI findings such as nerve root compression, displacement, or foraminal stenosis must correlate with clinical symptoms.

407. Absent radiating pain, these findings do not justify ESIs.

408.    ESIs and other injections were performed or recommended by the Roopani healthcare businesses, CPR, PAIN, Prime and Olympic, without any regard for these established medical criteria.

409.    Here, the Roopani healthcare entities followed a predetermined treatment protocol that aggressively emphasized injection-based therapies without medical justification. These procedures lacked documented evidence of objective clinical benefit or functional improvement.

410.    Defendants also pressured patients to submit to ESIs shortly after their accidents, leading to procedures that were fraudulent and medically unnecessary.

411.    In his recent deposition, Dr. Korivi made statements of a similar nature regarding how he was paid by CPR.

412.    A true and accurate excerpt from Dr. Korivi's sworn statement concerning  how he was compensated by CPR is depicted below:

```
Q.   Okay.  Is the -- is, is it -- the money that
you're paid for performing those services at all
dependent on when or how much of that bill
Mr. ███████ pays?
     A.   No.
     Q.   Are -- so, are you paid, like, per procedure
or per day?  How does that work?
     A.   I get paid monthly based on what procedure.
It's a fixed amount per, you know, per visit, per
procedure, per encounter.
     Q.   Oh, okay.  All right.  So, if I'm
understanding you correctly -- and tell me if I'm
not -- based on that, it sounds like the amount that
you're paid for a given -- in a given month by Centers
for Pain Relief varies from month to month?
     A.   It does.
```

413.    This structure incentivized the medical providers to render as many encounters and procedures to Allstate claimants as possible, since the volume was directly tied to the physician's compensation.

414.    Based on information and belief, all pain management providers within the Roopani healthcare businesses—including PAIN, CPR, Olympic, and Prime—functioned under the same payment structure for the medical services the physicians provided.

415.    Furthermore, Allstate's investigation revealed that even when claimants' medical conditions had resolved or were nearly resolved through conservative treatment, Core personnel continued to refer patients for unnecessary pain management interventions.

416.    This pattern of behavior placed the financial interests of the providers above the health, safety, and economic interests of the patients.

417.    The injection procedures administered were excessive, unwarranted, and medically unnecessary, as the patients' conditions did not support such invasive treatments.

418.    Based on Allstate's investigation, neither Dr. Korivi, as the medical provider for CPR, nor anyone else acting on behalf of CPR, informed patients of the amount CPR would charge for the injection services he provided.

419.    A true and accurate excerpt from Dr. Korivi's sworn statement concerning whether Allstate claimants were advised of the price of the procedures at CPR is depicted below:

```
                         Was Mr. ▮▮▮▮▮▮▮▮  advised, prior to
   receiving the lumbar epidural steroid injections, how
   much he was going to be charged for those "inject" --
   injections?
      A.    No.
```

420.    Based on information and belief, none of the pain management entities that were part of the Roopani healthcare businesses, including PAIN, CPR, Olympic, and Prine, informed Allstate claimants of the amount these entities would charge per injection procedure.

421.    Allstate would not have authorized any payments had it known that these providers were engaged in an unlawful referral and self-dealing scheme, and that the procedures were medically unnecessary.

422.    All of the fraudulent bills submitted by PAIN, CPR, Olympic, and Prime for unlawful and unnecessary injections, including those identified in Exhibits 8-10, traveled through the U.S. Mail and/or interstate wires.

423.    Allstate is entitled to recover payments in connection with all claims identified in Exhibits 8-10.

### 4.    Defendants' Unlawful Solicitation Practices

424.    The Roopani healthcare businesses deliberately avoided an online presence or public advertising, with the notable exception of Elite Health Services Imaging, now known as Edloe Imaging, which only promotes its medical imaging services. On information and belief, instead of marketing to the general public, the Roopani family knowingly offered direct or indirect payments and other forms of remuneration to other healthcare providers in exchange for patient referrals.

425.    This pattern of conduct is clearly evidenced by numerous cases where cooperating chiropractors referred patients to the Roopani healthcare businesses using pre-printed referral forms baring the applicable Roopani healthcare businesses' name.

426.    These forms were specifically designed to direct patients exclusively to the Roopani network, ensuring a predetermined course of often unnecessary treatments and procedures,

including subsequent referrals for additional services administered by the Roopani healthcare businesses and for additional chiropractic and physical therapy services for those who have participated in the quid-pro-quo referral scheme.

427.    A prime example is the case of Allstate claimant K.B. (Claim No. 0715407144), who was injured in a rear-end accident on May 26, 2023. After being discharged from a hospital, she began treatment on May 30, 2023, at United Rehabilitation Chiropractor Clinic (URCC). During her initial evaluation, Jeffrey Potter, D.C. ("Dr. Potter"), used a pre-printed referral form to send K.B. to Core for a medical consultation.

428.    A true and accurate excerpt of a pre-printed referral form is depicted below:

429.    On the same day, Dr. Potter also sent a referral for x-rays to Elite Health Services via a pre-printed form.

430.    A true and accurate excerpt of a referral for x-rays to Elite Health Services is depicted below:



431.    Following her x-rays on June 5, 2023, and a consultation with Coung Ngo, FNP-C ("Ngo"), at Core on June 8, 2023, K.B. was diagnosed with cervical and lumbar pain. Ngo recommended she continue chiropractic treatment and also prescribed MRIs, TPIs, and medications.

432.    Continuing her chiropractic services at URCC, K.B. was again referred to EHS-Medical Center for MRIs of her cervical and lumbar spine, once more on a similar pre-printed form. After the MRIs were completed, she was referred by Dr. Potter to Olympic on another pre-printed form.

433.    A true and accurate depiction of the Olympic referral form is depicted below:

434.    At Olympic, K.B received two injections from Dr. Eidelson—a lumbar transforaminal epidural steroid injection on July 12, 2023, and a right sacroiliac injection on October 12, 2023—and was advised to continue physical therapy.

435.    This chain of events, initiated by URCC's pre-printed referrals, guaranteed that K.B. would be channeled into a predetermined treatment path within the Roopani healthcare businesses.

436.    In turn, the referrals by the Roopani healthcare businesses for K.B. to continue chiropractic care ensures that URCC would prolong these treatments and be able to bill Allstate for these additional services, regardless of the claimants' specific needs.

437.    Such conduct is improper and unlawful, and any billing submitted to Allstate based on these referral arrangements was fraudulent.

438.    On information and belief, the Roopani family formed EHS-Grand Parkway, in part, to obfuscate that they were the true owners of the EHS-Grand Parkway location, and to disguise kickbacks, cross-referrals, and profit sharing payments from Core, PAIN, CPR, Olympic and Prime, as rent.

439.    On information and belief, the Roopani family formed Roop Clay, LLC, in part, to obfuscate that they were the true owners of the EHS-Clay location, and to disguise kickbacks, cross-referrals, and profit sharing payments from Core, PAIN, CPR, Olympic and Prime, as rent.

440.    On information and belief, the Roopani family formed FMCH, LLC, in part, to obfuscate that they were the true owners of the EHS-Focus location, and to disguise kickbacks, cross-referrals, and profit sharing payments from Core, PAIN, CPR, Olympic and Prime, as rent.

441.    Core benefitted from this arrangement as the entity operated from all 4 facilities.

442.    Based on Allstate's investigation, Core has the same structure at the various Elite Health Services imaging center locations.

443.    Based on information and belief Core, PAIN, CPR, Olympic, and Prime share the administrative and some medical assistance personnel at these Elite Health Services imaging location, which include EHS-Clay, EHS-Med Center, EHS-Grand Parkway, and EHS-Focus.

444.    Based on Allstate investigation, Allstate claimants were not aware of any separation between the entities when they attended to medical services at these locations.

445.    Based on Allstate's investigation, claimants were not informed of any financial incentives, conflicts of interest in ownership, or their right to choose alternative providers when referred by Core for further evaluations and treatment.

446.    In the vast majority of the cases, services by all the Roopani healthcare businesses for a claimant were provided at the same location.

81

447.    The Defendants' scheme was driven by profit at the expense of patient care.

448.    The Roopani family, as set out above, unlawfully controlled the treatment protocol that the referred patients purportedly received, and took steps to hide the true ownership and control of the various Roopani healthcare businesses.

449.    The Roopani family relied on this confusion and lack of understanding of any separation among the service providers to be able to conduct these internal referrals among its healthcare businesses, and thereafter be able to bill Allstate for the healthcare services at the Roopani healthcare businesses.

450.    Such conduct is improper and unlawful, and any billing submitted to Allstate purportedly rendered at the Roopani healthcare business as a result of a referral from Core was fraudulent, including all those identified in Exhibit 11.

### 5.    The Improper Supervision of Advance Practice Registered Nurses at Core

451.    The two physicians enlisted by the Roopani family and their managerial businesses to supervise the nurse practitioners who perform consultations and make referrals to other Roopani healthcare businesses are Dr. Samuel Z. Feng, M.D., and Dr. Nina G. Patel. Neither of these physicians performed services at Core.

452.    The charts below summarize the delegating authority provided to the nurse practitioners during their respective employment periods at Core. These charts only include delegation periods that coincided with their work at Core:

| APRN | Delegating Physician | License # | Dangerous Drugs? | Controlled Substance? | Date of Supervision |
|---|---|---|---|---|---|
| Mary R. Agustin, AGACNP[2] | SAMUEL FENG, M.D. | L7617 | N | Y | 9/1/17-1/2/24 |
| Mary R. Agustin, AGACNP | NINA G. PATEL, D.O. | M5687 | Y | Y | 1/4/24-Present |
| Shelby Gunby, FNP[3] | SAMUEL FENG, M.D. | L7617 | Y | Y | 10/23/19-7/22/20 |
| Shelby Gunby, FNP | SAMUEL FENG, M.D. | L7617 | Y | Y | 7/23/20-12/31/21 |
| Shelby Gunby, FNP | ANGELO PARAMESWARAN, M.D.[4] | N5932 | N | Y | 3/27/23-2/2/25 |
| Janna Young, FNP | NINA G. PATEL, D.O. | M5687 | N | Y | 7/5/22-11/1/23 |
| Mayla Garcia, DNP,[5] FCP | NINA G. PATEL, D.O. | M5687 | Y | N | 7/18/18-6/30/19 |
| Mayla Garcia, DNP, FCP | SAMUEL FENG, M.D. | L7617 | Y | Y | 7/22/20-2/21/21 |
| Mayla Garcia, DNP, FCP | SAMUEL FENG, M.D. | L7617 | Y | Y | 1/20/22-1/2/24 |
| Mayla Garcia, DNP, FCP | NINA G. PATEL, D.O. | M5687 | Y | N | 1/4/24-Present |
| Cuong Ngo, FNP | NINA G. PATEL, D.O. | M5687 | N | Y | 4/1/23-4/1/24 |
| Cuong Ngo, FNP | NINA G. PATEL, D.O. | M5687 | Y | Y | 5/15/24-Present |
| Maria-Elisa Aganon, AGACNP | SAMUEL FENG, M.D. | L7617 | N | Y | 1/23/18-2/28/18 |
| Maria-Elisa Aganon, AGACNP | SAMUEL FENG, M.D. | L7617 | N | Y | 3/28/18-10/22/19 |
| Maria-Elisa Aganon, AGACNP | SAMUEL FENG, M.D. | L7617 | Y | Y | 2/1/22-1/2/24 |
| Maria-Elisa Aganon, AGACNP | NINA G. PATEL, D.O. | M5687 | N | Y | 1/5/24-Present |
| Leela Jayachandran, AGACNP | NINA G. PATEL, D.O. | M5687 | N | Y | 6/5/22-6/6/22 |
| Leela Jayachandran, AGACNP | NINA G. PATEL, D.O. | M5687 | N | Y | 6/7/22-5/15/24 |

[2] AGACNP denotes Adult-Gerontology Acute Care Nurse Practitioner.
[3] FNP denotes Family Nurse Practitioner.
[4] Dr. Parameswaran also treated claimants at Prime.
[5] DNP denotes Doctor in Nursing Practice.

453.   Based on information and belief, the nurse practitioners at Core did not have a formal written agreement with physicians that delegated specific medical acts tailored to the Nurse Practitioner's qualifications or clearly outlined the scope of delegated duties, in violation of Tex. Occ. Code § 157.001.

454.   Even if such an agreement existed, there was no formal supervision of the Nurse Practitioners at Core, as required by statute. *See* Tex. Adm. Code §221.1(12) and §221.13(d)(2)(A)–(E). Instead, the duties performed by the nurse practitioners were directed by members of the Roopani family and the Roopani managerial businesses, led by Sohail. This is further evidenced by the predetermined treatment protocol at Core, which did not consider the specific medical issues of Allstate claimants.

455.   This lack of physician supervision is highlighted by Core's pervasive and almost exclusive use of other Roopani-owned healthcare businesses, with Core medical providers even directly referring Allstate claimants to these entities in their medical notes. This lack of oversight was also evident when, despite Allstate claimants' medical issues improving or being resolved, Core personnel still referred them to further unnecessary and expensive medical services at other Roopani health businesses, including unnecessary medical imaging and injections.

456.   The representative examples set forth below demonstrate that the medical providers at Core, all of whom were nurse practitioners, lacked proper supervision and monitoring by their delegating physicians while working at Core.

457.   By way of example, in the case of Allstate claimant, M.K. (Claim No. 0753287648), who was reportedly injured in an accident on April 15, 2024, when another vehicle ran a red light, and caused M.K. to collide with the vehicle.

458.    M.K. took himself to the hospital, where he was evaluated, provided with various medical imaging, diagnosed with neck, thoracic, and low back pain/strain, muscle spasms, and a pelvic contusion. He was given medications and discharged on the same day.

459.    On April 20, 2024,  M.K. was seen at Core by Ngo, who conducted a physical evaluation, reviewed previous medical imaging results with the claimant, and diagnosed M.K. with neck pain, lumbar pain, thoracic spine pain, back spasms, trigger points, cervical and lumbar radiculopathy, left ankle pain, and right wrist pain.

460.    Ngo recommended that M.K. begin chiropractic and physical therapy, referred M.K. for x-rays of the right wrist and left ankle, referred him for MRIs of the cervical and lumbar spine, recommended the use of hot/ice packs, continued use of the previously prescribed medication, and trigger point injections of the cervical and lumbar spine as needed.

461.    Based on the initial encounter at Core, Ngo billed for the encounter, even though his delegation authority had expired.

462.    A true and accurate excerpt of the bill submitted to Allstate for this initial encounter is depicted below:

| MM DD YY | | | | | | | |
|---|---|---|---|---|---|---|---|
| 04 15 2024 | QUAL. 431 | | QUAL. | | MM DD YY | FROM MM DD YY | To MM DD YY |

17. NAME OF REFERRING PROVIDER OR OTHER SOURCE
DN AGUSTIN, MARY
17a
17b NPI 1467846758
18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES
FROM MM DD YY To MM DD YY

19. ADDITIONAL CLAIM INFORMATION (Designated by NUCC)

20. OUTSIDE LAB?  ☐ YES  ☑ NO    $ CHARGES

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY Relate A-L to service line below (24E)  ICD Ind. 0
A. M542   B. M5412   C. M546   D. M62830
E. M7910   F. M5459   G. M5416   H. M25572
I. M25531   J.   K.   L.

22. RESUBMISSION CODE   ORIGINAL REF.NO.

23. PRIOR AUTHORIZATION NUMBER

| 24. A. DATE(S) OF SERVICE From MM DD YY | To MM DD YY | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS | MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. ID. QUAL | J. RENDERING PROVIDER ID # |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 04 20 2024 | 04 20 2024 | 49 | | 99202 | | ABCD | 490 | 00 1 | | NPI | 1396445201 |
| | | | | | | | | | | NPI | |
| | | | | | | | | | | NPI | |
| | | | | | | | | | | NPI | |
| | | | | | | | | | | NPI | |
| | | | | | | | | | | NPI | |

25. FEDERAL TAX I.D. NUMBER   SSN ☐  EIN ☑  ▓▓▓▓
26. PATIENT'S ACCOUNT NO. KHAM173779
27. ACCEPT ASSIGNMENT? (For govt. claims, see back)  ☑ YES  ☐ NO
28. TOTAL CHARGE  $ 490  100
29. AMOUNT PAID  $ 0  100
30. Rsvd for NUCC Use  $

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)
NGO, CUONG
NPI: 1396445201
SIGNED   04 20 2024 DATE

32. SERVICE FACILITY LOCATION INFORMATION
CORE-MC
2416 W. HOLCOMBE, SUITE A
HOUSTON TX 77030
a. 1467943142   b.

33. BILLING PROVIDER INFO & PH #  ( 281 ) 849-6988
CORE
19875 SOUTHWEST FWY, STE 110
SUGAR LAND TX 77479
a. 1467943142   b.

463. Ngo was practicing medicine at the time of this initial encounter, as he both diagnosed M.K. with medical issues and made various referrals to other medical providers.

464. Such practice of medicine would only be allowed for a nurse practitioner if they had delegating authority from a licensed physician.

465. Based on information and belief, Ngo did not have delegating authority to practice medicine on April 20, 2024.

**6.      Billing for Services that Were Not Rendered**

466. The Roopani healthcare businesses billed for services, treatments, and tests that were never actually rendered to the patients.

467. All of the Roopani healthcare businesses submitted a significant amount of billing to Allstate for services purportedly performed on Allstate claimants.

468.   These services included initial and follow-up evaluations and injection procedures allegedly performed at Core and the pain management clinics: PAIN, CPR, Olympic, and Prime.

469.   These services also included medical imaging, such as x-rays and MRIs, allegedly performed at Core, EHS-Clay, EHS-Med Center, EHS-Grand Parkway, and EHS-Focus.

470.   As set out above, the Roopani healthcare network has recently filed lawsuits in Harris County, Texas.

471.   These lawsuits sought to collect fees for medical services allegedly rendered to clients of personal injury attorneys.

472.   One such case is *Elite Health Services-Medical Center v. Olu McGuinnis*, 202502396 (334th Civil Court, Harris County, January 13th, 2025) (hereafter "*McGuinnis* case").

473.   In that case, through counsel, various Roopani healthcare businesses, including EHS-Med Center, CPR, Core, Olympic, PAIN, Prime, EHS-Grand Parkway, and EHS-Clay, sought to collect on unpaid bills for medical services allegedly rendered to clients of the attorney in the suit. The total amount was $350,568.00, for services allegedly rendered from May 2018 until April 2024.

474.   Prior to the lawsuit being filed in the *McGuinnis* case, the law firm representing the Roopani healthcare businesses sent a letter to the attorney with notice of intent to collect and with attached spreadsheets showing which entity provided services and when they were rendered.

475.   A true and accurate excerpt of the letter is depicted below:

87



476.    A true and accurate excerpt of the spreadsheet that accompanied the letter is depicted below:

| JCJ Ref. No. | FACILITY | PATIENT NAME | DOA | BALANCE |
|---|---|---|---|---|
| 110262792 | ELITE HEALTH SERVICES WEST HOUSTON | MAADANI, PEJMAN | 2018-07-20 | $4,000.00 |
| 110262791 | ELITE HEALTH SERVICES WEST HOUSTON | MAADANI, PEJMAN | 2018-07-21 | $4,000.00 |
| | | | | $8,000.00 |

477.    Thus, in the *McGuinnis* case, EHS-Clay sought to collect a total of $8,000 for services rendered to a Pejman Maadani on or about July 20, 2018, and July 21, 2018.

478.    Pejman Maadani was a Texas personal injury attorney who did business with the Roopani healthcare network.

479.    In fact, around the same time as the *McGuinnis* case, the Roopani healthcare network also sued Pejman Maadani under the same premise of collecting debt for services allegedly provided to his clients in the past. *Elite Health Services-Medical Center v. Pejman Maadani*, 202501855 (80th Civil Court, Harris County, January 10, 2025) (hereinafter the "*Maadani* case").

480. In the *Maadani* case, Pejman Maadani's counterclaim brought fraud charges against the Roopani healthcare businesses and Sohail, in part, because of these fictitious services allegedly rendered to him and the attempt to collect from another personal injury attorney.

481. This example demonstrates that the Roopani healthcare businesses have sought to bill for services not rendered, and in the case of Pejman Maadani, for a person who was never a client of the Roopani healthcare businesses.

482. In the example of Allstate claimant, R.C. (Claim No. 0704437417), R.C. was purportedly involved in a motor vehicle accident on or around February 25, 2023, but he did not go to the hospital.

483. On February 27, 2023, R.C. purportedly presented for an initial evaluation at United Rehabilitation and Chiropractic Clinic ("URCC").

484. According to URCC's initial evaluation report, R.C. purportedly complained of neck pain, upper/mid back pain, low back pain, and bilateral knee pain.

485. On that same date, URCC referred R.C. for MRIs and a medical consultation.

486. The initial MRI request was completed by URCC on a pre-printed Elite Health Services form.

487. However, the MRI referrals were sent to another imaging center, North Houston X-ray Inc.

488. A true and accurate excerpt of the pre-printed form with original annotations by URCC is depicted below:



489.    URCC also referred R.C. for a medical consult, which was filled out on a Core pre-printed form.

490.    A true and accurate excerpt of the referral form for Core is depicted below:



491.    R.C. saw his primary doctor for a scheduled visit about a week after the motor vehicle accident.

492.    During R.C.'s visit with his primary doctor, Dr. Garcia referred him for an x-ray, which was done the same day.

493.    Dr. Garcia did not make any other referrals for R.C.

494.    R.C. had an x-ray of his lumbar spine at North Houston X-ray and Imaging Center on March 8, 2023.

495.    On March 18, 2023, which was a Saturday, R.C. was allegedly seen by Core. He was referred for further physical therapy and trigger point injections, prescribed Ibuprofen, Flexeril, and Bioflexor, and told to follow up as needed.

91

496. On March 20, 2023, R.C. had a lumbar spine MRI at North Houston X-ray and Imaging Center.

497. The medications were dispensed by Family Pharmacy, Inc. on or about March 22, 2023.

498. On or about March 22, 2023, URCC made a referral for pain management, which was done on a pre-printed form from Olympic.

499. A true and accurate excerpt of the referral by URCC is depicted below:

500.    For an unexplained reason, R.C. saw Dr. Korivi at CPR for his pain management consultation on June 1, 2023.

501.    During that visit, Dr. Korivi noted that R.C. did not want any procedures and wanted to continue physical therapy.

502.    URCC was able to continue seeing R.C. until about June 12, 2023, based in part on the Core and CPR referrals for further physical therapy.

503.    On June 12, 2023, R.C. was discharged from treatment by URCC.

504.    About a year later, on April 23, 2024, R.C. visited Sun Coast Pain and Spine for pain management, where he began laser light treatment until about June 11, 2024.

505.    On June 4, 2025, R.C. provided a very thorough deposition providing details of all his treatment.

506.    However, when asked about CPR, R.C. did not identify it as a place of treatment.

507.    R.C. was also shown a picture of Dr. Korivi, and R.C. could not identify Dr. Korivi either.

508.    More importantly, R.C. denied receiving any other care outside the care with URCC, the care with his primary doctor, imaging done at North Houston X-Ray and Imaging Center, and the care given a year later at Sun Coast Pain and Spine.

509.    A true and accurate excerpt from the testimony of R.C. is depicted below:

Q.    (BY MR. KENNAMER-CHAPMAN)    All right.    So let me just run through these real quick and make sure we didn't miss anything.

At this point we've talked about you going to your primary care provider, Dr. Garcia -- well, actually, let me start that over.

At this point we've talked about you being evaluated by Dr. Garcia a little bit for these -- for

*    *    *

this accident when you saw him, you know, about a week after the accident.

We've talked about you going to United Rehab where you had the chiropractic treatment and therapy.

We talked about that North Houston Imaging Center where you had the x-rays and MRIs.

And then we've also talked about Sun Coast Pain and Spine where you got the laser therapy.

Outside of those places that I just listed out, did you go to any other healthcare facilities or providers for any evaluation, treatment, or testing for any issues that you blame on this accident?

A.    No.

510.    Both Core and CPR falsely billed for services not rendered to R.C.

511.    In connection with the services purportedly rendered to R.C., the Defendants, through Core and CPR, submitted false medical documentation to Allstate through the U.S. Mail and/or interstate wires.

512.    The documentation submitted to Allstate by the Defendants demonstrates that Core and CPR engaged in fraudulent billing practices by billing for services that were never rendered to R.C.

### 7.    Other Fraudulent Billing

#### i.    *Fraudulent Billing by EHS Imaging Centers*

513.    The Roopani healthcare businesses, including Core Health and Elite Health Services, fraudulently billed Allstate for radiological services at rates approximately ten times higher than their standard cash prices.

514.    The Roopani healthcare businesses, including Core and the Elite Health Services imaging centers, charged Allstate $500 for x-rays, $3,500 for CT scans, and $4,000 for MRIs—regardless of the specific body part imaged.

515.    These rates were consistent across all Roopani healthcare businesses entities and locations, and were billed to Allstate as standard charges.

516.    Core Health routinely referred patients for x-rays and MRIs with no contrast to Elite Health Services facilities, and the diagnostic reports for those services were predominantly prepared by Dr. Gomberawalla and Dr. Coleman.

517.    Both physicians' names and signatures appeared on Health Insurance Claim Forms submitted to Allstate, confirming their participation in the billing process.

518.    A true and accurate excerpt of a bill submitted by Dr. Gomberawalla, on behalf of one of the Elite Health Services imaging centers is depicted below:

95

519.   All Health Insurance Claim Forms contain the following warning in bold font: "NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

520.   In addition, as owners and individuals that manage the operations of the various Roopani healthcare businesses, the Roopani family knew that the charges billed to Allstate were unreasonably excessive.

521.   By contrast to these charges, Allstate's investigation revealed that Elite Health Services' cash prices for the same imaging services were approximately one-tenth of the amounts billed to Allstate.

522.   A true and accurate excerpt of Elite Health Services cash prices is depicted below:



523. The list of cash prices also provides information on the cash price for a ESI, at about 1/8 of the prices the pain management entities charged Allstate.

524. These billing practices were not merely improper—they constituted material misrepresentations submitted under the guise of legitimate CPT coding, in violation of Texas law. *See* Tex. Health & Safety Code § 311.0025.

525.    As licensed physicians in Texas, the doctors are subject to the Texas Medical Practice Act, and their participation in these billing schemes violated provisions of Tex. Occ. Code §§ 164.052, 164.053, and relevant Texas Medical Board rules.

526.    The Roopani healthcare businesses, together with their affiliated physicians, orchestrated a scheme that prioritized profit over patient care and deceived Allstate into paying inflated, medically unjustified charges.

527.    The Roopani healthcare businesses, engaged in fraudulent billing practices in violation of Texas statutes and medical regulations.

528.    All of the bills submitted by EHS-Clay, EHS-Med Center, EHS-Grand Parkway, and EHS-Focus for fraudulent billing to Allstate at excessive and fraudulent prices, including those identified in Exhibits 12-15, traveled through the U.S. Mail and/or interstate wires.

529.    Allstate is entitled to recover payments in connection with all claims identified in Exhibits 12-15.

### 2.    Fraudulent Billing by Core on X-Rays

530.    The Defendants conspired to misrepresent Core's eligibility to seek payment for x-rays billed by Core.

531.    A true and accurate excerpt of diagnostics reports provided by Core is depicted below:



532.    Diagnostic imaging services involve a "professional component" and a "technical component."

533.    The "professional component" represents the professional radiological services provided by a physician, including interpreting and reporting on diagnostic images.

534.    The "technical component" represents the charges for the performance of the diagnostic imaging service.

535.    Charges for the "technical component" of diagnostic imaging services include the costs of the personnel, materials, space, and equipment involved in delivering the imaging services.

536.    Where diagnostic imaging services are performed by a single provider, the services can be billed as a "global service," without differentiating between the professional and technical components.

537.    However, where the professional and technical components are rendered by separate entities, the services must be billed using the appropriate modifiers, modifier "26" and modifier "TC", respectively.

538.    In this case, Core falsely billed for x-ray services.

539.    The health insurance claim forms submitted by the Core represented that all services were provided by licensed physicians employed by the Core.

540.    A true and accurate excerpt of a health insurance claim forms submitted by Core, billing for a "global service" purportedly performed by Dr. Coleman, is depicted below:

541. The health insurance claim forms do not include any modifiers.

542. The health insurance claim form intends to bill for both the technical and professional component of the x-ray.

543. However, Core does not hold a radiology license from the state of Texas, allowing it to conduct x-rays in the state.

544. Based on Allstate investigation, none of the bills provided by Core included a modifier code to clarify if the x-rays were taken by a different entity.

545. No other entity provided bills for these services.

546. Because the technical components of the diagnostic imaging services could not be provided by an Core, Core is not entitled to seek payment for such services because the Core were/are not the actual providers of the services.

547. All of the invoices for x-rays submitted by Core identified in Exhibit 16 contained material misrepresentations regarding who actually performed the technical component.

548. Accordingly, Core fraudulently billed Allstate for the technical component of the x-ray, and were not eligible to submit bills to Allstate whereas they were in violation of Texas law.

### 3.    Fraudulent Billing for Same Day Consultations/Procedures

549. The Defendants engaged in fraudulent billing practices by submitting claims to Allstate for duplicative and non-reimbursable Evaluation and Management ("E/M") services, thereby violating their legal obligation to submit accurate and truthful billing codes.

550. Healthcare providers are legally required to submit claims using CPT codes that truthfully and accurately reflect the services actually rendered, including their complexity and the time involved.

551.    CPT Modifier 25, published by the American Medical Association ("AMA"), may only be appended to an E/M service code when a medically necessary and separately identifiable E/M service is performed by the same provider on the same day as another procedure.

552.    Modifier 25 is not appropriate when the E/M service consists solely of routine pre- and post-operative work that is already included in the global procedure code.

553.    The AMA guidance specifies that such non-billable services include: (1) reviewing patient history; (2) assessing the treatment area; (3) explaining the diagnosis; (4) describing the procedure and obtaining consent; (5) discussing alternatives; (6) providing post-operative instructions; and (7) outlining follow-up plans.

554.    These guidelines are designed to prevent inflated or deceptive billing practices and to ensure that insurers pay only for services that are separately compensable and medically justified.

555.    Billing for E/M services that are neither distinct nor medically necessary, and appending Modifier 25 to such services, constitutes a misrepresentation of the care provided and breaches the provider's coding obligations.

556.    Despite these clear billing standards, the Defendants, including Core, PAIN, CPR, Olympic, and Prime, engaged in a repeated pattern of submitting duplicative and improper billing to Allstate.

557.    The Defendants routinely appended Modifier 25 to E/M codes for services rendered on the same day as separately billed procedures, without establishing that the E/M services were distinct or medically necessary.

558.    These submissions resulted in additional charges that added hundreds of dollars per visit.

559.    These charges were in addition to the thousands of dollars for the procedures performed during the same visit.

560.    These inflated and duplicative charges were based on services that are presumptively included in the procedure itself and are not eligible for separate reimbursement.

561.    As a result, the claims submitted by the Defendants contained material misrepresentations and violated billing standards

562.    The representative example set forth below demonstrates that Core medical personnel recommended referrals for pain management, regardless of the Allstate claimant's individual needs.

563.    For example, Allstate claimant, E.R. (Claim No. 0738121466), was reportedly involved in a rear-end automobile accident on February 3, 2021.

564.    On February 4, 2021, E.R. sought medical treatment at a nearby hospital. She underwent an x-ray of the lumbar spine and a CT scan of the head, and was diagnosed with a low back strain and a closed head injury.

565.    The hospital prescribed Cyclobenzaprine and Diclofenac for E.R.'s injuries and discharged her the same day.

566.    On February 25, 2021, E.R. initiated chiropractic treatment at Fairway Chiropractic.

567.    On March 2, 2021, E.R. was evaluated at Core. During this initial encounter, Core diagnosed E.R. with cervical and lumbar spine pain, muscle spasms, trigger points, headaches, and sprain/strain injuries to the right elbow, right hand, and right wrist. Core recommended continued chiropractic therapy, the application of hot and cold packs, and prescribed Robaxin 500 mg. E.R.

was also advised to obtain her previous medical records and was referred for potential trigger point injections if her pain continued.

568.    On March 16, 2021, E.R. returned to Core for a follow-up appointment. During that visit, Core performed a trigger point injection to the bilateral upper trapezius following a routine physical examination.

569.    No diagnostic tests were reviewed at the March 16 visit. No new medications were prescribed, no imaging studies were ordered, and no additional referrals were made. It was noted that E.R. had already been referred to pain management by another provider.

570.    Core submitted billing for both the trigger point injection and the corresponding office visit from the March 16 appointment.

571.    A true and accurate excerpt of the charges by Core are depicted below:

572. On April 6, 2021, E.R. returned to Core for another follow-up. She was evaluated again and advised to follow up as needed. It was again noted that another provider had already made additional referrals for her ongoing care.

573. E.R. subsequently obtained further treatment from other healthcare providers.

574. These inflated and duplicative charges were based on services that are presumptively included in the procedure itself and are not eligible for separate reimbursement.

575. Allstate is entitled to restitution of amounts previously paid based on these fraudulent and misleading submissions.

576. Therefore, Allstate is not obligated to pay any pending claims involving the improper use of Modifier 25 and is entitled to restitution of amounts previously paid based on these fraudulent and misleading submissions, including those identified in Exhibit 17.

577. All billing and records with Modifier 25 traveled through the U.S. Mail and/or interstate wires.

## V.   SPECIFIC ALLEGATIONS OF MAIL FRAUD, WIRE FRAUD, AND MONEY LAUNDERING RACKETEERING

578. Throughout the course of this scheme, the Defendants created, prepared, and submitted (or caused to be created, prepared, and submitted) false medical documentation and intentionally violated the laws of the United States by devising, and intending to devise, schemes to defraud and obtain money and property by means of false and fraudulent pretenses in representations, and by placing (or causing to be placed) in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Services, in violation of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and the Federal Money Laundering Statute, 18 U.S.C. § 1956 (money laundering) for the purpose of executing, or attempting, such fraudulent schemes.

579.    The Defendants also developed and maintained business relationships with personal injury attorneys, the purpose of which was to secure patient referrals to the Roopani healthcare businesses.

580.    In exchange for these referrals, the Defendants agreed to examine and treat the personal injury attorneys' clients—who were Allstate claimants—under a Letter of Protection ("LOP"). An LOP is an agreement by a patient's attorney promising to pay for medical services from the proceeds of a future settlement of a bodily injury claim with insurance carriers, such as Allstate.

581.    The Defendants charged these claimants for services at exorbitant rates under the LOP, with the understanding that the billed rates would be substantially reduced after a settlement was reached. The medical services which were provided, however, were not reasonable or necessary for the claimants' injuries. Consequently, any amount acquired from the Allstate claimants' settlement constituted profit derived from a fraudulent scheme.

582.    The Defendants mailed and/or wired false medical documentation to Allstate claimants and/or their personal injury attorneys who, in turn, mailed and/or wired the documents to Allstate in support of the Allstate claimants' medical expense and bodily-injury claims.   For the reason set forth in this Complaint, these medical records and bills were fraudulent and contained material misrepresentations and omissions of fact.

583.    The Defendants knew Allstate would make payments on the claims based on the fraudulent bills and records, and Allstate used the U.S. Mail and/or interstate wires to send the payments.

584. Unless otherwise pled to the contrary, all documents, invoices, narrative reports, letters, and requests for payments in connection with the insurance claims referenced throughout the balance of this Complaint traveled through the U.S. Mail and/or interstate wires.

585. In making its decision on a settlement, Allstate would consider all damages submitted from any and all providers, whether or not they were a Roopani healthcare business. Allstate would then decide how much to settle the claim based on the bills submitted.

586. Had Allstate known of the fraud discussed herein at the time the applicable settlement payments were made, it would not have issued any money toward a settlement that included the Roopani healthcare services and bills.

587. After a settlement was reached between Allstate and the Allstate claimants, payments were issued to the Allstate claimants or their attorneys. The attorneys would then issue payments to the Roopani healthcare businesses via checks drawn from their IOLTA accounts to satisfy the LOP. These checks were submitted for each claim via the U.S. Mail and/or interstate wires.

588. The amount of the LOP checks to the Roopani healthcare businesses varied and only included the amount Allstate determined the services administered at the Roopani healthcare services were worth in making its decision on a settlement.

589. The LOP payment structure was a key component of the fraudulent scheme, designed to conceal the Defendants' direct fraudulent conduct from Allstate. By routing payments through the personal injury attorneys' IOLTA accounts, the Defendants could later argue that they did not directly cause damage to Allstate or other insurers, thereby insulating themselves from potential criminal or civil liability.

107

590.    Upon receipt, the Roopani healthcare businesses would deposit the checks into corresponding bank accounts held by the Roopani healthcare businesses and/or Roopani managerial businesses. These accounts, including one for EHS-Clay (also known as Elite Health Services-West Houston) at the American First National Bank, were insured by the FDIC, thereby affecting interstate commerce with every transaction.

591.    Anil confirmed this fact when he testified through interrogatories on behalf of several businesses, including Elite Health Services-Medical Center, Core, Olympic, Elite Health Services-Sugarland, and Elite Health Services-West Houston.

592.    In his testimony, Anil stated that when a LOP "check is received by mail, it is logged by administrative staff, and a copy is typically scanned and stored electronically. The [LOP] check is then deposited by a designated employee or authorized representative" of the Roopani managerial and/or Roopani healthcare businesses. Anil continued, "[o]nce deposited, the payment is applied to the relevant account and the internal record is updated to reflect the payment has been received."

593.    By way of example, on or around October 25, 2023, a payment issued by the M&M Law Firm from its Wells Fargo IOLTA account (which is also insured by the FDIC), was deposited into an account owned and maintained by the Roopani family for EHS-Clay (also known as Elite Health Services-West Houston).

594.    A true and accurate excerpt of the check and proof of deposit is depicted below:



595.    Every automobile insurance claim detailed herein involved at least two uses of the U.S. Mail and/or interstate wires, including the mailing and/or transmission of invoices, narrative reports, and payments, and caused various other mailings and/or transmissions in the ordinary course of the claims process.

596.    Every automobile insurance claim detailed in Exhibits 18-26 involved multiple deposits into bank accounts that were owned and controlled by the Defendants.

597.    The Defendants, acting as part of a coordinated scheme, laundered funds obtained through a pattern of fraudulent medical billing. In every instance where the Defendants made a deposit from ill-gotten gains derived from sending false medical bills through the U.S. Mail and/or

interstate wires, the Roopani healthcare businesses utilized those monies to pay rent to the Roopani managerial businesses and other real estate ventures owned and controlled by the Roopani family.

598.    Furthermore, Defendants used the proceeds from this fraudulent scheme to further develop and expand the Roopani empire. In every instance wherein the Defendants made a deposit from ill-gotten gains from sending false medical bills through the U.S. Mail and/or interstate wires, the Roopani managerial businesses used those monies to purchase new real estate to house the expanding Roopani healthcare businesses. Moreover, the Defendants reinvested the ill-gotten gains into the racketeering enterprises, and thereafter moved the money into real estate businesses to avoid detection.

599.    By way of example, in 2025, Edloe Imaging opened a new location in Sugar Land, Texas, at 6927 Brisbane Court.

600.    This newly constructed building serves as the new location of Edloe Imaging – Sugar Land, also known as EHS-Grand Parkway, and replaced its previous location at 19875 Southwest Freeway, Suite 110, Sugar Land, Texas 77479.

601.    Defendants used ill-gotten gains from the fraudulent scheme perpetrated on Allstate to finance the construction and equipping of this new facility.

602.    This new facility was erected to house and consolidate multiple Roopani healthcare businesses, thereby allowing those businesses, including Core, CPR and Olympic, to continue their practice of unlawful self-referral.

603.    A true and accurate excerpt of the entities doing business at 6927 Brisbane Court, Sugar Land, Texas 77479, identified by the signs outside the building, are depicted below:

110



604.    On its official website, Edloe Imaging's CEO, Sohail, invited guests to the grand opening held on January 31, 2025.

605.    A true and accurate excerpt from the website's post of this invitation is depicted below:



111

606.    According to the official property records of Fort Bend County, Texas, the real property located at 6927 Brisbane Court, Sugar Land, Texas 77479, is owned by Roop University Blvd., LLC ("Roop University").

607.    A true and accurate excerpt from the Fort Bend County Central Appraisal District website, reflecting the ownership of the property, is depicted below:



608.    Roop University was formed in 2022.

609.    The original managers of Roop University included Sohail, Barketali, Shehzad, Anil, and Dr. Rahil.

610.    As of 2023, the current members of Roop University are Sohail, Shehzad, Anil, and Dr. Rahil.

611.    As of 2023, Roop University Blvd., LLC is comprised of members Sohail, Shehzad, Anil, and Dr. Rahil.

612.    As a result, the Roopani family owns the new property in Sugar Land, Texas, which houses multiple Roopani entities, including Core, EHS-Grand Parkway, CPR, and Olympic.

613.    The Defendants' fraudulent scheme was not completed, nor were its full effects realized, until the Defendants received payment, from Allstate, from Allstate claimants or their attorneys. The final and culminating act of the scheme was the deposit of these ill-gotten funds into a bank account controlled by the Defendants, thereby completing the fraudulent transaction and depriving Allstate of its property.

A.    **CORE ENTERPRISE**

614.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil committed mail fraud and/or wire fraud by and through the Core enterprise because: (a) Core was not lawfully eligible to seek or collect benefit payments; (b) Core was caused to seek reimbursement from Allstate even though Core was not entitled to such reimbursement; (c) Core used (or was caused to use) the U.S. Mail and/or interstate wires to seek reimbursement; and (d) Core was caused to receive ill-gotten gains, which were deposited and dispersed to the Defendants through various bank accounts.

615.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil took part in the creation, operation, and/or control of Core for the purpose of generating fraudulent medical reports and invoices.

616.     Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil caused Core to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal law each time that Core mailed and/or wired a demand for payment (i.e., invoice) to Allstate, Allstate claimants and/or the Allstate claimants' attorneys.

617.     Persons acting under the direction and control of Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil provided unnecessary medical services to Allstate insureds, when no such services were ordered by a medical professional, and generated fraudulent invoices as a result, which rendered Core completely ineligible for reimbursement under state and federal law.

618.     Because Core was not lawfully eligible to seek or collect benefit payments under state and federal law, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, purposely caused Core to make a misrepresentation each and every time that Core mailed and/or wired a document to Allstate, Allstate claimants and/or the Allstate claimants' attorneys  claiming eligibility for reimbursement.

619.     Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and control of Core was the means by which the Defendants caused Core's fraudulent invoices to

be submitted to Allstate claimants, their attorneys and/or Allstate through the U.S. Mail and/or interstate wires.

620.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of Core was the means by which these Defendants caused Allstate to issue payments for fraudulent medical services through the U.S. Mail and/or interstate wires concerning medical services purportedly administered at Core.

621.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of Core was the means by which these Defendants caused personal injury attorneys (pursuant to LOP agreements) to issue IOLTA bank checks for fraudulent medical services through the U.S. Mail and/or interstate wires.

622.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil engaged in money laundering, by and through the creation, operation and/or control of Core, by which these Defendants established various bank accounts and deposited the ill-gotten gains it received from the personal injury attorneys for the fraudulent medical treatment into these nationally insured bank accounts.

623.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil engaged in money laundering by using

115

their control of Core to distribute and transfer ill-gotten gains from the nationally insured bank accounts to the other Defendants. These funds were then reinvested into Core and other Roopani healthcare businesses, allowing the Defendants to generate further profits and expand the broader Roopani Enterprise.

624.     Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil used their control over Core to funnel ill-gotten gains. They did this by charging Core fraudulent rent payments, which served a dual purpose: first, to create the false appearance that Core was an independent, arms-length operation, and second, to illegally transfer funds from Core to the Defendants, thereby engaging in money laundering.

625.     At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that Core (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including the submission of fraudulent claims or issuing payments based upon documentation mailed by Core.

626.     At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that Core (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use interstate wire communication in

116

connection with the fraudulent claims, including the submission of fraudulent claims or issuing payments by wire to Defendant's bank accounts based upon documentation wired by Core.

627.   Allstate estimates that the unlawful operation of the Core enterprise generated hundreds of mailings and/or wires throughout the relevant time period.

628.   A table highlighting the relevant examples of mailings and/or wires made in furtherance of this scheme is annexed hereto at Exhibit 18 and incorporated by reference as if set forth in its entirety.

629.   A table highlighting the relevant examples of ill-gotten payments received through the U.S. Mail and/or interstate wires and thereafter laundered those monies in furtherance of this scheme is annexed hereto at Exhibits 27-28 and incorporated by reference as if set forth in its entirety.

### B.   EHS-CLAY ENTERPRISE

630.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, committed mail fraud and/or wire fraud by and through the EHS-Clay enterprise because: (a) EHS-Clay was not lawfully eligible to seek or collect benefit payments; (b) EHS-Clay was caused to seek reimbursement from Allstate even though EHS-Clay was not entitled to such reimbursement; (c) EHS-Clay used (or was caused to use) the U.S. Mail and/or interstate wires to seek reimbursement; and (d) EHS-Clay was caused to receive ill-gotten gains, which were deposited and dispersed to the Defendants through various bank accounts.

631.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco

L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, took part in the creation, operation, and/or control of EHS-Clay for the purpose of generating fraudulent medical reports and invoices.

632.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil caused EHS-Clay to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal law each time that EHS-Clay mailed and/or wired a demand for payment (i.e., invoice) to Allstate, Allstate claimants and/or the Allstate claimants' attorneys.

633.    Persons acting under the direction and control of Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil provided unnecessary medical services to Allstate insureds, when no such services were ordered by a medical professional, and generated fraudulent invoices as a result, which rendered EHS-Clay completely ineligible for reimbursement under state and federal law.

634.    Because EHS-Clay was not lawfully eligible to seek or collect benefit payments under state and federal law, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, purposely caused EHS-Clay to make a misrepresentation each and every time that EHS-Clay mailed and/or wired a document to Allstate, Allstate claimants and/or the Allstate claimants' attorneys claiming eligibility for reimbursement.

635.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco

118

L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and control of EHS-Clay was the means by which the Defendants caused EHS-Clay's fraudulent invoices to be submitted to Allstate claimants, their attorneys and/or Allstate through the U.S. Mail and/or interstate wires.

636. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of EHS-Clay was the means by which these Defendants caused Allstate to issue payments for fraudulent medical services through the U.S. Mail and/or interstate wires concerning medical services purportedly administered at EHS-Clay.

637. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of EHS-Clay was the means by which these Defendants caused personal injury attorneys (pursuant to LOP agreements) to issue IOLTA bank checks for fraudulent medical services through the U.S. Mail and/or interstate wires.

638. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of EHS-Clay was the means by which these Defendants established various bank accounts and deposited the ill-gotten gains it received from the personal injury attorneys for the fraudulent medical treatment into these nationally insured bank accounts.

119

639.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil used their control of EHS-Clay to distribute and transfer ill-gotten gains from the nationally insured bank accounts to the other Defendants. These funds were then reinvested into EHS-Clay and other Roopani healthcare businesses, allowing the Defendants to generate further profits and expand the broader Roopani Enterprise.

640.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil used their control over EHS-Clay to funnel ill-gotten gains. They did this by charging EHS-Clay fraudulent rent payments, which served a dual purpose: first, to create the false appearance that EHS-Clay was an independent, arms-length operation, and second, to illegally transfer funds from EHS-Clay to the Defendants, thereby engaging in money laundering.

641.    At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that EHS-Clay (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including the submission of fraudulent claims or issuing payments based upon documentation mailed by EHS-Clay.

642.    At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC,

Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that EHS-Clay (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use interstate wire communication in connection with the fraudulent claims, including the submission of fraudulent claims or issuing payments by wire to Defendant's bank accounts based upon documentation wired by EHS-Clay.

643.    Allstate estimates that the unlawful operation of the EHS-Clay enterprise generated hundreds of mailings and/or wires throughout the relevant time period.

644.    A table highlighting the relevant examples of mailings and/or wires made in furtherance of this scheme is annexed hereto at Exhibit 19 and incorporated by reference as if set forth in its entirety.

645.    A table highlighting the relevant examples of ill-gotten payments received through the U.S. Mail and/or interstate wires and thereafter laundered those monies in furtherance of this scheme is annexed hereto at Exhibits 29-30 and incorporated by reference as if set forth in its entirety.

C.    **EHS-MED CENTER ENTERPRISE**

646.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, committed mail fraud and/or wire fraud by and through the EHS-Med Center enterprise because: (a) EHS-Med Center was not lawfully eligible to seek or collect benefit payments; (b) EHS-Med Center was caused to seek reimbursement from Allstate even though EHS-Med Center was not entitled to such reimbursement; (c) EHS-Med Center used (or was caused to use) the U.S. Mail and/or interstate wires to seek reimbursement; and (d) EHS-Med Center was caused to receive ill-

121

gotten gains, which were deposited and dispersed to the Defendants through various bank accounts.

647. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, took part in the creation, operation, and/or control of EHS-Med Center for the purpose of generating fraudulent medical reports and invoices.

648. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil caused EHS-Med Center to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal law each time that EHS-Med Center mailed and/or wired a demand for payment (i.e., invoice) to Allstate, Allstate claimants and/or the Allstate claimants' attorneys.

649. Persons acting under the direction and control of Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil provided unnecessary medical services to Allstate insureds, when no such services were ordered by a medical professional, and generated fraudulent invoices as a result, which rendered EHS-Med Center completely ineligible for reimbursement under state and federal law.

650. Because EHS-Med Center was not lawfully eligible to seek or collect benefit payments under state and federal law, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC,

122

Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, purposely caused EHS-Med Center to make a misrepresentation each and every time that EHS-Med Center mailed and/or wired a document to Allstate, Allstate claimants and/or the Allstate claimants' attorneys  claiming eligibility for reimbursement.

651.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and control of EHS-Med Center was the means by which the Defendants caused EHS-Med Center's fraudulent invoices to be submitted to Allstate claimants, their attorneys and/or Allstate through the U.S. Mail and/or interstate wires.

652.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of EHS-Med Center was the means by which these Defendants caused Allstate to issue payments for fraudulent medical services through the U.S. Mail and/or interstate wires concerning medical services purportedly administered at EHS-Med Center.

653.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of EHS-Med Center was the means by which these Defendants caused personal injury attorneys (pursuant to LOP agreements) to issue IOLTA bank checks for fraudulent medical services through the U.S. Mail and/or interstate wires.

654. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of EHS-Med Center was the means by which these Defendants established various bank accounts and deposited the ill-gotten gains it received from the personal injury attorneys for the fraudulent medical treatment into these nationally insured bank accounts.

655. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control of EHS-Med Center to distribute and transfer ill-gotten gains from the nationally insured bank accounts to the other Defendants. These funds were then reinvested into EHS-Med Center and other Roopani healthcare businesses, allowing the Defendants to generate further profits and expand the broader Roopani Enterprise.

656. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control over EHS-Med Center to funnel ill-gotten gains. They did this by charging EHS-Med Center fraudulent rent payments, which served a dual purpose: first, to create the false appearance that EHS-Med Center was an independent, arms-length operation, and second, to illegally transfer funds from EHS-Med Center to the Defendants, thereby engaging in money laundering.

657. At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC,

124

Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that EHS-Med Center (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including the submission of fraudulent claims or issuing payments based upon documentation mailed by EHS-Med Center.

658.    At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that EHS-Med Center (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use interstate wire communication in connection with the fraudulent claims, including the submission of fraudulent claims or issuing payments by wire to Defendant's bank accounts based upon documentation mailed and/or wired by EHS-Med Center.

659.    Allstate estimates that the unlawful operation of the EHS-Med Center enterprise generated hundreds of mailings and/or wires throughout the relevant time period.

660.    A table highlighting the relevant examples of mailings and/or wires made in furtherance of this scheme is annexed hereto at Exhibit 20 and incorporated by reference as if set forth in its entirety.

661.    A table highlighting the relevant examples of ill-gotten payments received through the U.S. Mail and/or interstate wires and thereafter laundered those monies in furtherance of this scheme is annexed hereto at Exhibits 31-32 and incorporated by reference as if set forth in its entirety.

D.      **EHS-GRAND PARKWAY ENTERPRISE**

662.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil committed mail fraud and/or wire fraud by and through the EHS-Grand Parkway enterprise because: (a) EHS-Grand Parkway was not lawfully eligible to seek or collect benefit payments; (b) EHS-Grand Parkway was caused to seek reimbursement from Allstate even though EHS-Grand Parkway was not entitled to such reimbursement; (c) EHS-Grand Parkway used (or was caused to use) the U.S. Mail and/or interstate wires to seek reimbursement; and (d) EHS-Grand Parkway was caused to receive ill-gotten gains, which were deposited and dispersed to the Defendants through various bank accounts.

663.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, took part in the creation, operation, and/or control of EHS-Grand Parkway for the purpose of generating fraudulent medical reports and invoices.

664.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil caused EHS-Grand Parkway to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal law each time that EHS-Grand

126

Parkway mailed and/or wired a demand for payment (i.e., invoice) to Allstate, Allstate claimants and/or the Allstate claimants' attorneys.

665.     Persons acting under the direction and control of Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil provided unnecessary medical services to Allstate insureds, when no such services were ordered by a medical professional, and generated fraudulent invoices as a result, which rendered EHS-Grand Parkway completely ineligible for reimbursement under state and federal law.

666.     Because EHS-Grand Parkway was not lawfully eligible to seek or collect benefit payments under state and federal law, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, purposely caused EHS-Grand Parkway to make a misrepresentation each and every time that EHS-Grand Parkway mailed and/or wired a document to Allstate, Allstate claimants and/or the Allstate claimants' attorneys  claiming eligibility for reimbursement.

667.     Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and control of EHS-Grand Parkway was the means by which the Defendants caused EHS-Grand Parkway's fraudulent invoices to be submitted to Allstate claimants, their attorneys and/or Allstate through the U.S. Mail and/or interstate wires.

668. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of EHS-Grand Parkway was the means by which these Defendants caused Allstate to issue payments for fraudulent medical services through the U.S. Mail and/or interstate wires concerning medical services purportedly administered at EHS-Grand Parkway.

669. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of EHS-Grand Parkway was the means by which these Defendants caused personal injury attorneys (pursuant to LOP agreements) to issue IOLTA bank checks for fraudulent medical services through the U.S. Mail and/or interstate wires.

670. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of EHS-Grand Parkway was the means by which these Defendants established various bank accounts and deposited the ill-gotten gains it received from the personal injury attorneys for the fraudulent medical treatment into these nationally insured bank accounts.

671. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used

their control of EHS-Grand Parkway to distribute and transfer ill-gotten gains from the nationally insured bank accounts to the other Defendants. These funds were then reinvested into EHS-Grand Parkway and other Roopani healthcare businesses, allowing the Defendants to generate further profits and expand the broader Roopani Enterprise.

672. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control over EHS-Grand Parkway to funnel ill-gotten gains. They did this by charging EHS-Grand Parkway fraudulent rent payments, which served a dual purpose: first, to create the false appearance that EHS-Grand Parkway was an independent, arms-length operation, and second, to illegally transfer funds from EHS-Grand Parkway to the Defendants, thereby engaging in money laundering.

673. At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that EHS-Grand Parkway (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including the submission of fraudulent claims or issuing payments based upon documentation mailed by EHS-Grand Parkway.

674. At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail,

129

Barketali, Anil, and Dr. Rahil, knew that EHS-Grand Parkway (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use interstate wire communication in connection with the fraudulent claims, including the submission of fraudulent claims or issuing payments by wire to Defendant's bank accounts based upon documentation mailed by EHS-Grand Parkway.

675. Allstate estimates that the unlawful operation of the EHS-Grand Parkway enterprise generated hundreds of mailings and/or wires throughout the relevant time period.

676. A table highlighting the relevant examples of mailings and/or wires made in furtherance of this scheme is annexed hereto at Exhibit 21 and incorporated by reference as if set forth in its entirety.

677. A table highlighting the relevant examples of ill-gotten payments received through the U.S. Mail and/or interstate wires and thereafter laundered these monies in furtherance of this scheme is annexed hereto at Exhibits 33-34 and incorporated by reference as if set forth in its entirety.

E. **EHS-FOCUS ENTERPRISE**

678. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil committed mail fraud and/or wire fraud by and through the EHS-Focus enterprise because: (a) EHS-Focus was not lawfully eligible to seek or collect benefit payments; (b) EHS-Focus was caused to seek reimbursement from Allstate even though EHS-Focus was not entitled to such reimbursement; (c) EHS-Focus used (or was caused to use) the U.S. Mail and/or interstate wires

to seek reimbursement; and (d) EHS-Focus was caused to receive ill-gotten gains, which were deposited and dispersed to the Defendants through various bank accounts.

679.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, took part in the creation, operation, and/or control of EHS-Focus for the purpose of generating fraudulent medical reports and invoices.

680.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil caused EHS-Focus to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal law each time that EHS-Focus mailed and/or wired a demand for payment (i.e., invoice) to Allstate, Allstate claimants and/or the Allstate claimants' attorneys.

681.    Persons acting under the direction and control of Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil provided unnecessary medical services to Allstate insureds, when no such services were ordered by a medical professional, and generated fraudulent invoices as a result, which rendered EHS-Focus completely ineligible for reimbursement under state and federal law.

682.    Because EHS-Focus was not lawfully eligible to seek or collect benefit payments under state and federal law, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR,

LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, purposely caused EHS-Focus to make a misrepresentation each and every time that EHS-Focus mailed and/or wired a document to Allstate, Allstate claimants and/or the Allstate claimants' attorneys claiming eligibility for reimbursement.

683. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and control of EHS-Focus was the means by which the Defendants caused EHS-Focus's fraudulent invoices to be submitted to Allstate claimants, their attorneys and/or Allstate through the U.S. Mail and/or interstate wires.

684. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of EHS-Focus was the means by which these Defendants caused Allstate to issue payments for fraudulent medical services through the U.S. Mail and/or interstate wires concerning medical services purportedly administered at EHS-Focus.

685. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of EHS-Focus was the means by which these Defendants caused personal injury attorneys (pursuant to LOP agreements) to issue IOLTA bank checks for fraudulent medical services through the U.S. Mail and/or interstate wires.

132

686. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of EHS-Focus was the means by which these Defendants established various bank accounts and deposited the ill-gotten gains it received from the personal injury attorneys for the fraudulent medical treatment into these nationally insured bank accounts.

687. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control of EHS-Focus to distribute and transfer ill-gotten gains from the nationally insured bank accounts to the other Defendants. These funds were then reinvested into EHS-Focus and other Roopani healthcare businesses, allowing the Defendants to generate further profits and expand the broader Roopani Enterprise.

688. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control over EHS-Focus to funnel ill-gotten gains. They did this by charging EHS-Focus fraudulent rent payments, which served a dual purpose: first, to create the false appearance that EHS-Focus was an independent, arms-length operation, and second, to illegally transfer funds from EHS-Focus to the Defendants, thereby engaging in money laundering.

689. At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC,

133

Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that EHS-Focus (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including the submission of fraudulent claims or issuing payments based upon documentation mailed by EHS-Focus.

690.    At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that EHS-Focus (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use interstate wire communication in connection with the fraudulent claims, including the submission of fraudulent claims or issuing payments by wire to Defendant's bank accounts based upon documentation mailed by EHS-Focus.

691.    Allstate estimates that the unlawful operation of the EHS-Focus enterprise generated hundreds of mailings and/or wires throughout the relevant time period.

692.    A table highlighting the relevant examples of mailings and/or wires made in furtherance of this scheme is annexed hereto at Exhibit 22 and incorporated by reference as if set forth in its entirety.

693.    A table highlighting the relevant examples of ill-gotten payments received through the U.S. Mail and/or interstate wires and thereafter laundered these monies in furtherance of this scheme is annexed hereto at Exhibits 43-44 and incorporated by reference as if set forth in its entirety.

134

### F.    PAIN ENTERPRISE

694.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil committed mail fraud and/or wire fraud by and through the PAIN enterprise because: (a) PAIN was not lawfully eligible to seek or collect benefit payments; (b) PAIN was caused to seek reimbursement from Allstate even though PAIN was not entitled to such reimbursement; (c) PAIN used (or was caused to use) the U.S. Mail and/or interstate wires to seek reimbursement; and (d) PAIN was caused to receive ill-gotten gains, which were deposited and dispersed to the Defendants through various bank accounts.

695.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, took part in the creation, operation, and/or control of PAIN for the purpose of generating fraudulent medical reports and invoices.

696.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil caused PAIN to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal law each time that PAIN mailed and/or wired a demand for payment (i.e., invoice) to Allstate, Allstate claimants and/or the Allstate claimants' attorneys.

697.    Persons acting under the direction and control of Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe

135

Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil provided unnecessary medical services to Allstate insureds, when no such services were ordered by a medical professional, and generated fraudulent invoices as a result, which rendered PAIN completely ineligible for reimbursement under state and federal law.

698.    Because PAIN was not lawfully eligible to seek or collect benefit payments under state and federal law, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, purposely caused PAIN to make a misrepresentation each and every time that PAIN mailed and/or wired a document to Allstate, Allstate claimants and/or the Allstate claimants' attorneys  claiming eligibility for reimbursement.

699.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and control of PAIN was the means by which the Defendants caused PAIN's fraudulent invoices to be submitted to Allstate claimants, their attorneys and/or Allstate through the U.S. Mail and/or interstate wires.

700.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of PAIN was the means by which these Defendants

136

caused Allstate to issue payments for fraudulent medical services through the U.S. Mail and/or interstate wires concerning medical services purportedly administered at PAIN.

701.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of PAIN was the means by which these Defendants caused personal injury attorneys (pursuant to LOP agreements) to issue IOLTA bank checks for fraudulent medical services through the U.S. Mail and/or interstate wires.

702.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of PAIN was the means by which these Defendants established various bank accounts and deposited the ill-gotten gains it received from the personal injury attorneys for the fraudulent medical treatment into these nationally insured bank accounts.

703.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control of PAIN to distribute and transfer ill-gotten gains from the nationally insured bank accounts to the other Defendants. These funds were then reinvested into PAIN and other Roopani healthcare businesses, allowing the Defendants to generate further profits and expand the broader Roopani Enterprise.

704.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco,

137

L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control over PAIN to funnel ill-gotten gains. They did this by charging PAIN fraudulent rent payments, which served a dual purpose: first, to create the false appearance that PAIN was an independent, arms-length operation, and second, to illegally transfer funds from PAIN to the Defendants, thereby engaging in money laundering.

705.    At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that PAIN (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including the submission of fraudulent claims or issuing payments based upon documentation mailed by PAIN.

706.    At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that PAIN (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use interstate wire communication in connection with the fraudulent claims, including the submission of fraudulent claims or issuing payments by wire to Defendant's bank accounts based upon documentation mailed and/or wired by PAIN.

707.    Allstate estimates that the unlawful operation of the PAIN enterprise generated hundreds of mailings and/or wires throughout the relevant time period.

138

708.    A table highlighting the relevant examples of mailings and/or wires made in furtherance of this scheme is annexed hereto at Exhibit 23 and incorporated by reference as if set forth in its entirety.

709.    A table highlighting the relevant examples of ill-gotten payments received through the U.S. Mail and/or interstate wires and thereafter laundered these monies in furtherance of this scheme is annexed hereto at Exhibits 39-40 and incorporated by reference as if set forth in its entirety.

### G.    CPR ENTERPRISE

710.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil committed mail fraud and/or wire fraud by and through the CPR enterprise because: (a) CPR was not lawfully eligible to seek or collect benefit payments; (b) CPR was caused to seek reimbursement from Allstate even though CPR was not entitled to such reimbursement; (c) CPR used (or was caused to use) the U.S. Mail and/or interstate wires to seek reimbursement; and (d) CPR was caused to receive ill-gotten gains, which were deposited and dispersed to the Defendants through various bank accounts.

711.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, took part in the creation, operation, and/or control of CPR for the purpose of generating fraudulent medical reports and invoices.

712.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil caused CPR to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal law each time that CPR mailed and/or wired a demand for payment (i.e., invoice) to Allstate, Allstate claimants and/or the Allstate claimants' attorneys.

713.    Persons acting under the direction and control of Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil provided unnecessary medical services to Allstate insureds, when no such services were ordered by a medical professional, and generated fraudulent invoices as a result, which rendered CPR completely ineligible for reimbursement under state and federal law.

714.    Because CPR was not lawfully eligible to seek or collect benefit payments under state and federal law, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, purposely caused CPR to make a misrepresentation each and every time that CPR mailed and/or wired a document to Allstate, Allstate claimants and/or the Allstate claimants' attorneys claiming eligibility for reimbursement.

715.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and

140

through the creation, operation and control of CPR was the means by which the Defendants caused CPR's fraudulent invoices to be submitted to Allstate claimants, their attorneys and/or Allstate through the U.S. Mail and/or interstate wires.

716.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of CPR was the means by which these Defendants caused Allstate to issue payments for fraudulent medical services through the U.S. Mail and/or interstate wires concerning medical services purportedly administered at CPR.

717.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of CPR was the means by which these Defendants caused personal injury attorneys (pursuant to LOP agreements) to issue IOLTA bank checks for fraudulent medical services through the U.S. Mail and/or interstate wires.

718.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of CPR was the means by which these Defendants established various bank accounts and deposited the ill-gotten gains it received from the personal injury attorneys for the fraudulent medical treatment into these nationally insured bank accounts.

719.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco,

L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control of CPR to distribute and transfer ill-gotten gains from the nationally insured bank accounts to the other Defendants. These funds were then reinvested into CPR and other Roopani healthcare businesses, allowing the Defendants to generate further profits and expand the broader Roopani Enterprise.

720. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control over CPR to funnel ill-gotten gains. They did this by charging CPR fraudulent rent payments, which served a dual purpose: first, to create the false appearance that CPR was an independent, arms-length operation, and second, to illegally transfer funds from CPR to the Defendants, thereby engaging in money laundering.

721. At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that CPR (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including the submission of fraudulent claims or issuing payments based upon documentation mailed by CPR.

722. At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that CPR (including its employees, owner(s), contractors, and

agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use interstate wire communication in connection with the fraudulent claims, including the submission of fraudulent claims or issuing payments by wire to Defendant's bank accounts based upon documentation mailed and/or wires by CPR.

723.    Allstate estimates that the unlawful operation of the CPR enterprise generated hundreds of mailings and/or wires throughout the relevant time period.

724.    A table highlighting the relevant examples of mailings and/or wires made in furtherance of this scheme is annexed hereto at Exhibit 24 and incorporated by reference as if set forth in its entirety.

725.    A table highlighting the relevant examples of ill-gotten payments received through the U.S. Mail and/or interstate wires and thereafter laundered these monies in furtherance of this scheme is annexed hereto at Exhibits 35-36 and incorporated by reference as if set forth in its entirety.

### H.    OLYMPIC ENTERPRISE

726.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil committed mail fraud and/or wire fraud by and through the Olympic enterprise because: (a) Olympic was not lawfully eligible to seek or collect benefit payments; (b) Olympic was caused to seek reimbursement from Allstate even though Olympic was not entitled to such reimbursement; (c) Olympic used (or was caused to use) the U.S. Mail and/or interstate wires to seek reimbursement; and (d) Olympic was caused to receive ill-gotten gains, which were deposited and dispersed to the Defendants through various bank accounts.

727. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, took part in the creation, operation, and/or control of Olympic for the purpose of generating fraudulent medical reports and invoices.

728. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil caused Olympic to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal law each time that Olympic mailed and/or wired a demand for payment (i.e., invoice) to Allstate, Allstate claimants and/or the Allstate claimants' attorneys.

729. Persons acting under the direction and control of Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil provided unnecessary medical services to Allstate insureds, when no such services were ordered by a medical professional, and generated fraudulent invoices as a result, which rendered Olympic completely ineligible for reimbursement under state and federal law.

730. Because Olympic was not lawfully eligible to seek or collect benefit payments under state and federal law, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, purposely caused Olympic to make a misrepresentation each and every time

144

that Olympic mailed and/or wired a document to Allstate, Allstate claimants and/or the Allstate claimants' attorneys claiming eligibility for reimbursement.

731. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and control of Olympic was the means by which the Defendants caused Olympic's fraudulent invoices to be submitted to Allstate claimants, their attorneys and/or Allstate through the U.S. Mail and/or interstate wires.

732. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of Olympic was the means by which these Defendants caused Allstate to issue payments for fraudulent medical services through the U.S. Mail and/or interstate wires concerning medical services purportedly administered at Olympic.

733. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of Olympic was the means by which these Defendants caused personal injury attorneys (pursuant to LOP agreements) to issue IOLTA bank checks for fraudulent medical services through the U.S. Mail and/or interstate wires.

734. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and

through the creation, operation and/or control of Olympic was the means by which these Defendants established various bank accounts and deposited the ill-gotten gains it received from the personal injury attorneys for the fraudulent medical treatment into these nationally insured bank accounts.

735. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control of Olympic to distribute and transfer ill-gotten gains from the nationally insured bank accounts to the other Defendants. These funds were then reinvested into Olympic and other Roopani healthcare businesses, allowing the Defendants to generate further profits and expand the broader Roopani Enterprise.

736. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control over Olympic to funnel ill-gotten gains. They did this by charging Olympic fraudulent rent payments, which served a dual purpose: first, to create the false appearance that Olympic was an independent, arms-length operation, and second, to illegally transfer funds from Olympic to the Defendants, thereby engaging in money laundering.

737. At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that Olympic (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use (or be

146

caused to use) the U.S. Mail in connection with each of the fraudulent claims, including the submission of fraudulent claims or issuing payments based upon documentation mailed by Olympic.

738. At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that Olympic (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use interstate wire communication in connection with the fraudulent claims, including the submission of fraudulent claims or issuing payments by wire to Defendant's bank accounts based upon documentation mailed by Olympic.

739. Allstate estimates that the unlawful operation of the Olympic Enterprise generated hundreds of mailings and/or wires throughout the relevant time period.

740. A table highlighting the relevant examples of mailings and/or wires made in furtherance of this scheme is annexed hereto at Exhibit 25 and incorporated by reference as if set forth in its entirety.

741. A table highlighting the relevant examples of ill-gotten payments received through the U.S. Mail and/or interstate wires and thereafter laundered these monies in furtherance of this scheme is annexed hereto at Exhibits 37-38 and incorporated by reference as if set forth in its entirety.

I. **PRIME ENTERPRISE**

742. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco,

147

L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil committed mail fraud and/or wire fraud by and through the Prime Enterprise because: (a) Prime was not lawfully eligible to seek or collect benefit payments; (b) Prime Enterprise was caused to seek reimbursement from Allstate even though Prime was not entitled to such reimbursement; (c) Prime used (or was caused to use) the U.S. Mail and/or interstate wires to seek reimbursement; and (d) Prime was caused to receive ill-gotten gains, which were deposited and dispersed to the Defendants through various bank accounts.

743. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, took part in the creation, operation, and/or control of Prime for the purpose of generating fraudulent medical reports and invoices.

744. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil caused Prime to falsely certify that it was, in all respects, eligible to be reimbursed under applicable state and federal law each time that Prime mailed and/or wired a demand for payment (i.e., invoice) to Allstate, Allstate claimants and/or the Allstate claimants' attorneys.

745. Persons acting under the direction and control of Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil provided unnecessary medical services to Allstate insureds, when no such services were ordered by a medical professional, and generated fraudulent

invoices as a result, which rendered Prime completely ineligible for reimbursement under state and federal law.

746.    Because Prime was not lawfully eligible to seek or collect benefit payments under state and federal law, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, purposely caused Prime to make a misrepresentation each and every time that Prime mailed and/or wired a document to Allstate, Allstate claimants and/or the Allstate claimants' attorneys  claiming eligibility for reimbursement.

747.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and control of Prime was the means by which the Defendants caused Prime's fraudulent invoices to be submitted to Allstate claimants, their attorneys and/or Allstate through the U.S. Mail and/or interstate wires.

748.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of Prime was the means by which these Defendants caused Allstate to issue payments for fraudulent medical services through the U.S. Mail and/or interstate wires concerning medical services purportedly administered at Prime.

749.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco,

149

L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of Prime was the means by which these Defendants caused personal injury attorneys (pursuant to LOP agreements) to issue IOLTA bank checks for fraudulent medical services through the U.S. Mail and/or interstate wires.

750.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, by and through the creation, operation and/or control of Prime was the means by which these Defendants established various bank accounts and deposited the ill-gotten gains it received from the personal injury attorneys for the fraudulent medical treatment into these nationally insured bank accounts.

751.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control of Prime to distribute and transfer ill-gotten gains from the nationally insured bank accounts to the other Defendants. These funds were then reinvested into Prime and other Roopani healthcare businesses, allowing the Defendants to generate further profits and expand the broader Roopani Enterprise.

752.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil used their control over Prime to funnel ill-gotten gains. They did this by charging Prime fraudulent rent payments, which served a dual purpose: first, to create the false appearance that Prime was an

150

independent, arms-length operation, and second, to illegally transfer funds from Prime to the Defendants, thereby engaging in money laundering.

753. At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that Prime (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including the submission of fraudulent claims or issuing payments based upon documentation mailed by Prime.

754. At all relevant times, Defendants Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail, Barketali, Anil, and Dr. Rahil, knew that Prime (including its employees, owner(s), contractors, and agents), an insured, an insurance carrier, insured's attorney, and/or Allstate would use interstate wire communication in connection with the fraudulent claims, including the submission of fraudulent claims or issuing payments by wire to Defendant's bank accounts based upon documentation mailed and/or wired by Prime.

755. Allstate estimates that the unlawful operation of the Prime enterprise generated hundreds of mailings and/or wires throughout the relevant time period.

756. A table highlighting the relevant examples of mailings and/or wires made in furtherance of this scheme is annexed hereto at Exhibit 26 and incorporated by reference as if set forth in its entirety.

757.     A table highlighting the relevant examples of ill-gotten payments received through the U.S. Mail and/or interstate wires and thereafter laundered these monies in furtherance of this scheme is annexed hereto at Exhibits 41-42 and incorporated by reference as if set forth in its entirety.

## VI.   SPECIFIC ALLEGATIONS OF FRAUDULENT CONCEALMENT AND MATERIAL MISREPRESENTATIONS MADE TO AND RELIED UPON BY ALLSTATE

758.     At all relevant times during the operation of the CPR, EHS-Clay, Core, EHS-Focus, EHS-Grand Parkway, EHS-Med Center, Olympic, PAIN, and Prime enterprises, the Defendants purposely caused CPR, EHS-Clay, Core, EHS-Focus, EHS-Grand Parkway, EHS-Med Center, Olympic, PAIN, and Prime to falsely certify that they were, in all respects, eligible to be reimbursed under applicable state and federal laws as a means to induce Allstate to promptly pay charges related to false, fraudulent, and unnecessary medical services purportedly provided to Allstate claimants.

759.     The Defendants (and/or those individuals working under their control) purposely concealed that there was a complete lack of necessity for the medical services purportedly provided and charged for by CPR, EHS-Clay, Core, EHS-Focus, EHS-Grand Parkway, EHS-Med Center, Olympic, PAIN, and Prime.

760.     The Defendants (and/or those working under their direction and control) created and submitted to Allstate (or caused the creation and submission of) records that falsely purported to justify the necessity of the medical services purportedly provided by CPR, EHS-Clay, Core, EHS-Focus, EHS-Grand Parkway, EHS-Med Center, Olympic, PAIN, and Prime to Allstate claimants.

152

761.    The Defendants purposefully concealed their improper and unlawful kickback and referral arrangements among the other named Defendants (and other providers) from Allstate with the knowledge that had Allstate known about these arrangement, it would have never issued payments.

762.    The Defendants were responsible for: (a) directing the fraudulent services purportedly rendered on behalf of Allstate claimants through CPR, EHS-Clay, Core, EHS-Focus, EHS-Grand Parkway, EHS-Med Center, Olympic, PAIN, and Prime; (b) creating, altering, and/or fabricating records submitted to Allstate in support of services purportedly rendered on behalf of Allstate claimants; (c) billing Allstate for the fraudulent medical services purportedly rendered on behalf of Allstate claimants through CPR, EHS-Clay, Core, EHS-Focus, EHS-Grand Parkway, EHS-Med Center, Olympic, PAIN, and Prime; and (d) falsely charging for the services with the knowledge that these services were not lawfully reimbursable under applicable laws, CPR, EHS-Clay, Core, EHS-Focus, EHS-Grand Parkway, EHS-Med Center, Olympic, PAIN, and Prime were caused to falsely claim eligibility each and every time that CPR, EHS-Clay, Core, EHS-Focus, EHS-Grand Parkway, EHS-Med Center, Olympic, PAIN, and Prime sought reimbursement from Allstate.

763.    The Defendants purposefully concealed their improper and unlawful kickback and referral arrangements from Allstate, with the knowledge that had Allstate been aware of these arrangements, it would not have issued payments.

764.    As alleged above, the Defendants (or those persons working under their control) caused CPR, EHS-Clay, Core, EHS-Focus, EHS-Grand Parkway, EHS-Med Center, Olympic, PAIN, and Prime to create and submit to Allstate claim reimbursement documents and demands

for payment relative to services that were: (a) unlawful; (b) unnecessary; (c) fraudulent; and/or (d) not actually provided as represented.

765. The Defendants purposefully concealed their improper and unlawful ownership interests and control of the named providers. With the knowledge that had Allstate known about the true ownership and control of the named providers, it would not have issued payments.

766. The Defendants purposefully concealed the fact that unlicensed laypersons were directing the healthcare services at the named providers with the knowledge that had Allstate known that laypersons were directing healthcare, it would not have issued payments.

767. Such conduct is unlawful, and rendered each such claim fraudulent under applicable state and federal laws.

768. Many of the false, fraudulent, and unlawful acts, including, among other things, charging for services unlawfully provided, are not readily evident within the four corners of the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete claim at issue in this matter.

769. Thus, every time that the Defendants (along with those individuals working under their control) caused CPR, EHS-Clay, Core, EHS-Focus, EHS-Grand Parkway, EHS-Med Center, Olympic, PAIN, and Prime to submit reimbursement demands to Allstate, the Defendants (and those individuals working under their control) necessarily certified that CPR, EHS-Clay, Core, EHS-Focus, EHS-Grand Parkway, EHS-Med Center, Olympic, PAIN, and Prime were, in all respects, eligible to be reimbursed under applicable state and federal laws.

770. The full extent of the Defendants' fraudulent and unlawful acts relative to their participation in the CPR, EHS-Clay, Core, EHS-Focus, EHS-Grand Parkway, EHS-Med Center,

154

Olympic, PAIN, and Prime enterprises were not, and could not have been, known to Allstate until shortly before it commenced this action.

## VII.     ALLSTATE'S JUSTIFIABLE RELIANCE

771.     The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities, including the Roopani healthcare businesses—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control.

772.     As the Defendants did not render lawful and reasonably necessary medical treatment, each bill and accompanying documentation mailed and/or wired by or on behalf of the Defendants to Allstate constitutes a material misrepresentation.

773.     Each claim submitted to Allstate by (or on behalf of) Core, EHS-Clay, EHS-Med Center, EHS-Grand Parkway, EHS-Focus, PAIN, CPR, Olympic, and Prime represented that the Defendants were legally eligible to be reimbursed.

774.     The facially valid documents submitted to Allstate by the Defendants were designed to, and did in fact, induce Allstate to rely on the documents.

775.     Allstate believed the Defendants bills and records (including the misrepresentations in every claim) and directly relied on those representations when making payments.

776.     The Defendants knew that the medical bills that contained false representations would be submitted by claimants and/or their counsel to Allstate seeking payments. Indeed, this was the Defendants specific intent—that Allstate would believe and rely on these false statements in the Defendants' medical records to induce it to make payments.

155

777.    The sole purpose of the Defendants making material misrepresentations in their medical bills and records was to steal from Allstate.

778.    Indeed, Allstate was a direct target of the Defendants' fraud scheme.

779.    At all relevant times, the Defendants concealed from Allstate facts regarding the fact, lawfulness, and medical necessity of treatment and services allegedly provided by them to prevent Allstate from discovering that the claims submitted by and on behalf of the Defendants were not compensable under Texas law.

780.    These misrepresentations include submitting false medical documentation, including invoices, documenting the fact, lawfulness, and necessity of medical treatment and services in order to seek payment from Allstate.

781.    Evidence of the fraudulent scheme detailed in this Complaint was not discovered until after patterns had emerged and Allstate began to investigate the Defendants, revealing the true nature and full scope of their fraudulent scheme.

782.    Due to the Defendants' material misrepresentations and affirmative acts designed to conceal their fraudulent scheme, Allstate did not and could not have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

783.    In reliance on and as a result of the Defendants' misrepresentations, Allstate paid money to the Defendants to its detriment—monies that Allstate otherwise would not have paid if the Defendants had provided true and accurate information.

784.    As a result, Allstate has paid in excess of $7,905,718.43 based upon the Defendants' false documentation and invoices.

## VIII.   DAMAGES

785.     Allstate's damages calculation includes those monies that it paid to Defendants, Core, EHS-Clay, EHS-Med Center, EHS-Grand Parkway, EHS-Focus, CPR, Olympic, PAIN, and Prime in connection with first-party insurance claims. In addition, Allstate's damage calculation includes monies that it intended would be paid to the Defendants from the payments made to bodily-injury claimants.

786.     Allstate does not seek damages for anything more than what it considered to be due and payable to the Defendants based on its reliance on the bills and records created and submitted by Core, EHS-Clay, EHS-Med Center, EHS-Grand Parkway, EHS-Focus, CPR, Olympic, PAIN, and Prime.

787.     At the time it made these payments, Allstate was not aware of the fraud scheme alleged herein despite its reasonable due diligence because the Defendants went to great lengths to fraudulently conceal their scheme.

788.     Had Allstate not been misled by the representations contained in the Defendants' documentation, no payments would have been made on these claims.

789.     All of the payments were made based on the Defendants' material misrepresentations.

790.     None of the payments identified in Exhibits 27-44 were for legitimate healthcare services.

791.     There is a direct relationship between the amount of the defendants fraudulent bills and the amount paid to claimants. *See* Exhibits 27-44.

792.     Indeed, Allstate intended and the defendants did, in fact, receive these payments identified in Exhibits 27-44.

793.   In addition, the Defendants' pattern of fraudulent conduct injured Allstate in its business and property by reason of the aforesaid violations of state and federal law. Although it is not necessary for Allstate to calculate its damages with specificity at this stage of the litigation (whereas Allstate's damages continue to accrue), Allstate's injury includes, but is not limited to, compensatory damages for payments wrongfully made to or on behalf of the Defendants in connection with claims made under applicable state laws, the exact amount to be determined at trial, including:

(a)   Payments made to Core by Allstate in connection with first-party claims (totaling at least $25,858.48) as well as monies received by or on behalf of Core that were derived directly from Allstate's payments tendered in connection with the payment of third-party bodily injury claims (totaling at least $489,405.22) totaled together at least $515,263.70, the exact amount to be determined at trial. The charts at Exhibits 27-28, incorporated herein as if set forth in its entirety, identifies Allstate's first-party payments to or on behalf of Core in connection with claims determined to be false and fraudulent as of the filing of this Complaint and the monies received by Core as a direct result of Allstate's payment of third-party claims that have been determined to be fraudulent as of the filing of this Complaint.

(b)   Payments made to EHS-Clay by Allstate in connection with first-party claims (totaling at least $106,414.63) as well as monies received by or on behalf of EHS-Clay that were derived directly from Allstate's payments tendered in connection with the payment of third-party bodily injury claims (totaling at least $1,428,505.67) totaled together at least $1,534,920.30, the exact amount to be determined at trial. The charts at Exhibits 29-30, incorporated herein as if set forth in its entirety, identifies Allstate's first-party payments to or on behalf of EHS-Clay in connection with claims determined to be false and fraudulent as of the filing of this Complaint and the monies received by EHS-Clay as a direct result of Allstate's payment of third-party claims that have been determined to be fraudulent as of the filing of this Complaint.

(c)   Payments made to EHS-Med Center by Allstate in connection with first-party claims (totaling at least $121,659.79) as well as monies received by or on behalf of EHS-Med Center that were derived directly from Allstate's payments tendered in connection with the payment of third-party bodily injury claims (totaling at least $762,664.01) totaled together at least $884,323.80, the exact amount to be determined at trial. The charts at Exhibits 31-32, incorporated herein as if set forth in its entirety, identifies Allstate's first-party payments to or on behalf of EHS-Med Center in connection with claims determined to be

158

false and fraudulent as of the filing of this Complaint and the monies received by EHS-Med Center as a direct result of Allstate's payment of third-party claims that have been determined to be fraudulent as of the filing of this Complaint.

(d) Payments made to EHS-Grand Parkway by Allstate in connection with first-party claims (totaling at least $65,569.23) as well as monies received by or on behalf of EHS-Grand Parkway that were derived directly from Allstate's payments tendered in connection with the payment of third-party bodily injury claims (totaling at least $721,107.79) totaled together at least $786,677.02, the exact amount to be determined at trial. The charts at Exhibits 33-34, incorporated herein as if set forth in its entirety, identifies Allstate's first-party payments to or on behalf of EHS-Grand Parkway in connection with claims determined to be false and fraudulent as of the filing of this Complaint and the monies received by EHS-Grand Parkway as a direct result of Allstate's payment of third-party claims that have been determined to be fraudulent as of the filing of this Complaint.

(e) Payments made to CPR by Allstate in connection with first-party claims (totaling at least $15,406.70) as well as monies received by or on behalf of CPR that were derived directly from Allstate's payments tendered in connection with the payment of third-party bodily injury claims (totaling at least $1,135,074.02) totaled together at least $1,150,480.72, the exact amount to be determined at trial. The charts at Exhibits 35-36, incorporated herein as if set forth in its entirety, identifies Allstate's first-party payments to or on behalf of CPR in connection with claims determined to be false and fraudulent as of the filing of this Complaint and the monies received by CPR as a direct result of Allstate's payment of third-party claims that have been determined to be fraudulent as of the filing of this Complaint.

(f) Payments made to Olympic by Allstate in connection with first-party claims (totaling at least $23,237.46) as well as monies received by or on behalf of Olympic that were derived directly from Allstate's payments tendered in connection with the payment of third-party bodily injury claims (totaling at least $1,244,069.60) totaled together at least $1,264,307.06, the exact amount to be determined at trial. The charts at Exhibits 37-38, incorporated herein as if set forth in its entirety, identifies Allstate's first-party payments to or on behalf of Olympic in connection with claims determined to be false and fraudulent as of the filing of this Complaint and the monies received by Olympic as a direct result of Allstate's payment of third-party claims that have been determined to be fraudulent as of the filing of this Complaint.

(g) Payments made to PAIN by Allstate in connection with first-party claims (totaling at least $4,668.00) as well as monies received by or on behalf of PAIN that were derived directly from Allstate's payments tendered in connection with the payment of third-party bodily injury claims (totaling at least $736,362.80)

totaled together at least $741,030.80, the exact amount to be determined at trial. The charts at Exhibits 39-40, incorporated herein as if set forth in its entirety, identifies Allstate's first-party payments to or on behalf of PAIN in connection with claims determined to be false and fraudulent as of the filing of this Complaint and the monies received by PAIN as a direct result of Allstate's payment of third-party claims that have been determined to be fraudulent as of the filing of this Complaint.

(h) Payments made to Prime by Allstate in connection with first-party claims (totaling at least $9,083.96) as well as monies received by or on behalf of Prime that were derived directly from Allstate's payments tendered in connection with the payment of third-party bodily injury claims (totaling at least $355,631.80) totaled together at least $364,715.76, the exact amount to be determined at trial. The charts at Exhibits 41-42, incorporated herein as if set forth in its entirety, identifies Allstate's first-party payments to or on behalf of Prime in connection with claims determined to be false and fraudulent as of the filing of this Complaint and the monies received by Prime as a direct result of Allstate's payment of third-party claims that have been determined to be fraudulent as of the filing of this Complaint.

(i) Payments made to EHS-Focus by Allstate in connection with first-party claims (totaling at least $55,062.42) as well as monies received by or on behalf of EHS-Focus that were derived directly from Allstate's payments tendered in connection with the payment of third-party bodily injury claims (totaling at least $605,936.85) totaled together at least $660,999.27, the exact amount to be determined at trial. The charts at Exhibits 43-44, incorporated herein as if set forth in its entirety, identifies Allstate's first-party payments to or on behalf of EHS-Focus in connection with claims determined to be false and fraudulent as of the filing of this Complaint and the monies received by EHS-Focus as a direct result of Allstate's payment of third-party claims that have been determined to be fraudulent as of the filing of this Complaint.

## IX.    CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### CORE MD MANAGEMENT, PLLC F/K/A CORE MD MANAGEMENT, LLC ENTERPRISE
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

794.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

160

795.    Core MD Management, PLLC f/k/a Core MD Management, LLC ("Core") constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

796.    In connection with each of the claims identified within the Complaint, and for the reasons set out above, the Roopani managerial businesses, Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, and the Roopani Family, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count I Defendants") intentionally caused to be prepared and mailed and/or wired false medical documentation, including records and bills, by Core, or knew that such false medical documentation would be mailed and/or wired in the ordinary course of Core's business, or should have reasonably foreseen the mailing and/or wire of such false documentation by Core and/or by a personal injury attorney on behalf of a patient of Core would occur, in furtherance of the Count I Defendants' scheme to defraud.

797.    The proceeds obtained from Allstate through the fraudulent mailings and/or wires constituted proceeds of "specified unlawful activity," namely mail fraud, in violation of 18 U.S.C. § 1341 and wire fraud, in violation of 18 U.S.C. § 1343.

798.    Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

799.    Elite Health Services was an umbrella company that controlled the Roopani healthcare businesses including Core.

800.    Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

161

801. On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

802. Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

803. Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

804. Sohail Roopani is the President and CEO of Edloe Health.

805. Anil Roopani is a founder and the CFO of Edloe Health.

806. Edloe Health, LLC is an umbrella company used by the Roopani family to control an manage Core.

807. FMCH, LLC d/b/a Elite Health Services owns the building at 3711 Garth Road, Baytown, Texas 77521, where Core operates.

808. Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

809. Anil is the CFO of Core.

810. Core operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

811. Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

812. Barketali owns Roop Clap Properties, LLC and its assets.

813. Elite GP, LLC is a managing member of Core. Elite Holdco, L.P. is a managing member of Core.

814. Elite HSR, LLC owns Elite Holdco, L.P.

815. Elite GP, LLC and Elite HS Holdco, L.P. are partners.

816. Pioneer Healthcare, LLC owns Elite GP, LLC.

817.   The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including Core—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of the Core clinic.

818.   This direct and absolute control over Core was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopanis for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

819.   The Count I Defendants worked together to advance the alleged racketeering operation.

820.   The Count I Defendants owned, operated and/or controlled Core.

821.   The Count I Defendants created false medical records and invoices to support medically unnecessary services. These services were directed and controlled by laypersons and were performed pursuant to an improper self-referral and a predetermined treatment protocol. The services were either not rendered as represented or not rendered at all.

822.   The Count I Defendants, acting together, through Core, participated in an improper and unlawful patient referral scheme wherein Core, was paid in cash or in kind to refer Allstate claimants to the other named Roopani healthcare businesses, EHS-Clay, EHS-Med Center, EHS-Focus, EHS-Grand Parkway, PAIN, CPR, Olympic, and Prime.

823.    Had the Count I Defendants, their employees and agents, refrained from controlling, directing and participating in the improper self-referral and predetermined treatment protocol scheme through Core, then Core would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 1.

824.    The Count I Defendants orchestrated a fraudulent scheme that specifically targeted Allstate and other insurers. They deliberately avoided billing their patients directly, knowing that the patients would not have paid for such exorbitant services. Instead, they leveraged their knowledge that auto insurers, like Allstate, are obligated to pay for legitimate medical services arising from a motor vehicle accident. To bypass the patients and secure payment, they devised a deceptive system: they would not seek payment from the patients but would instead be paid by submitting records and bills directly to Allstate or through LOP agreements with personal injury attorneys.

825.    The objective of the Core Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received.

826.    The mail fraud, wire fraud, and money laundering racketeering activities conducted by the Count I Defendants are related, as the underlying predicate acts shared a common objective: to defraud Allstate and other insurance companies. The fraudulent scheme involved the submission of false medical documentation through the U.S. Mail and/or interstate wires, which induced reliance upon the Count I Defendants' misrepresentations to obtain payments. The payments were made either directly to Core by Allstate or were funneled through the attorneys of Allstate claimants and thereafter were deposited in various accounts in a manner consistent with money laundering.

827. The Count I Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

828. Allstate would not have allocated payments for the Count I Defendants' medical bills if it knew that Core's medical documentation was fraudulent.

829. The Count I Defendants knew that two (2) or more mailings and/or wires would be sent to demand and receive payment from Allstate, including, but not limited to, those mailings and/or wires identified in the chart annexed hereto at Exhibit 18.

830. As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued payments to Core for the benefit of the Count I Defendants that would not otherwise have been made.

831. The Count I Defendants engaged in money laundering and were aware that the funds represented the illicit profits of their scheme and engaged in financial transactions involving the proceeds of their unlawful activity. These transactions were conducted with the purpose of concealing and disguising the nature, source, ownership, and control of Core and the unlawful proceeds obtained through their fraudulent scheme.

832. The Count I Defendants knew that the financial transactions they initiated, which used proceeds unlawfully obtained from Allstate, were a part of a fraudulent scheme. They conducted these transactions with the intent to conceal the nature, location, source, ownership, and control of the funds and to promote their ongoing effort to defraud Allstate and other victims. These transactions include, but are not limited to, those detailed in the annexed Exhibits 27-28.

833. The Count I Defendants' pattern of fraudulent claims, each of which appeared legitimate on its face, also prevented Allstate from discovering the fraudulent scheme for a long

period of time, thus enabling the Count I Defendants to continue this unlawful scheme without being detected.

834.    By mailing and/or wiring numerous fraudulent claim-related documents in furtherance of an ongoing scheme, the Count I Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

835.    By laundering money in furtherance of the ongoing scheme, the Count I Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

836.    The unlawful activities and other misconduct alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to Core for the benefit of the Count I Defendants.

837.    The Count I Defendants participated in the conduct of the Core Enterprise through a pattern of racketeering activities.

838.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count I Defendants' conduct.

839.    The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

840.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Texas.

841.    By virtue of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

## COUNT II
### VIOLATIONS OF 18 U.S.C. § 1962(d)

166

**CORE MD MANAGEMENT, PLLC F/K/A CORE MD MANAGEMENT, LLC ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

842.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

843.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC Elite HS Holdco, L.P., Elite GP, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count II Defendants") conspired with others to violate 18 U.S.C. § 1962(c) through (or in connection with) the operation of Core MD Management, PLLC f/k/a Core MD Management, LLC ("Core").

844.   Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

845.   Elite Health Services was an umbrella company that controlled the Roopani healthcare businesses including Core.

846.   Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

847.   On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

848.   Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

849.   Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

850.   Sohail Roopani is the President and CEO of Edloe Health.

851.   Anil Roopani is a founder and the CFO of Edloe Health.

167

852.    Edloe Health, LLC is an umbrella company used by the Roopani family to control and manage Core.

853.    FMCH, LLC d/b/a Elite Health Services owns the building at 3711 Garth Road, Baytown, Texas 77521, where Core operates.

854.    Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

855.    Anil is the CFO of Core.

856.    Core operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

857.    Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

858.    Barketali owns Roop Clap Properties, LLC and its assets.

859.    Elite GP, LLC is a managing member of Core.

860.    Elite Holdco, L.P. is a managing member of Core.

861.    Elite HSR, LLC owns Elite Holdco, L.P.

862.    Elite GP, LLC and Elite HS Holdco, L.P. are partners.

863.    Pioneer Healthcare, LLC owns Elite GP, LLC.

864.    The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including Core)—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of the Core clinic.

865.    This direct and absolute control over Core was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's for subsequent treatment procedures

and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

866.    The Count II Defendants worked together, and with others, to advance the alleged racketeering operation.

867.    The Count II Defendants owned, operated and controlled Core.  They created false medical records and invoices to support medically unnecessary services that were not rendered as represented, if at all.

868.    The Count II Defendants, with others, through Core, participated in an improper and unlawful patient referral scheme wherein Core, and/or owners, employees or agents were paid by the Count II Defendants in cash or kind, for patient referrals.

869.    Had the Count II Defendants refrained from participating in the referral scheme, which facilitated the administering of medically unnecessary services, by and through Core, then Core would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 2.

870.    The objective of the Core Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received, deposited and reinvested into the overall scheme.

871.    The mail fraud, wire fraud, and money laundering racketeering activities were related. The predicate acts all had the same objective: to defraud Allstate and other insurance

169

companies. This was done by submitting false medical documentation through the U.S. Mail and/or interstate wires, which induced Allstate to rely on the Count II Defendants' misrepresentations and make payments, which they deposited into various accounts that they controlled.

872.   The Count II Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

873.   Allstate would not have allocated payments for the Count II Defendants' medical bills if it knew that the Defendants' medical documentation was fraudulent.

874.   The Count II Defendants agreed to further, facilitate, support, and operate the Core Enterprise.

875.   As such, the Count II Defendants conspired to violate 18 U.S.C. § 1962(c).

876.   The purpose of the conspiracy was to obtain payments from Allstate for healthcare services provided to patients through Core even though Core was not eligible to collect such payments from Allstate because of the unlawful conduct engaged in by the Count II Defendants.

877.   The Count II Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the unlawful operation and control of Core, the provision of false, fraudulent, and unnecessary healthcare services to Core patients, and the creation and submission to Allstate of false medical documentation that materially misrepresented Core's reimbursement eligibility.

878.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments to (or for the benefit of) Core as a result of the Count II Defendants' unlawful conduct described herein.

170

879.    By virtue of the Count II Defendants' violations of 18 U.S.C. § 1962(d), Allstate is entitled to recover from each of the Defendants identified, three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of the suit, including reasonable attorney's fees.

**COUNT III**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**CLAY HEALTHCARE SERVICES, LLC D/B/A EDLOE IMAGING - WEST HOUSTON**
**AND D/B/A ELITE HEALTH SERVICES-WEST HOUSTON ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC,**
**FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS**
**Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management,**
**LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

880.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

881.    Clay Healthcare Services LLC d/b/a Edloe Imaging - West Houston ("EHS-Clay") constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

882.    In connection with each of the claims identified within the Complaint, and for the reasons set out above, the Roopani managerial businesses, Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC , Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, the Roopani healthcare business, Core MD Management, PLLC, and the Roopani Family, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count III Defendants") intentionally caused to be prepared and mailed and/or wired false medical documentation, including records and bills,

171

by EHS-Clay, or knew that such false medical documentation would be mailed and/or wired in the ordinary course of EHS-Clay's business, or should have reasonably foreseen the mailing and/or wire of such false documentation by EHS-Clay and/or by a personal injury attorney on behalf of a patient of EHS-Clay would occur, in furtherance of the Count III Defendants' scheme to defraud.

883. The proceeds obtained from Allstate through the fraudulent mailings and/or wires constituted proceeds of "specified unlawful activity," namely mail fraud, in violation of 18 U.S.C. § 1341 and wire fraud, in violation of 18 U.S.C. § 1343.

884. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

885. Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

886. Elite Health Services was an umbrella company that controlled the Roopani healthcare businesses including EHS-Clay.

887. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

888. On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

889. Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

890. Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

891. Sohail Roopani is the President and CEO of Edloe Health.

892. Anil Roopani is a founder and the CFO of Edloe Health.

893. Anil is the CFO of Core.

894. Anil is the CFO of EHS-Clay.

172

895.    Core also operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

896.    Elite GP, LLC is a managing member of Core.

897.    Pioneer Healthcare, LLC owns Elite GP, LLC

898.    Elite Holdco, L.P. is a managing member of Core.

899.    Elite HSR, LLC owns Elite HS Holdco, LLC.

900.    Elite HS Holdco, LLC is partners with Elite GP, LLC.

901.    Elite HS Holdco, LLC owns EHS-Clay.

902.    Core refers patients, including Allstate claimants to EHS-Clay, at the direction of the Roopani Family through the Roopani managerial businesses, in violation of Texas law concerning self-referrals.

903.    EHS-Clay operates at the same location as Core, 4001 W Sam Houston Parkway North, Houston, Texas 77043.

904.    Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

905.    Barketali owns Roop Clap Properties, LLC and its assets.

906.    The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including EHS-Clay—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of EHS-Clay.

907.    This direct and absolute control over Core and EHS-Clay was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopanis for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were

173

medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

908. The Count III Defendants worked together to advance the alleged racketeering operation.

909. The Count III Defendants owned, operated and/or controlled EHS-Clay.

910. The Count III Defendants created false medical records and invoices to support medically unnecessary services. These services were directed and controlled by laypersons and were performed pursuant to an improper self-referral and a predetermined treatment protocol. The services were either not rendered as represented or not rendered at all.

911. The Count III Defendants, acting together, through Core and EHS-Clay, participated in an improper and unlawful patient referral scheme wherein EHS-Clay accepted medically unnecessary referrals from Core and others.

912. Had the Count III Defendants, their employees and agents, refrained from controlling, directing and participating in the improper self-referral and predetermined treatment protocol scheme through EHS-Clay, then EHS-Clay would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 12.

913. The Count III Defendants orchestrated a fraudulent scheme that specifically targeted Allstate and other insurers. They deliberately avoided billing their patients directly, knowing that the patients would not have paid for such exorbitant services. Instead, they leveraged their knowledge that auto insurers, like Allstate, are obligated to pay for legitimate medical services arising from a motor vehicle accident. To bypass the patients and secure payment, they

devised a deceptive system: they would not seek payment from the patients but would instead be paid by submitting records and bills directly to Allstate or through LOP agreements with personal injury attorneys.

914.    The objective of the EHS-Clay Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received.

915.    The mail fraud, wire fraud, and money laundering racketeering activities conducted by the Count III Defendants are related, as the underlying predicate acts shared a common objective: to defraud Allstate and other insurance companies. The fraudulent scheme involved the submission of false medical documentation through the U.S. Mail and/or interstate wires, which induced reliance upon the Count III Defendants' misrepresentations to obtain payments. The payments were made either directly to EHS-Clay by Allstate or were funneled through the attorneys of Allstate claimants and thereafter were deposited in various accounts in a manner consistent with money laundering.

916.    The Count III Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

917.    Allstate would not have allocated payments for the Count III Defendants' medical bills if it knew that EHS-Clay's medical documentation was fraudulent.

918.    The Count III Defendants knew that two (2) or more mailings and/or wires would be sent to demand and receive payment from Allstate, including, but not limited to, those mailings and/or wires identified in the chart annexed hereto at Exhibit 19.

919.   As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued payments to EHS-Clay for the benefit of the Count III Defendants that would not otherwise have been made.

920.   The Count III Defendants engaged in money laundering and were aware that the funds represented the illicit profits of their scheme and engaged in financial transactions involving the proceeds of their unlawful activity. These transactions were conducted with the purpose of concealing and disguising the nature, source, ownership, and control of EHS-Clay and the unlawful proceeds obtained through their fraudulent scheme.

921.   The Count III Defendants knew that the financial transactions they initiated, which used proceeds unlawfully obtained from Allstate, were a part of a fraudulent scheme. They conducted these transactions with the intent to conceal the nature, location, source, ownership, and control of the funds and to promote their ongoing effort to defraud Allstate and other victims. These transactions include, but are not limited to, those detailed in the annexed Exhibits 29-30.

922.   The Count III Defendants' pattern of fraudulent claims, each of which appeared legitimate on its face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count III Defendants to continue this unlawful scheme without being detected.

923.   By mailing and/or wiring numerous fraudulent claim-related documents in furtherance of an ongoing scheme, the Count III Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

924.   By laundering money in furtherance of the ongoing scheme, the Count III Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

925.    The unlawful activities and other misconduct alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to EHS-Clay for the benefit of the Count III Defendants.

926.    The Count III Defendants participated in the conduct of the EHS-Clay Enterprise through a pattern of racketeering activities.

927.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count III Defendants' conduct.

928.    The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

929.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Texas.

930.    By virtue of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

### COUNT IV
### VIOLATIONS OF 18 U.S.C. § 1962(d)
**CLAY HEALTHCARE SERVICES LLC D/B/A EDLOE IMAGING - WEST HOUSTON AND D/B/A ELITE HEALTH SERVICES-WEST HOUSTON ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Elite Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

931.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

932.    Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC , Elite HSR, LLC, Elite HS Holdco,

177

L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count IV Defendants") conspired with others to violate 18 U.S.C. § 1962(c) through (or in connection with) the operation of Clay Healthcare Services LLC d/b/a Edloe Imaging - West Houston ("EHS-Clay").

933. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

934. Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

935. Elite Health Services was an umbrella company that controlled the Roopani healthcare businesses including EHS-Clay.

936. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

937. On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

938. Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

939. Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

940. Sohail Roopani is the President and CEO of Edloe Health.

941. Anil Roopani is a founder and the CFO of Edloe Health.

942. Anil is the CFO of Core.

943. Anil is the CFO of EHS-Clay.

944. Core also operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

945. Elite GP, LLC is a managing member of Core.

946. Pioneer Healthcare, LLC owns Elite GP, LLC.

178

947.    Elite Holdco, L.P. is a managing member of Core.

948.    Elite HSR, LLC owns Elite HS Holdco, LLC.

949.    Elite HS Holdco, LLC is partners with Elite GP, LLC.

950.    Elite HS Holdco, LLC owns EHS-Clay.

951.    Core refers patients, including Allstate claimants to EHS-Clay, at the direction of the Roopani Family through the Roopani managerial businesses, in violation of Texas law concerning self-referrals.

952.    EHS-Clay operates at the same location as Core, 4001 W Sam Houston Parkway North, Houston, Texas 77043.

953.    Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

954.    Barketali owns Roop Clap Properties, LLC and its assets.

955.    The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including EHS-Clay—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of EHS-Clay.

956.    This direct and absolute control over Core and EHS-Clay was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a

179

violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

957.   The Count IV Defendants worked together, and with others, to advance the alleged racketeering operation.

958.   The Count IV Defendants owned, operated and controlled EHS-Clay.  They created false medical records and invoices to support medically unnecessary services that were not rendered as represented, if at all.

959.   The Count IV Defendants, with others, through Core and EHS-Clay, participated in an improper and unlawful patient referral scheme wherein EHS-Clay, and/or  owners, employees or agents were paid by the Count IV Defendants in cash or kind, for patient referrals.

960.   Had the Count IV Defendants refrained from participating in the referral scheme which facilitated the administering of medically unnecessary services, by and through EHS-Clay, then EHS-Clay would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 12.

961.   The objective of the EHS-Clay Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received, deposited and reinvested into the overall scheme.

962.   The mail fraud, wire fraud, and money laundering racketeering activities were related. The predicate acts all had the same objective: to defraud Allstate and other insurance companies. This was done by submitting false medical documentation through the U.S. Mail and/or interstate wires, which induced Allstate to rely on the Count IV Defendants'

180

misrepresentations and make payments, which they deposited into various accounts that they controlled.

963. The Count IV Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

964. Allstate would not have allocated payments for the Count IV Defendants' medical bills if it knew that the Defendants' medical documentation was fraudulent.

965. The Count IV Defendants agreed to further, facilitate, support, and operate the EHS-Clay Enterprise.

966. As such, the Count IV Defendants conspired to violate 18 U.S.C. § 1962(c).

967. The purpose of the conspiracy was to obtain payments from Allstate for healthcare services provided to patients through EHS-Clay even though EHS-Clay was not eligible to collect such payments from Allstate because of the unlawful conduct engaged in by the Count IV Defendants.

968. The Count IV Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the unlawful operation and control of EHS-Clay, the provision of false, fraudulent, and unnecessary healthcare services to EHS-Clay patients, and the creation and submission to Allstate of false medical documentation that materially misrepresented EHS-Clay's reimbursement eligibility.

969. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments to (or for the benefit of) EHS-Clay as a result of the Count IV Defendants' unlawful conduct described herein.

970. By virtue of the Count IV Defendants' violations of 18 U.S.C. § 1962(d), Allstate is entitled to recover from each of the Defendants identified, three times the damages sustained by

reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of the suit, including reasonable attorney's fees.

**COUNT V**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**MED CENTER HEALTHCARE SERVICES, L.P. D/B/A EDLOE IMAGING - MEDICAL CENTER AND D/B/A ELITE HEALTH SERVICES – MEDICAL CENTER ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

971.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

972.    Med Center Healthcare Services, L.P. d/b/a Edloe Imaging - Medical Center and d/b/a Elite Health Services – Medical Center ("EHS-Med Center") constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

973.    In connection with each of the claims identified within the Complaint, and for the reasons set out above, the Roopani managerial businesses, Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC , Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, the Roopani healthcare business, Core MD Management, PLLC f/k/a Core MD Management, LLC, and the Roopani Family, Sohail

Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.(collectively, the "Count V Defendants") intentionally caused to be prepared and mailed and/or wired false medical documentation, including records and bills, by EHS-Med Center, or knew that such false medical documentation would be mailed and/or wired in the ordinary course of EHS-Med Center's business, or should have reasonably foreseen the mailing and/or wiring of such false documentation by EHS-Med Center and/or by a personal injury attorney on behalf of a patient of EHS-Med Center would occur, in furtherance of the Count V Defendants' scheme to defraud.

974.    The proceeds obtained from Allstate through the fraudulent mailings and/or wires constituted proceeds of "specified unlawful activity," namely mail fraud, in violation of 18 U.S.C. § 1341 and wire fraud, in violation of 18 U.S.C. § 1343.

975.    Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

976.    Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

977.    Elite Health Services was an umbrella company that controlled the Roopani healthcare businesses including EHS-Med Center.

978.    Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

979.    On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

980.    Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

981.    Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

982.    Sohail Roopani is the President and CEO of Edloe Health.

983.    Anil Roopani is a founder and the CFO of Edloe Health.

984.    Anil is the CFO of Core.

985.    Anil is the CFO of EHS-Med Center.

986.    Core also operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

987.    Elite GP, LLC is a managing member of Core.

988.    Pioneer Healthcare, LLC owns Elite GP, LLC

989.    Elite Holdco, L.P. is a managing member of Core.

990.    Elite HSR, LLC owns Elite HS Holdco, LLC.

991.    Elite HS Holdco, LLC is partners with Elite GP, LLC.

992.    Elite HS Holdco, LLC owns EHS-Med Center.

993.    Core refers patients, including Allstate claimants to EHS-Med Center, at the direction of the Roopani Family through the Roopani managerial businesses, in violation of Texas law concerning self-referrals.

994.    EHS-Med Center is located with Core at 2416 W Holcombe Blvd, Houston, Texas 77030.

995.    On information and belief, the Roopani family owns or controls the property.

996.    The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including EHS-Med Center—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of EHS-Med Center.

997.    This direct and absolute control over Core and EHS-Med Center was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's for

subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

998. The Count V Defendants worked together to advance the alleged racketeering operation.

999. The Count V Defendants owned, operated and/or controlled EHS-Med Center.

1000. The Count V Defendants created false medical records and invoices to support medically unnecessary services. These services were directed and controlled by laypersons and were performed pursuant to an improper self-referral and a predetermined treatment protocol. The services were either not rendered as represented or not rendered at all.

1001. The Count V Defendants, acting together, through Core and EHS-Med Center, participated in an improper and unlawful patient referral scheme wherein EHS-Med Center accepted medically unnecessary referrals from Core MD Management, PLLC and others.

1002. Had the Count V Defendants, their employees and agents, refrained from controlling, directing and participating in the improper self-referral and predetermined treatment protocol scheme through EHS-Med Center, then EHS-Med Center would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 13.

1003. The Count V Defendants orchestrated a fraudulent scheme that specifically targeted Allstate and other insurers. They deliberately avoided billing their patients directly, knowing that the patients would not have paid for such exorbitant services. Instead, they leveraged their knowledge that auto insurers, like Allstate, are obligated to pay for legitimate medical services

185

arising from a motor vehicle accident. To bypass the patients and secure payment, they devised a deceptive system: they would not seek payment from the patients but would instead be paid by submitting records and bills directly to Allstate or through LOP agreements with personal injury attorneys.

1004.   The objective of the EHS-Med Center Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received.

1005.   The mail fraud, wire fraud, and money laundering racketeering activities conducted by the Count V Defendants are related, as the underlying predicate acts shared a common objective: to defraud Allstate and other insurance companies. The fraudulent scheme involved the submission of false medical documentation through the U.S. Mail and/or interstate wires, which induced reliance upon the Count V Defendants' misrepresentations to obtain payments. The payments were made either directly to EHS-Med Center by Allstate or were funneled through the attorneys of Allstate claimants and thereafter were deposited in various accounts in a manner consistent with money laundering.

1006.   The Count V Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1007.   Allstate would not have allocated payments for the Count V Defendants' medical bills if it knew that EHS-Med Center's medical documentation was fraudulent.

1008.   The Count V Defendants knew that two (2) or more mailings and/or wires would be sent to demand and receive payment from Allstate, including, but not limited to, those mailings and/or wires identified in the chart annexed hereto at Exhibit 20.

1009.  As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued payments to EHS-Med Center for the benefit of the Count V Defendants that would not otherwise have been made.

1010.  The Count V Defendants were engaged in and aware that the funds represented the illicit profits of their scheme and engaged in financial transactions involving the proceeds of their unlawful activity. These transactions were conducted with the purpose of concealing and disguising the nature, source, ownership, and control of EHS-Med Center and the unlawful proceeds obtained through their fraudulent scheme.

1011.  The Count V Defendants knew that the financial transactions they initiated, which used proceeds unlawfully obtained from Allstate, were a part of a fraudulent scheme. They conducted these transactions with the intent to conceal the nature, location, source, ownership, and control of the funds and to promote their ongoing effort to defraud Allstate and other victims. These transactions include, but are not limited to, those detailed in the annexed Exhibits 31-32.

1012.  The Count V Defendants' pattern of fraudulent claims, each of which appeared legitimate on its face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count V Defendants to continue this unlawful scheme without being detected.

1013.  By mailing and/or wiring numerous fraudulent claim-related documents in furtherance of an ongoing scheme, the Count V Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

1014.  By laundering money in furtherance of the ongoing scheme, the Count V Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

187

1015. The unlawful activities and other misconduct alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to EHS-Med Center for the benefit of the Count V Defendants.

1016. The Count V Defendants participated in the conduct of the EHS-Med Center Enterprise through a pattern of racketeering activities.

1017. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count V Defendants' conduct.

1018. The Count V Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1019. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Texas.

1020. By virtue of the Count V Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

**COUNT VI**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**MED CENTER HEALTHCARE SERVICES, L.P. D/B/A EDLOE IMAGING - MEDICAL CENTER AND D/B/A ELITE HEALTH SERVICES – MEDICAL CENTER ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1021. Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

188

1022. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count VI Defendants") conspired with others to violate 18 U.S.C. § 1962(c) through (or in connection with) the operation of Med Center Healthcare Services, L.P. d/b/a Edloe Imaging - Medical Center and d/b/a Elite Health Services – Medical Center ("EHS-Med Center").

1023. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

1024. Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

1025. Elite Health Services was an umbrella company that controlled the Roopani healthcare businesses including EHS-Med Center.

1026. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1027. On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1028. Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1029. Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

1030. Sohail Roopani is the President and CEO of Edloe Health.

1031. Anil Roopani is a founder and the CFO of Edloe Health.

1032. Anil is the CFO of Core.

1033. Anil is the CFO of EHS-Med Center.

189

1034. Core also operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1035. Elite GP, LLC is a managing member of Core.

1036. Pioneer Healthcare, LLC owns Elite GP, LLC

1037. Elite Holdco, L.P. is a managing member of Core.

1038. Elite HSR, LLC owns Elite HS Holdco, LLC.

1039. Elite HS Holdco, LLC is partners with Elite GP, LLC.

1040. Elite HS Holdco, LLC owns EHS-Med Center.

1041. Core refers patients, including Allstate claimants to EHS-Med Center, at the direction of the Roopani Family through the Roopani managerial businesses, in violation of Texas law concerning self-referrals.

1042. EHS-Med Center is located with Core at 2416 W Holcombe Blvd, Houston, Texas 77030.

1043. On information and belief, the Roopani family owns or controls the property.

1044. The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including EHS-Med Services—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of EHS-Med Services.

1045. This direct and absolute control over Core and EHS-Med Center was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control,

190

a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

1046.   The Count VI Defendants worked together, and with others, to advance the alleged racketeering operation.

1047.   The Count VI Defendants owned, operated and controlled EHS-Med Center.  They created false medical records and invoices to support medically unnecessary services that were not rendered as represented, if at all.

1048.   The Count VI Defendants, with others, through Core and EHS-Med Center, participated in an improper and unlawful patient referral scheme wherein EHS-Med Center, and/or owners, employees or agents were paid by the Count VI Defendants in cash or kind, for patient referrals.

1049.   Had the Count VI Defendants refrained from participating in the referral scheme which facilitated the administering of medically unnecessary services, by and through EHS-Med Center, then EHS-Med Center would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 13.

1050.   The objective of the EHS-Med Center Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received, deposited and reinvested into the overall scheme.

1051.   The mail fraud, wire fraud, and money laundering racketeering activities were related. The predicate acts all had the same objective: to defraud Allstate and other insurance companies. This was done by submitting false medical documentation through the U.S. Mail and/or interstate wires, which induced Allstate to rely on the Count VI Defendants'

misrepresentations and make payments, which they deposited into various accounts that they controlled.

1052. The Count VI Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1053. Allstate would not have allocated payments for the Count VI Defendants' medical bills if it knew that the Defendants' medical documentation was fraudulent.

1054. The Count VI Defendants agreed to further, facilitate, support, and operate the EHS-Med Center Enterprise.

1055. As such, the Count VI Defendants conspired to violate 18 U.S.C. § 1962(c).

1056. The purpose of the conspiracy was to obtain payments from Allstate for healthcare services provided to patients through EHS-Med Center even though EHS-Med Center was not eligible to collect such payments from Allstate because of the unlawful conduct engaged in by the Count VI Defendants.

1057. The Count VI Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the unlawful operation and control of EHS-Med Center, the provision of false, fraudulent, and unnecessary healthcare services to EHS-Med Center patients, and the creation and submission to Allstate of false medical documentation that materially misrepresented EHS-Med Center's reimbursement eligibility.

1058. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments to (or for the benefit of) EHS-Med Center as a result of the Count VI Defendants' unlawful conduct described herein.

1059. By virtue of the Count VI Defendants' violations of 18 U.S.C. § 1962(d), Allstate is entitled to recover from each of the Defendants identified, three times the damages sustained by

reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of the suit, including reasonable attorney's fees.

**COUNT VII**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**GRAND PARKWAY IMAGING & SLEEP CENTER, INC. D/B/A EDLOE IMAGING - SUGAR LAND AND D/B/A ELITE HEALTH SERVICES – SUGAR LAND ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1060. Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1061. Grand Parkway Imaging & Sleep Center, Inc. d/b/a Edloe Imaging - Sugar Land and d/b/a Elite Health Services – Sugar Land ("EHS-Grand Parkway") constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

1062. In connection with each of the claims identified within the Complaint, and for the reasons set out above, the Roopani managerial businesses, Sunny Trail Investments, LLC d/b/a Edloe Ventures; Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, the Roopani healthcare business, Core MD Management, PLLC f/k/a Core MD Management, LLC, and the Roopani Family, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count VII

Defendants") intentionally caused to be prepared and mailed and/or wired false medical documentation, including records and bills, by EHS-Grand Parkway, or knew that such false medical documentation would be mailed and/or wired in the ordinary course of EHS-Grand Parkway's business, or should have reasonably foreseen the mailing and/or wiring of such false documentation by EHS-Grand Parkway and/or by a personal injury attorney on behalf of a patient of EHS-Grand Parkway would occur, in furtherance of the Count VII Defendants' scheme to defraud.

1063.   The proceeds obtained from Allstate through the fraudulent mailings and/or wires constituted proceeds of "specified unlawful activity," namely mail fraud, in violation of 18 U.S.C. § 1341 and wire fraud, in violation of 18 U.S.C. § 1343.

1064.   Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

1065.   Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

1066.   Elite Health Services was an umbrella company that controlled the Roopani healthcare businesses including EHS-Grand Parkway.

1067.   Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1068.   On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1069.   Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1070.   Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

1071.   Sohail Roopani is the President and CEO of Edloe Health.

194

1072. Anil Roopani is a founder and the CFO of Edloe Health.

1073. Anil is the CFO of Core.

1074. Anil is the CFO of EHS-Grand Parkway.

1075. Barketali is listed as the President of EHS-Grand Parkway.

1076. Elite GP, LLC is a managing member of Core.

1077. Pioneer Healthcare, LLC owns Elite GP, LLC

1078. Elite Holdco, L.P. is a managing member of Core.

1079. Elite HSR, LLC owns Elite HS Holdco, LLC.

1080. Elite HS Holdco, LLC is partners with Elite GP, LLC.

1081. Core refers patients, including Allstate claimants to EHS-Grand Parkway, at the direction of the Roopani Family through the Roopani managerial businesses, in violation of Texas law concerning self-referrals.

1082. EHS-Grand Parkway is located with Core at 19875 Southwest Freeway, Suite 110, Sugar Land, Texas 77479.

1083. On information and belief, the Roopani family owns or controls this property.

1084. The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including EHS-Grand Parkway—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of EHS-Grand Parkway.

1085. This direct and absolute control over Core and EHS-Grand Parkway was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopanis for

subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

1086.   The Count VII Defendants worked together to advance the alleged racketeering operation.

1087.   The Count VII Defendants owned, operated and/or controlled EHS-Grand Parkway.

1088.   The Count VII Defendants created false medical records and invoices to support medically unnecessary services. These services were directed and controlled by laypersons and were performed pursuant to an improper self-referral and a predetermined treatment protocol. The services were either not rendered as represented or not rendered at all.

1089.   The Count VII Defendants, Sunny Trail Investments, LLC d/b/a Edloe Ventures; Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., and Elite GP, LLC, were owned and actively controlled by Barketali Roopani, Anil Roopani, Rahil Roopani, M.D., and Sohail Roopani.

1090.   The Count VII Defendants, acting together, through Core MD Management, PLLC and EHS-Grand Parkway, participated in an improper and unlawful patient referral scheme wherein EHS-Grand Parkway accepted medically unnecessary referrals from Core MD Management, PLLC and others.

1091.   Had the Count VII Defendants, their employees and agents, refrained from controlling, directing and participating in the improper self-referral and predetermined treatment

196

protocol scheme through EHS-Grand Parkway, then EHS-Grand Parkway would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 14.

1092. The Count VII Defendants orchestrated a fraudulent scheme that specifically targeted Allstate and other insurers. They deliberately avoided billing their patients directly, knowing that the patients would not have paid for such exorbitant services. Instead, they leveraged their knowledge that auto insurers, like Allstate, are obligated to pay for legitimate medical services arising from a motor vehicle accident. To bypass the patients and secure payment, they devised a deceptive system: they would not seek payment from the patients but would instead be paid by submitting records and bills directly to Allstate or through LOP agreements with personal injury attorneys.

1093. The objective of the EHS-Grand Parkway Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received.

1094. The mail fraud, wire fraud, and money laundering racketeering activities conducted by the Count VII Defendants are related, as the underlying predicate acts shared a common objective: to defraud Allstate and other insurance companies. The fraudulent scheme involved the submission of false medical documentation through the U.S. Mail and/or interstate wires, which induced reliance upon the Count VII Defendants' misrepresentations to obtain payments. The payments were made either directly to EHS-Grand Parkway by Allstate or were funneled through the attorneys of Allstate claimants and thereafter were deposited in various accounts in a manner consistent with money laundering.

1095. The Count VII Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

197

1096. Allstate would not have allocated payments for the Count VII Defendants' medical bills if it knew that EHS-Grand Parkway's medical documentation was fraudulent.

1097. The Count VII Defendants knew that two (2) or more mailings and/or wires would be sent to demand and receive payment from Allstate, including, but not limited to, those mailings and/or wires identified in the chart annexed hereto at Exhibit 21.

1098. As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued payments to EHS-Grand Parkway for the benefit of the Count VII Defendants that would not otherwise have been made.

1099. The Count VII Defendants were engaged in money laundering and aware that the funds represented the illicit profits of their scheme and engaged in financial transactions involving the proceeds of their unlawful activity. These transactions were conducted with the purpose of concealing and disguising the nature, source, ownership, and control of EHS-Grand Parkway and the unlawful proceeds obtained through their fraudulent scheme.

1100. The Count VII Defendants knew that the financial transactions they initiated, which used proceeds unlawfully obtained from Allstate, were a part of a fraudulent scheme. They conducted these transactions with the intent to conceal the nature, location, source, ownership, and control of the funds and to promote their ongoing effort to defraud Allstate and other victims. These transactions include, but are not limited to, those detailed in the annexed Exhibits 33-34.

1101. The Count VII Defendants' pattern of fraudulent claims, each of which appeared legitimate on its face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count VII Defendants to continue this unlawful scheme without being detected.

1102. By mailing and/or wiring numerous fraudulent claim-related documents in furtherance of an ongoing scheme, the Count VII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(c).

1103. By laundering money in furtherance of the ongoing scheme, the Count VII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

1104. The unlawful activities and other misconduct alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to EHS-Grand Parkway for the benefit of the Count VII Defendants.

1105. The Count VII Defendants participated in the conduct of the EHS-Grand Parkway Enterprise through a pattern of racketeering activities.

1106. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count VII Defendants' conduct.

1107. The Count VII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1108. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Texas.

1109. By virtue of the Count VII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

### COUNT VIII
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### GRAND PARKWAY IMAGING & SLEEP CENTER, INC. D/B/A EDLOE IMAGING - SUGAR LAND AND D/B/A ELITE HEALTH SERVICES – SUGAR LAND ENTERPRISE

**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1110.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1111.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count VIII Defendants") conspired with others to violate 18 U.S.C. § 1962(c) through (or in connection with) the operation of Grand Parkway Imaging & Sleep Center, Inc. d/b/a Edloe Imaging - Sugar Land and d/b/a Elite Health Services – Sugar Land ("EHS-Grand Parkway").

1112.   Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

1113.   Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

1114.   Elite Health Services was an umbrella company that controlled the Roopani healthcare businesses including EHS-Grand Parkway.

1115.   Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1116.   On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1117.   Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1118.   Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

200

1119.   Sohail Roopani is the President and CEO of Edloe Health.

1120.   Anil Roopani is a founder and the CFO of Edloe Health.

1121.   Anil is the CFO of Core.

1122.   Anil is the CFO of EHS-Grand Parkway.

1123.   Barketali is listed as the President of EHS-Grand Parkway.

1124.   Elite GP, LLC is a managing member of Core.

1125.   Pioneer Healthcare, LLC owns Elite GP, LLC.

1126.   Elite Holdco, L.P. is a managing member of Core.

1127.   Elite HSR, LLC owns Elite HS Holdco, LLC.

1128.   Elite HS Holdco, LLC is partners with Elite GP, LLC.

1129.   Core refers patients, including Allstate claimants to EHS-Grand Parkway, at the direction of the Roopani Family through the Roopani managerial businesses, in violation of Texas law concerning self-referrals.

1130.   EHS-Grand Parkway is located with Core at 19875 Southwest Freeway, Suite 110, Sugar Land, Texas 77479.

1131.   On information and belief, the Roopani family owns and/or controls this property.

1132.   The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including EHS-Grand Parkway—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of EHS-Grand Parkway.

1133.   This direct and absolute control over Core and EHS-Grand Parkway was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically

referring all patients to these other businesses owned and/or controlled by the Roopanis for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

1134. The Count VIII Defendants worked together, and with others, to advance the alleged racketeering operation.

1135. The Count VIII Defendants owned, operated and controlled EHS-Grand Parkway. They created false medical records and invoices to support medically unnecessary services that were not rendered as represented, if at all.

1136. The Count VIII Defendants, with others, through EHS-Grand Parkway, participated in an improper and unlawful patient referral scheme wherein EHS-Grand Parkway, and/or owners, employees or agents were paid by the Count VIII Defendants in cash or kind, for patient referrals.

1137. Had the Count VIII Defendants refrained from participating in the referral scheme, which facilitated the administering of medically unnecessary services, by and through EHS-Grand Parkway, then EHS-Grand Parkway would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 14.

1138. The objective of the EHS-Grand Parkway Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received, deposited and reinvested into the overall scheme.

1139. The mail fraud, wire fraud, and money laundering racketeering activities were related. The predicate acts all had the same objective: to defraud Allstate and other insurance companies. This was done by submitting false medical documentation through the U.S. Mail and/or interstate wires, which induced Allstate to rely on the Count VIII Defendants' misrepresentations and make payments, which they deposited into various accounts that they controlled.

1140. The Count VIII Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1141. Allstate would not have allocated payments for the Count VIII Defendants' medical bills if it knew that the Defendants' medical documentation was fraudulent.

1142. The Count VIII Defendants agreed to further, facilitate, support, and operate the EHS-Grand Parkway Enterprise.

1143. As such, the Count VIII Defendants conspired to violate 18 U.S.C. § 1962(c).

1144. The purpose of the conspiracy was to obtain payments from Allstate for healthcare services provided to patients through EHS-Grand Parkway even though EHS-Grand Parkway was not eligible to collect such payments from Allstate because of the unlawful conduct engaged in by the Count VIII Defendants.

1145. The Count VIII Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the unlawful operation and control of EHS-Grand Parkway, the provision of false, fraudulent, and unnecessary healthcare services to EHS-Grand Parkway patients, and the creation and submission to Allstate of false medical documentation that materially misrepresented EHS-Grand Parkway's reimbursement eligibility.

1146. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments to (or for the benefit of) EHS-Grand Parkway as a result of the Count VIII Defendants' unlawful conduct described herein.

1147. By virtue of the Count VIII Defendants' violations of 18 U.S.C. § 1962(d), Allstate is entitled to recover from each of the Defendants identified, three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of the suit, including reasonable attorney's fees.

**COUNT IX**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**FOCUS MEDCARE, INC. D/B/A EDLOE IMAGING - BAYTOWN ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1148. Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1149. Focus Medcare, Inc. d/b/a Edloe Imaging - Baytown ("EHS-Focus") constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

1150. In connection with each of the claims identified within the Complaint, and for the reasons set out above, the Roopani managerial businesses, Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC, and the Roopani Family, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count IX Defendants") intentionally caused to be prepared and mailed and/or wired false medical documentation, including records and bills, by EHS-Focus, or knew that such

false medical documentation would be mailed and/or wired in the ordinary course of EHS-Focus's business, or should have reasonably foreseen the mailing and/or wire of such false documentation by EHS-Focus and/or by a personal injury attorney on behalf of a patient of EHS-Focus would occur, in furtherance of the Count IX Defendants' scheme to defraud.

1151. The proceeds obtained from Allstate through the fraudulent mailings and/or wires constituted proceeds of "specified unlawful activity," namely mail fraud, in violation of 18 U.S.C. § 1341 and wire fraud, in violation of 18 U.S.C. § 1343.

1152. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

1153. Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

1154. Elite Health Services was an umbrella company that controlled the Roopani healthcare businesses including EHS-Focus.

1155. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1156. On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1157. Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1158. Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

1159. Sohail Roopani is the President and CEO of Edloe Health.

1160. Anil Roopani is a founder and the CFO of Edloe Health.

1161. Anil is the CFO of Core.

1162. Anil is the CFO of EHS-Focus.

1163.   Sohail is the director and President of EHS-Focus.

1164.   Elite GP, LLC is a managing member of Core.

1165.   Pioneer Healthcare, LLC owns Elite GP, LLC

1166.   Elite Holdco, L.P. is a managing member of Core.

1167.   Elite HSR, LLC owns Elite HS Holdco, LLC.

1168.   Elite HS Holdco, LLC is partners with Elite GP, LLC.

1169.   Core refers patients, including Allstate claimants to EHS-Focus, at the direction of the Roopani Family through the Roopani managerial businesses, in violation of Texas law concerning self-referrals.

1170.   EHS-Focus is located with Core at 3711 Garth Rd. Suite C, Baytown, Texas 77521.

1171.   On information and belief, Elite Health Services owns the property located at 3711 Garth Road, Baytown, Texas 77521.

1172.   The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including EHS-Focus—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of EHS-Focus.

1173.   This direct and absolute control over Core and EHS-Focus was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a

violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

1174. The Count IX Defendants worked together to advance the alleged racketeering operation.

1175. The Count IX Defendants owned, operated and/or controlled EHS-Focus.

1176. The Count IX Defendants created false medical records and invoices to support medically unnecessary services. These services were directed and controlled by laypersons and were performed pursuant to an improper self-referral and a predetermined treatment protocol. The services were either not rendered as represented or not rendered at all.

1177. The Count IX Defendants, acting together, through Core and EHS-Focus, participated in an improper and unlawful patient referral scheme wherein EHS-Focus accepted medically unnecessary referrals from Core and others.

1178. Had the Count IX Defendants, their employees and agents, refrained from controlling, directing and participating in the improper self-referral and predetermined treatment protocol scheme through EHS-Focus, then EHS-Focus would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 15.

1179. The Count IX Defendants orchestrated a fraudulent scheme that specifically targeted Allstate and other insurers. They deliberately avoided billing their patients directly, knowing that the patients would not have paid for such exorbitant services. Instead, they leveraged their knowledge that auto insurers, like Allstate, are obligated to pay for legitimate medical services arising from a motor vehicle accident. To bypass the patients and secure payment, they devised a deceptive system: they would not seek payment from the patients but would instead be

paid by submitting records and bills directly to Allstate or through LOP agreements with personal injury attorneys.

1180.   The objective of the EHS-Focus Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received.

1181.   The mail fraud, wire fraud, and money laundering racketeering activities conducted by the Count IX Defendants are related, as the underlying predicate acts shared a common objective: to defraud Allstate and other insurance companies. The fraudulent scheme involved the submission of false medical documentation through the U.S. Mail and/or interstate wires, which induced reliance upon the Count IX Defendants' misrepresentations to obtain payments. The payments were made either directly to EHS-Focus by Allstate or were funneled through the attorneys of Allstate claimants and thereafter were deposited in various accounts in a manner consistent with money laundering.

1182.   The Count IX Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1183.   Allstate would not have allocated payments for the Count IX Defendants' medical bills if it knew that EHS-Focus's medical documentation was fraudulent.

1184.   The Count IX Defendants knew that two (2) or more mailings and/or wires would be sent to demand and receive payment from Allstate, including, but not limited to, those mailings and/or wires identified in the chart annexed hereto at Exhibit 22.

1185.   As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued payments to EHS-Focus for the benefit of the Count IX Defendants that would not otherwise have been made.

1186.   The Count IX Defendants were engaged in and aware that the funds represented the illicit profits of their scheme and engaged in financial transactions involving the proceeds of their unlawful activity. These transactions were conducted with the purpose of concealing and disguising the nature, source, ownership, and control of EHS-Focus and the unlawful proceeds obtained through their fraudulent scheme.

1187.   The Count IX Defendants knew that the financial transactions they initiated, which used proceeds unlawfully obtained from Allstate, were a part of a fraudulent scheme. They conducted these transactions with the intent to conceal the nature, location, source, ownership, and control of the funds and to promote their ongoing effort to defraud Allstate and other victims. These transactions include, but are not limited to, those detailed in the annexed Exhibits 43-44.

1188.   The Count IX Defendants' pattern of fraudulent claims, each of which appeared legitimate on its face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count IX Defendants to continue this unlawful scheme without being detected.

1189.   By mailing and/or wiring numerous fraudulent claim-related documents in furtherance of an ongoing scheme, the Count IX Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

1190.   By laundering money in furtherance of the ongoing scheme, the Count IX Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

1191.   The unlawful activities and other misconduct alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to EHS-Focus for the benefit of the Count IX Defendants.

1192.   The Count IX Defendants participated in the conduct of the EHS-Focus Enterprise through a pattern of racketeering activities.

1193.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count IX Defendants' conduct.

1194.   The Count IX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1195.   Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Texas.

1196.   By virtue of the Count IX Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

### COUNT X
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### FOCUS MEDCARE, INC. D/B/A EDLOE IMAGING - BAYTOWN ENTERPRISE
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1197.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1198.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count X

210

Defendants") conspired with others to violate 18 U.S.C. § 1962(c) through (or in connection with) the operation of Focus Medcare, Inc. d/b/a Edloe Imaging - Baytown ("EHS-Focus").

1199.   Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

1200.   Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

1201.   Elite Health Services was an umbrella company that controlled the Roopani healthcare businesses including EHS-Focus.

1202.   Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1203.   On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1204.   Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1205.   Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

1206.   Sohail Roopani is the President and CEO of Edloe Health.

1207.   Anil Roopani is a founder and the CFO of Edloe Health.

1208.   Anil is the CFO of Core.

1209.   Anil is the CFO of EHS-Focus.

1210.   Sohail is the director and President of EHS-Focus.

1211.   Elite GP, LLC is a managing member of Core.

1212.   Pioneer Healthcare, LLC owns Elite GP, LLC.

1213.   Elite Holdco, L.P. is a managing member of Core.

1214.   Elite HSR, LLC owns Elite HS Holdco, LLC.

1215.   Elite HS Holdco, LLC is partners with Elite GP, LLC.

1216.   Core refers patients, including Allstate claimants to EHS-Focus, at the direction of the Roopani Family through the Roopani managerial businesses, in violation of Texas law concerning self-referrals.

1217.   EHS-Focus is located with Core at 3711 Garth Rd. Suite C, Baytown, Texas 77521.

1218.   On information and belief, Elite Health Services owns the property located at 3711 Garth Road, Baytown, Texas 77521.

1219.   The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including EHS-Focus—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of EHS-Focus.

1220.   This direct and absolute control over Core and EHS-Focus was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

1221.   The Count X Defendants worked together, and with others, to advance the alleged racketeering operation.

1222. The Count X Defendants owned, operated and controlled EHS-Focus. They created false medical records and invoices to support medically unnecessary services that were not rendered as represented, if at all.

1223. The Count X Defendants, with others, through EHS-Focus, participated in an improper and unlawful patient referral scheme wherein EHS-Focus, and/or owners, employees or agents were paid by the Count X Defendants in cash or kind, for patient referrals.

1224. Had the Count X Defendants refrained from participating in the referral scheme which facilitated the administering of medically unnecessary services, by and through EHS-Focus, then EHS-Focus would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 15.

1225. The objective of the EHS-Focus Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received, deposited and reinvested into the overall scheme.

1226. The mail fraud, wire fraud, and money laundering racketeering activities were related. The predicate acts all had the same objective: to defraud Allstate and other insurance companies. This was done by submitting false medical documentation through the U.S. Mail and/or interstate wires, which induced Allstate to rely on the Count X Defendants' misrepresentations and make payments, which they deposited into various accounts that they controlled.

1227. The Count X Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1228.   Allstate would not have allocated payments for the Count X Defendants' medical bills if it knew that the Defendants' medical documentation was fraudulent.

1229.   The Count X Defendants agreed to further, facilitate, support, and operate the EHS-Focus Enterprise.

1230.   As such, the Count X Defendants conspired to violate 18 U.S.C. § 1962(c).

1231.   The purpose of the conspiracy was to obtain payments from Allstate for healthcare services provided to patients through EHS-Focus even though EHS-Focus was not eligible to collect such payments from Allstate because of the unlawful conduct engaged in by the Count X Defendants.

1232.   The Count X Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the unlawful operation and control of EHS-Focus, the provision of false, fraudulent, and unnecessary healthcare services to EHS-Focus patients, and the creation and submission to Allstate of false medical documentation that materially misrepresented EHS-Focus's reimbursement eligibility.

1233.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments to (or for the benefit of) EHS-Focus as a result of the Count X Defendants' unlawful conduct described herein.

1234.   By virtue of the Count X Defendants' violations of 18 U.S.C. § 1962(d), Allstate is entitled to recover from each of the Defendants identified, three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of the suit, including reasonable attorney's fees.

**COUNT XI**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**PAIN ALLEVIATION AND INTERVENTIONAL NEEDS, PLLC F/K/A PAIN ALLEVIATION AND INTERVENTIONAL NEEDS, LLC ENTERPRISE**

214

**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1235.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1236.   Pain Alleviation and Interventional Needs, PLLC f/k/a Pain Alleviation and Interventional Needs, LLC ("PAIN") constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

1237.   In connection with each of the claims identified within the Complaint, and for the reasons set out above, the Roopani managerial businesses, Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, the Roopani healthcare business, Core MD Management, PLLC f/k/a Core MD Management, LLC, and the Roopani Family, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count XI Defendants") intentionally caused to be prepared and mailed and/or wired false medical documentation, including records and bills, by PAIN, or knew that such false medical documentation would be mailed and/or wired in the ordinary course of PAIN's business, or should have reasonably foreseen the mailing and/or wire of such false documentation by PAIN and/or by a personal injury attorney on behalf of a patient of PAIN would occur, in furtherance of the Count XI Defendants' scheme to defraud.

1238.   The proceeds obtained from Allstate through the fraudulent mailings and/or wires constituted proceeds of "specified unlawful activity," namely mail fraud, in violation of 18 U.S.C. § 1341 and wire fraud, in violation of 18 U.S.C. § 1343.

1239. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

1240. Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

1241. FMCH, LLC d/b/a Elite Health Services owns the building at 3711 Garth Road, Baytown, Texas 77521, where Core and CPR operate.

1242. Elite Health Services was an umbrella company that managed and controlled the Roopani healthcare businesses, including Core.

1243. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1244. Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

1245. On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1246. Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1247. Sohail Roopani is the president and CEO of Edloe Health.

1248. Anil Roopani is a founder and the CFO of Edloe Health.

1249. Edloe Health, is an umbrella company used by the Roopani family to control an manage Core.

1250. Anil is the CFO of Core.

1251. Core operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1252. PAIN also operates out of 4001 W. Sam Houston Parkway North, Texas 77043.

1253. Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

216

1254.  Barketali owns Roop Clap Properties, LLC and its assets.

1255.  PAIN and Core also operate from 2416 W Holcombe, Houston Texas 77030.

1256.  On information and belief, the aforementioned properties are controlled by the Roopani family.

1257.  Elite GP, LLC is a managing member of Core.

1258.  Elite Holdco, L.P. is a managing member of Core.

1259.  Elite HSR, LLC owns Elite Holdco, L.P.

1260.  Sohail is the director and manager of PAIN.

1261.  Elite GP, LLC and Elite HS Holdco, L.P. are partners.

1262.  Pioneer Healthcare, LLC owns Elite GP, LLC.

1263.  The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including PAIN—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of Prime.

1264.  This direct and absolute control over Core and PAIN was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's, including PAIN, for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

1265. The Count XI Defendants worked together to advance the alleged racketeering operation.

1266. The Count XI Defendants owned, operated and/or controlled PAIN.

1267. The Count XI Defendants created false medical records and invoices to support medically unnecessary services. These services were directed and controlled by laypersons and were performed pursuant to an improper self-referral and a predetermined treatment protocol. The services were either not rendered as represented or not rendered at all.

1268. The Count XI Defendants, acting together, through Core MD Management, PLLC and PAIN, participated in an improper and unlawful patient referral scheme wherein PAIN accepted medically unnecessary referrals from Core MD Management, PLLC and others.

1269. Had the Count XI Defendants, their employees and agents, refrained from controlling, directing and participating in the improper self-referral and predetermined treatment protocol scheme through PAIN, then PAIN would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 2.

1270. The Count XI Defendants orchestrated a fraudulent scheme that specifically targeted Allstate and other insurers. They deliberately avoided billing their patients directly, knowing that the patients would not have paid for such exorbitant services. Instead, they leveraged their knowledge that auto insurers, like Allstate, are obligated to pay for legitimate medical services arising from a motor vehicle accident. To bypass the patients and secure payment, they devised a deceptive system: they would not seek payment from the patients but would instead be paid by submitting records and bills directly to Allstate or through LOP agreements with personal injury attorneys.

1271.  The objective of the PAIN Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received.

1272.  The mail fraud, wire fraud, and money laundering racketeering activities conducted by the Count XI Defendants are related, as the underlying predicate acts shared a common objective: to defraud Allstate and other insurance companies. The fraudulent scheme involved the submission of false medical documentation through the U.S. Mail and/or interstate wires, which induced reliance upon the Count XI Defendants' misrepresentations to obtain payments. The payments were made either directly to PAIN by Allstate or were funneled through the attorneys of Allstate claimants and thereafter were deposited in various accounts in a manner consistent with money laundering.

1273.  The Count XI Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1274.  Allstate would not have allocated payments for the Count XI Defendants' medical bills if it knew that PAIN's medical documentation was fraudulent.

1275.  The Count XI Defendants knew that two (2) or more mailings and/or wires would be sent to demand and receive payment from Allstate, including, but not limited to, those mailings and/or wires identified in the chart annexed hereto at Exhibit 23.

1276.  As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued payments to PAIN for the benefit of the Count XI Defendants that would not otherwise have been made.

1277.  The Count XI Defendants were engaged in and aware that the funds represented the illicit profits of their scheme and engaged in financial transactions involving the proceeds of their

219

unlawful activity. These transactions were conducted with the purpose of concealing and disguising the nature, source, ownership, and control of PAIN and the unlawful proceeds obtained through their fraudulent scheme.

1278. The Count XI Defendants knew that the financial transactions they initiated, which used proceeds unlawfully obtained from Allstate, were a part of a fraudulent scheme. They conducted these transactions with the intent to conceal the nature, location, source, ownership, and control of the funds and to promote their ongoing effort to defraud Allstate and other victims. These transactions include, but are not limited to, those detailed in the annexed Exhibits 39-40.

1279. The Count XI Defendants' pattern of fraudulent claims, each of which appeared legitimate on its face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count XI Defendants to continue this unlawful scheme without being detected.

1280. By mailing and/or wiring numerous fraudulent claim-related documents in furtherance of an ongoing scheme, the Count XI Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

1281. By laundering money in furtherance of the ongoing scheme, the Count XI Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

1282. The unlawful activities and other misconduct alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to PAIN for the benefit of the Count XI Defendants.

1283. The Count XI Defendants participated in the conduct of the PAIN Enterprise through a pattern of racketeering activities.

1284.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XI Defendants' conduct.

1285.   The Count XI Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1286.   Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Texas.

1287.   By virtue of the Count XI Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

**COUNT XII**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**PAIN ALLEVIATION AND INTERVENTIONAL NEEDS, PLLC F/K/A PAIN ALLEVIATION AND INTERVENTIONAL NEEDS, LLC ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1288.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1289.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count XII Defendants") conspired with others to violate 18 U.S.C. § 1962(c) through (or in connection with) the operation of Pain Alleviation and Interventional Needs, PLLC f/k/a Pain Alleviation and Interventional Needs, LLC ("PAIN").

221

1290.   Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

1291.   Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

1292.   FMCH, LLC d/b/a Elite Health Services owns the building at 3711 Garth Road, Baytown, Texas 77521, where Core and CPR operate.

1293.   Elite Health Services was an umbrella company that managed and controlled the Roopani healthcare businesses, including Core.

1294.   Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1295.   Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

1296.   On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1297.   Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1298.   Sohail Roopani is the president and CEO of Edloe Health.

1299.   Anil Roopani is a founder and the CFO of Edloe Health.

1300.   Edloe Health, is an umbrella company used by the Roopani family to control an manage Core.

1301.   Anil is the CFO of Core.

1302.   Core operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1303.   PAIN also operates out of 4001 W. Sam Houston Parkway North, Texas 77043.

1304.   Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1305. Barketali owns Roop Clap Properties, LLC and its assets.

1306. PAIN and Core also operate from 2416 W Holcombe, Houston Texas 77030.

1307. On information and belief, the aforementioned properties are controlled by the Roopani family.

1308. Elite GP, LLC is a managing member of Core.

1309. Elite Holdco, L.P. is a managing member of Core.

1310. Elite HSR, LLC owns Elite Holdco, L.P.

1311. Sohail is the director and manager of PAIN.

1312. Elite GP, LLC and Elite HS Holdco, L.P. are partners.

1313. Pioneer Healthcare, LLC owns Elite GP, LLC.

1314. The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including PAIN—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of PAIN.

1315. This direct and absolute control over Core and PAIN was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's, including Prime, for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

223

1316. The Count XII Defendants worked together, and with others, to advance the alleged racketeering operation.

1317. The Count XII Defendants owned, operated and controlled PAIN. They created false medical records and invoices to support medically unnecessary services that were not rendered as represented, if at all.

1318. The Count XII Defendants, with others, through Core and PAIN, participated in an improper and unlawful patient referral scheme wherein PAIN, and/or owners, employees or agents were paid by the Count XII Defendants in cash or kind, for patient referrals.

1319. Had the Count XII Defendants refrained from participating in the referral scheme which facilitated the administering of medically unnecessary services, by and through PAIN, then PAIN would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 2.

1320. The objective of the PAIN Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received, deposited and reinvested into the overall scheme.

1321. The mail fraud, wire fraud, and money laundering racketeering activities were related. The predicate acts all had the same objective: to defraud Allstate and other insurance companies. This was done by submitting false medical documentation through the U.S. Mail and/or interstate wires, which induced Allstate to rely on the Count XII Defendants' misrepresentations and make payments, which they deposited into various accounts that they controlled.

224

1322. The Count XII Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1323. Allstate would not have allocated payments for the Count XII Defendants' medical bills if it knew that the Defendants' medical documentation was fraudulent.

1324. The Count XII Defendants agreed to further, facilitate, support, and operate the PAIN Enterprise.

1325. As such, the Count XII Defendants conspired to violate 18 U.S.C. § 1962(c).

1326. The purpose of the conspiracy was to obtain payments from Allstate for healthcare services provided to patients through PAIN even though PAIN was not eligible to collect such payments from Allstate because of the unlawful conduct engaged in by the Count XII Defendants.

1327. The Count XII Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the unlawful operation and control of PAIN, the provision of false, fraudulent, and unnecessary healthcare services to PAIN patients, and the creation and submission to Allstate of false medical documentation that materially misrepresented PAIN's reimbursement eligibility.

1328. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments to (or for the benefit of) PAIN as a result of the Count XII Defendants' unlawful conduct described herein.

1329. By virtue of the Count XII Defendants' violations of 18 U.S.C. § 1962(d), Allstate is entitled to recover from each of the Defendants identified, three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of the suit, including reasonable attorney's fees.

<u>**COUNT XIII**</u>
**VIOLATIONS OF 18 U.S.C. § 1962(c)**

225

**CENTERS FOR PAIN RELIEF, PLLC ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1330.  Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1331.  Centers for Pain Relief, PLLC ("CPR") constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

1332.  In connection with each of the claims identified within the Complaint, and for the reasons set out above, the Roopani managerial businesses, Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, and the Roopani Family, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count XIII Defendants") intentionally caused to be prepared and mailed and/or wired false medical documentation, including records and bills, by CPR, or knew that such false medical documentation would be mailed and/or wired in the ordinary course of CPR's business, or should have reasonably foreseen the mailing and/or wire of such false documentation by CPR and/or by a personal injury attorney on behalf of a patient of CPR would occur, in furtherance of the Count XIII Defendants' scheme to defraud.

1333.  The proceeds obtained from Allstate through the fraudulent mailings and/or wires constituted proceeds of "specified unlawful activity," namely mail fraud, in violation of 18 U.S.C. § 1341 and wire fraud, in violation of 18 U.S.C. § 1343.

1334.  Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

226

1335. Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

1336. FMCH, LLC d/b/a Elite Health Services owns the building at 3711 Garth Road, Baytown, Texas 77521, where Core and CPR operate.

1337. Elite Health Services was an umbrella company that managed and controlled the Roopani healthcare businesses, including Core.

1338. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1339. Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

1340. On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1341. Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1342. Sohail Roopani is the president and CEO of Edloe Health.

1343. Anil Roopani is a founder and the CFO of Edloe Health.

1344. Edloe Health, is an umbrella company used by the Roopani family to control an manage Core.

1345. Anil is the CFO of Core.

1346. Core operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1347. CPR also operates out of 4001 W. Sam Houston Parkway North, Texas 77043.

1348. Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1349. Barketali owns Roop Clap Properties, LLC and its assets.

1350. CPR and Core also operate from 2416 W Holcombe, Houston Texas 77030.

227

1351. On information and belief, the aforementioned properties are controlled by the Roopani family.

1352. Elite GP, LLC is a managing member of Core.

1353. Elite Holdco, L.P. is a managing member of Core.

1354. Elite HSR, LLC owns Elite Holdco, L.P.

1355. Sohail is the director and manager of CPR.

1356. Elite GP, LLC and Elite HS Holdco, L.P. are partners.

1357. Pioneer Healthcare, LLC owns Elite GP, LLC.

1358. The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including CPR—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of CPR.

1359. This direct and absolute control over Core and CPR was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's, including CPR, for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

1360. The Count XIII Defendants worked together to advance the alleged racketeering operation.

1361. The Count XIII Defendants owned, operated and/or controlled CPR.

1362.   The Count XIII Defendants created false medical records and invoices to support medically unnecessary services. These services were directed and controlled by laypersons and were performed pursuant to an improper self-referral and a predetermined treatment protocol. The services were either not rendered as represented or not rendered at all.

1363.   The Count XIII Defendants, acting together, through Core MD Management, PLLC and CPR, participated in an improper and unlawful patient referral scheme wherein CPR accepted medically unnecessary referrals from Core MD Management, PLLC and others.

1364.   Had the Count XIII Defendants, their employees and agents, refrained from controlling, directing and participating in the improper self-referral and predetermined treatment protocol scheme through CPR, then CPR would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 3.

1365.   The Count XIII Defendants orchestrated a fraudulent scheme that specifically targeted Allstate and other insurers. They deliberately avoided billing their patients directly, knowing that the patients would not have paid for such exorbitant services. Instead, they leveraged their knowledge that auto insurers, like Allstate, are obligated to pay for legitimate medical services arising from a motor vehicle accident. To bypass the patients and secure payment, they devised a deceptive system: they would not seek payment from the patients but would instead be paid by submitting records and bills directly to Allstate or through LOP agreements with personal injury attorneys.

1366.   The objective of the CPR Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received.

1367.    The mail fraud, wire fraud, and money laundering racketeering activities conducted by the Count XIII Defendants are related, as the underlying predicate acts shared a common objective: to defraud Allstate and other insurance companies. The fraudulent scheme involved the submission of false medical documentation through the U.S. Mail and/or interstate wires, which induced reliance upon the Count XIII Defendants' misrepresentations to obtain payments. The payments were made either directly to CPR by Allstate or were funneled through the attorneys of Allstate claimants and thereafter were deposited in various accounts in a manner consistent with money laundering.

1368.    The Count XIII Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1369.    Allstate would not have allocated payments for the Count XIII Defendants' medical bills if it knew that CPR's medical documentation was fraudulent.

1370.    The Count XIII Defendants knew that two (2) or more mailings and/or wires would be sent to demand and receive payment from Allstate, including, but not limited to, those mailings and/or wires identified in the chart annexed hereto at Exhibit 24.

1371.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued payments to CPR for the benefit of the Count XIII Defendants that would not otherwise have been made.

1372.    The Count XIII Defendants were engaged in and aware that the funds represented the illicit profits of their scheme and engaged in financial transactions involving the proceeds of their unlawful activity. These transactions were conducted with the purpose of concealing and disguising the nature, source, ownership, and control of CPR and the unlawful proceeds obtained through their fraudulent scheme.

1373. The Count XIII Defendants knew that the financial transactions they initiated, which used proceeds unlawfully obtained from Allstate, were a part of a fraudulent scheme. They conducted these transactions with the intent to conceal the nature, location, source, ownership, and control of the funds and to promote their ongoing effort to defraud Allstate and other victims. These transactions include, but are not limited to, those detailed in the annexed Exhibits 35-36.

1374. The Count XIII Defendants' pattern of fraudulent claims, each of which appeared legitimate on its face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count XIII Defendants to continue this unlawful scheme without being detected.

1375. By mailing and/or wiring numerous fraudulent claim-related documents in furtherance of an ongoing scheme, the Count XIII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

1376. By laundering money in furtherance of the ongoing scheme, the Count XIII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

1377. The unlawful activities and other misconduct alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to CPR for the benefit of the Count XIII Defendants.

1378. The Count XIII Defendants participated in the conduct of the CPR Enterprise through a pattern of racketeering activities.

1379. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XIII Defendants' conduct.

1380. The Count XIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1381. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Texas.

1382. By virtue of the Count XIII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

**COUNT XIV**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**CENTERS FOR PAIN RELIEF, PLLC ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1383. Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1384. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count XIV Defendants") conspired with others to violate 18 U.S.C. § 1962(c) through (or in connection with) the operation of Centers for Pain Relief, PLLC ("CPR").

1385. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

1386. Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

1387. FMCH, LLC d/b/a Elite Health Services owns the building at 3711 Garth Road, Baytown, Texas 77521, where Core and CPR operate.

1388. Elite Health Services was an umbrella company that managed and controlled the Roopani healthcare businesses, including Core.

1389. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1390. Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

1391. On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1392. Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1393. Sohail Roopani is the president and CEO of Edloe Health.

1394. Anil Roopani is a founder and the CFO of Edloe Health.

1395. Edloe Health, is an umbrella company used by the Roopani family to control an manage Core.

1396. Anil is the CFO of Core.

1397. Core operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1398. CPR also operates out of 4001 W. Sam Houston Parkway North, Texas 77043.

1399. Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1400. Barketali owns Roop Clap Properties, LLC and its assets.

1401. CPR and Core also operate from 2416 W Holcombe, Houston Texas 77030.

1402. On information and belief, the aforementioned properties are controlled by the Roopani family.

233

1403.   Elite GP, LLC is a managing member of Core.

1404.   Elite Holdco, L.P. is a managing member of Core.

1405.   Elite HSR, LLC owns Elite Holdco, L.P.

1406.   Sohail is the director and manager of CPR.

1407.   Elite GP, LLC and Elite HS Holdco, L.P. are partners.

1408.   Pioneer Healthcare, LLC owns Elite GP, LLC.

1409.   The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including CPR—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of CPR.

1410.   This direct and absolute control over Core and CPR was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's, including CPR, for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

1411.   The Count XIV Defendants worked together, and with others, to advance the alleged racketeering operation.

1412.   The Count XIV Defendants owned, operated and controlled CPR.  They created false medical records and invoices to support medically unnecessary services that were not rendered as represented, if at all.

234

1413. The Count XIV Defendants, with others, through Core and CPR, participated in an improper and unlawful patient referral scheme wherein CPR, and/or owners, employees or agents were paid by the Count XIV Defendants in cash or kind, for patient referrals.

1414. Had the Count XIV Defendants refrained from participating in the referral scheme, which facilitated the administering of medically unnecessary services, by and through CPR, then CPR would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 3.

1415. The objective of the CPR Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received, deposited and reinvested into the overall scheme.

1416. The mail fraud, wire fraud, and money laundering racketeering activities were related. The predicate acts all had the same objective: to defraud Allstate and other insurance companies. This was done by submitting false medical documentation through the U.S. Mail and/or interstate wires, which induced Allstate to rely on the Count XIV Defendants' misrepresentations and make payments, which they deposited into various accounts that they controlled.

1417. The Count XIV Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1418. Allstate would not have allocated payments for the Count XIV Defendants' medical bills if it knew that the Defendants' medical documentation was fraudulent.

1419. The Count XIV Defendants agreed to further, facilitate, support, and operate the CPR Enterprise.

1420.　As such, the Count XIV Defendants conspired to violate 18 U.S.C. § 1962(c).

1421.　The purpose of the conspiracy was to obtain payments from Allstate for healthcare services provided to patients through CPR even though CPR was not eligible to collect such payments from Allstate because of the unlawful conduct engaged in by the Count XIV Defendants.

1422.　The Count XIV Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the unlawful operation and control of CPR, the provision of false, fraudulent, and unnecessary healthcare services to CPR patients, and the creation and submission to Allstate of false medical documentation that materially misrepresented CPR's reimbursement eligibility.

1423.　Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments to (or for the benefit of) CPR as a result of the Count XIV Defendants' unlawful conduct described herein.

1424.　By virtue of the Count XIV Defendants' violations of 18 U.S.C. § 1962(d), Allstate is entitled to recover from each of the Defendants identified, three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of the suit, including reasonable attorney's fees.

**COUNT XV**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**OLYMPIC SPINE AND JOINT, PLLC ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1425.　Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

236

1426.    Olympic Spine and Joint, PLLC ("Olympic") constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

1427.    In connection with each of the claims identified within the Complaint, and for the reasons set out above, the Roopani managerial businesses, Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, and the Roopani Family, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count XV Defendants") intentionally caused to be prepared and mailed and/or wired false medical documentation, including records and bills, by Olympic, or knew that such false medical documentation would be mailed and/or wired in the ordinary course of Olympic's business, or should have reasonably foreseen the mailing and/or wire of such false documentation by Olympic and/or by a personal injury attorney on behalf of a patient of Olympic would occur, in furtherance of the Count XIV Defendants' scheme to defraud.

1428.    The proceeds obtained from Allstate through the fraudulent mailings and/or wires constituted proceeds of "specified unlawful activity," namely mail fraud, in violation of 18 U.S.C. § 1341 and wire fraud, in violation of 18 U.S.C. § 1343.

1429.    Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

1430.    Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

1431.    FMCH, LLC d/b/a Elite Health Services owns the building at 3711 Garth Road, Baytown, Texas 77521, where Core operates.

237

1432. Elite Health Services was an umbrella company that managed and controlled the Roopani healthcare businesses, including Core.

1433. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1434. Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

1435. On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1436. Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1437. Sohail Roopani is the president and CEO of Edloe Health.

1438. Anil Roopani is a founder and the CFO of Edloe Health.

1439. Edloe Health, is an umbrella company used by the Roopani family to control and manage Core.

1440. Anil is the CFO of Core.

1441. Core operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1442. Olympic also operates out of 4001 W. Sam Houston Parkway North, Texas 77043.

1443. Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1444. Barketali owns Roop Clap Properties, LLC and its assets.

1445. Olympic and Core also operate out of the following addresses:

- 2416 W Holcombe, Houston Texas 77030; and

- 19875 Southwest Freeway, Houston, Texas 77479.

1446. On information and belief, the aforementioned properties are owned and/or controlled by the Roopani family.

1447.   Elite GP, LLC is a managing member of Core.

1448.   Elite Holdco, L.P. is a managing member of Core.

1449.   Elite HSR, LLC owns Elite Holdco, L.P.

1450.   Elite GP, LLC and Elite HS Holdco, L.P. are partners.

1451.   Pioneer Healthcare, LLC owns Elite GP, LLC.

1452.   Sohail is the director and manager of Olympic.

1453.   The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including Core—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of the Core clinic and Prime.

1454.   This direct and absolute control over Core and Olympic was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopanis, including Prime, for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

1455.   The Count XV Defendants worked together to advance the alleged racketeering operation.

1456.   The Count XV Defendants owned, operated and/or controlled Olympic.

1457.   The Count XV Defendants created false medical records and invoices to support medically unnecessary services. These services were directed and controlled by laypersons and

239

were performed pursuant to an improper self-referral and a predetermined treatment protocol. The services were either not rendered as represented or not rendered at all.

1458. The Count XV Defendants, acting together, through Core MD Management, PLLC and Olympic, participated in an improper and unlawful patient referral scheme wherein Olympic accepted medically unnecessary referrals from Core MD Management, PLLC and others.

1459. Had the Count XV Defendants, their employees and agents, refrained from controlling, directing and participating in the improper self-referral and predetermined treatment protocol scheme through Olympic, then Olympic would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 4.

1460. The Count XV Defendants orchestrated a fraudulent scheme that specifically targeted Allstate and other insurers. They deliberately avoided billing their patients directly, knowing that the patients would not have paid for such exorbitant services. Instead, they leveraged their knowledge that auto insurers, like Allstate, are obligated to pay for legitimate medical services arising from a motor vehicle accident. To bypass the patients and secure payment, they devised a deceptive system: they would not seek payment from the patients but would instead be paid by submitting records and bills directly to Allstate or through LOP agreements with personal injury attorneys.

1461. The objective of the Olympic Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received.

1462. The mail fraud, wire fraud, and racketeering activities conducted by the Count XV Defendants are related, as the underlying predicate acts shared a common objective: to defraud Allstate and other insurance companies. The fraudulent scheme involved the submission of false

medical documentation through the U.S. Mail and/or interstate wires, which induced reliance upon the Count XV Defendants' misrepresentations to obtain payments. The payments were made either directly to Olympic by Allstate or were funneled through the attorneys of Allstate claimants and thereafter were deposited in various accounts in a manner consistent with money laundering.

1463. The Count XV Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1464. Allstate would not have allocated payments for the Count XV Defendants' medical bills if it knew that Olympic's medical documentation was fraudulent.

1465. The Count XV Defendants knew that two (2) or more mailings and/or wires would be sent to demand and receive payment from Allstate, including, but not limited to, those mailings and/or wires identified in the chart annexed hereto at Exhibit 25.

1466. As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued payments to Olympic for the benefit of the Count XV Defendants that would not otherwise have been made.

1467. The Count XV Defendants were engaged in and aware that the funds represented the illicit profits of their scheme and engaged in financial transactions involving the proceeds of their unlawful activity. These transactions were conducted with the purpose of concealing and disguising the nature, source, ownership, and control of Olympic and the unlawful proceeds obtained through their fraudulent scheme.

1468. The Count XV Defendants knew that the financial transactions they initiated, which used proceeds unlawfully obtained from Allstate, were a part of a fraudulent scheme. They conducted these transactions with the intent to conceal the nature, location, source, ownership, and

241

control of the funds and to promote their ongoing effort to defraud Allstate and other victims. These transactions include, but are not limited to, those detailed in the annexed Exhibits 38-38.

1469.   The Count XV Defendants' pattern of fraudulent claims, each of which appeared legitimate on its face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count XV Defendants to continue this unlawful scheme without being detected.

1470.   By mailing and/or wiring numerous fraudulent claim-related documents in furtherance of an ongoing scheme, the Count XV Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

1471.   By laundering money in furtherance of the ongoing scheme, the Count XV Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

1472.   The unlawful activities and other misconduct alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to Olympic for the benefit of the Count XIV Defendants.

1473.   The Count XV Defendants participated in the conduct of the Olympic Enterprise through a pattern of racketeering activities.

1474.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XV Defendants' conduct.

1475.   The Count XV Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1476.   Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Texas.

242

1477.   By virtue of the Count XV Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

**COUNT XVI**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**OLYMPIC SPINE AND JOINT, PLLC ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1478.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1479.   Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali, Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count XVI Defendants") conspired with others to violate 18 U.S.C. § 1962(c) through (or in connection with) the operation of Olympic Spine and Joint, PLLC ("Olympic").

1480.   Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

1481.   Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

1482.   FMCH, LLC d/b/a Elite Health Services owns the building at 3711 Garth Road, Baytown, Texas 77521, where Core operates.

1483. Elite Health Services was an umbrella company that managed and controlled the Roopani healthcare businesses, including Core.

1484. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1485. Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

1486. On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1487. Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1488. Sohail Roopani is the president and CEO of Edloe Health.

1489. Anil Roopani is a founder and the CFO of Edloe Health.

1490. Edloe Health, is an umbrella company used by the Roopani family to control and manage Core.

1491. Anil is the CFO of Core.

1492. Core operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1493. Olympic also operates out of 4001 W. Sam Houston Parkway North, Texas 77043.

1494. Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1495. Barketali owns Roop Clap Properties, LLC and its assets.

1496. Olympic and Core also operate from 2416 W Holcombe, Houston Texas 77030 and 19875 Southwest Freeway, Houston, Texas, 77479.

1497. On information and belief, the aforementioned properties are owned and/or controlled by the Roopani family.

1498. Elite GP, LLC is a managing member of Core.

244

1499.  Elite Holdco, L.P. is a managing member of Core.

1500.  Elite HSR, LLC owns Elite Holdco, L.P.

1501.  Elite GP, LLC and Elite HS Holdco, L.P. are partners.

1502.  Pioneer Healthcare, LLC owns Elite GP, LLC.

1503.  Sohail is the director and manager of Olympic.

1504.  The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including Olympic—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of Olympic.

1505.  This direct and absolute control over Core and Olympic was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's, including Olympic, for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

1506.  The Count XVI Defendants worked together, and with others, to advance the alleged racketeering operation.

1507.  The Count XVI Defendants owned, operated and controlled Olympic. They created false medical records and invoices to support medically unnecessary services that were not rendered as represented, if at all.

1508. The Count XVI Defendants, with others, through Core and Olympic, participated in an improper and unlawful patient referral scheme wherein Olympic, and/or owners, employees or agents were paid by the Count XVI Defendants in cash or kind, for patient referrals.

1509. Had the Count XVI Defendants refrained from participating in the referral scheme, which facilitated the administering of medically unnecessary services, by and through Olympic, then Olympic would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 4.

1510. The objective of the Olympic Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received, deposited and reinvested into the overall scheme.

1511. The mail fraud, wire fraud, and money laundering racketeering activities were related. The predicate acts all had the same objective: to defraud Allstate and other insurance companies. This was done by submitting false medical documentation through the U.S. Mail and/or interstate wires, which induced Allstate to rely on the Count XVI Defendants' misrepresentations and make payments, which they deposited into various accounts that they controlled.

1512. The Count XVI Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1513. Allstate would not have allocated payments for the Count XVI Defendants' medical bills if it knew that the Defendants' medical documentation was fraudulent.

1514. The Count XVI Defendants agreed to further, facilitate, support, and operate the Olympic Enterprise.

1515.   As such, the Count XVI Defendants conspired to violate 18 U.S.C. § 1962(c).

1516.   The purpose of the conspiracy was to obtain payments from Allstate for healthcare services provided to patients through Olympic even though Olympic was not eligible to collect such payments from Allstate because of the unlawful conduct engaged in by the Count XVI Defendants.

1517.   The Count XVI Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the unlawful operation and control of Olympic, the provision of false, fraudulent, and unnecessary healthcare services to Olympic patients, and the creation and submission to Allstate of false medical documentation that materially misrepresented Olympic's reimbursement eligibility.

1518.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments to (or for the benefit of) Olympic as a result of the Count XVI Defendants' unlawful conduct described herein.

1519.   By virtue of the Count XVI Defendants' violations of 18 U.S.C. § 1962(d), Allstate is entitled to recover from each of the Defendants identified, three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of the suit, including reasonable attorney's fees.

## COUNT XVII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### PRIME ORTHOPEDIC, PLLC ENTERPRISE
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1520.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

247

1521. Prime Orthopedic, PLLC ("Prime") constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

1522. In connection with each of the claims identified within the Complaint, and for the reasons set out above, the Roopani managerial businesses, Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, and the Roopani Family, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count XVII Defendants") intentionally caused to be prepared and mailed and/or wired false medical documentation, including records and bills, by Prime, or knew that such false medical documentation would be mailed and/or wired in the ordinary course of Prime's business, or should have reasonably foreseen the mailing and/or wire of such false documentation by Prime and/or by a personal injury attorney on behalf of a patient of Prime would occur, in furtherance of the Count XVII Defendants' scheme to defraud.

1523. The proceeds obtained from Allstate through the fraudulent mailings and/or wires constituted proceeds of "specified unlawful activity," namely mail fraud, in violation of 18 U.S.C. § 1341 and wire fraud, in violation of 18 U.S.C. § 1343.

1524. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

1525. Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

1526. FMCH, LLC d/b/a Elite Health Services owns the building at 3711 Garth Road, Baytown, Texas 77521, where Core operates.

1527. Elite Health Services was an umbrella company that managed and controlled the Roopani healthcare businesses, including Core.

1528. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1529. Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

1530. On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1531. Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1532. Sohail Roopani is the president and CEO of Edloe Health.

1533. Anil Roopani is a founder and the CFO of Edloe Health.

1534. Edloe Health, is an umbrella company used by the Roopani family to control an manage Core.

1535. Anil is the CFO of Core.

1536. Core operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1537. Prime also operates out of 4001 W. Sam Houston Parkway North, Texas 77043.

1538. Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1539. Barketali owns Roop Clap Properties, LLC and its assets.

1540. Prime and Core also operate from 2416 W Holcombe, Houston Texas 77030 and 19875 Southwest Freeway, Houston, Texas, 77479.

1541. On information and belief, the aforementioned properties are controlled by the Roopani family.

1542. Elite GP, LLC is a managing member of Core.

249

1543. Elite Holdco, L.P. is a managing member of Core.

1544. Elite HSR, LLC owns Elite Holdco, L.P.

1545. Elite Holdco, L.P. owns Prime Management.

1546. On information and belief, Prime Management controls the billing and accounts receivables for Prime.

1547. Sohail is the director and manager of Prime.

1548. Elite GP, LLC and Elite HS Holdco, L.P. are partners.

1549. Pioneer Healthcare, LLC owns Elite GP, LLC.

1550. The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including Prime—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of Prime.

1551. This direct and absolute control over Core and Prime was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's, including Prime, for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

1552. The Count XVII Defendants worked together to advance the alleged racketeering operation.

1553. The Count XVII Defendants owned, operated and/or controlled Prime.

1554. The Count XVII Defendants created false medical records and invoices to support medically unnecessary services. These services were directed and controlled by laypersons and were performed pursuant to an improper self-referral and a predetermined treatment protocol. The services were either not rendered as represented or not rendered at all.

1555. The Count XVII Defendants, acting together, through Core MD Management, PLLC and Prime, participated in an improper and unlawful patient referral scheme wherein Prime accepted medically unnecessary referrals from Core MD Management, PLLC and others.

1556. Had the Count XVII Defendants, their employees and agents, refrained from controlling, directing and participating in the improper self-referral and predetermined treatment protocol scheme through Prime, then Prime would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 5.

1557. The Count XVII Defendants orchestrated a fraudulent scheme that specifically targeted Allstate and other insurers. They deliberately avoided billing their patients directly, knowing that the patients would not have paid for such exorbitant services. Instead, they leveraged their knowledge that auto insurers, like Allstate, are obligated to pay for legitimate medical services arising from a motor vehicle accident. To bypass the patients and secure payment, they devised a deceptive system: they would not seek payment from the patients but would instead be paid by submitting records and bills directly to Allstate or through LOP agreements with personal injury attorneys.

1558. The objective of the Prime Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received.

251

1559. The mail fraud, wire fraud, and money laundering racketeering activities conducted by the Count XVII Defendants are related, as the underlying predicate acts shared a common objective: to defraud Allstate and other insurance companies. The fraudulent scheme involved the submission of false medical documentation through the U.S. Mail and/or interstate wires, which induced reliance upon the Count XVII Defendants' misrepresentations to obtain payments. The payments were made either directly to Prime by Allstate or were funneled through the attorneys of Allstate claimants and thereafter were deposited in various accounts in a manner consistent with money laundering.

1560. The Count XVII Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1561. Allstate would not have allocated payments for the Count XVII Defendants' medical bills if it knew that Prime's medical documentation was fraudulent.

1562. The Count XVII Defendants knew that two (2) or more mailings and/or wires would be sent to demand and receive payment from Allstate, including, but not limited to, those mailings and/or wires identified in the chart annexed hereto at Exhibit 26.

1563. As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued payments to Prime for the benefit of the Count XVII Defendants that would not otherwise have been made.

1564. The Count XVII Defendants were engaged in and aware that the funds represented the illicit profits of their scheme and engaged in financial transactions involving the proceeds of their unlawful activity. These transactions were conducted with the purpose of concealing and disguising the nature, source, ownership, and control of Prime and the unlawful proceeds obtained through their fraudulent scheme.

1565. The Count XVII Defendants knew that the financial transactions they initiated, which used proceeds unlawfully obtained from Allstate, were a part of a fraudulent scheme. They conducted these transactions with the intent to conceal the nature, location, source, ownership, and control of the funds and to promote their ongoing effort to defraud Allstate and other victims. These transactions include, but are not limited to, those detailed in the annexed Exhibits 41-42.

1566. The Count XVII Defendants' pattern of fraudulent claims, each of which appeared legitimate on its face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count XVII Defendants to continue this unlawful scheme without being detected.

1567. By mailing and/or wiring numerous fraudulent claim-related documents in furtherance of an ongoing scheme, the Count XVII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

1568. By laundering money in furtherance of the ongoing scheme, the Count XVII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

1569. The unlawful activities and other misconduct alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to Prime for the benefit of the Count XVII Defendants.

1570. The Count XVII Defendants participated in the conduct of the Prime Enterprise through a pattern of racketeering activities.

1571. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XVII Defendants' conduct.

1572. The Count XVII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1573. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Texas.

1574. By virtue of the Count XVII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

**COUNT XVIII**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**PRIME ORTHOPEDIC, PLLC ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

1575. Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1576. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count XVIII Defendants") conspired with others to violate 18 U.S.C. § 1962(c) through (or in connection with) the operation of Prime Orthopedic, PLLC ("Prime").

1577. Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own FMCH, LLC d/b/a Elite Health Services.

1578. Sohail Roopani is the owner and/or manager of FMCH, LLC d/b/a Elite Health Services.

254

1579.  FMCH, LLC d/b/a Elite Health Services owns the building at 3711 Garth Road, Baytown, Texas 77521, where Core operates.

1580.  Elite Health Services was an umbrella company that managed and controlled the Roopani healthcare businesses, including Core.

1581.  Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. own Sunny Trail Investments, LLC d/b/a Edloe Ventures.

1582.  Sohail is the president and CEO of Sunny Trail Investment d/b/a Edloe Ventures.

1583.  On information and belief, Edloe Ventures owns and controls the subsidiary, Edloe Health, LLC.

1584.  Edloe Health, LLC is the umbrella company that replaced Elite Health Services.

1585.  Sohail Roopani is the president and CEO of Edloe Health.

1586.  Anil Roopani is a founder and the CFO of Edloe Health.

1587.  Edloe Health, is an umbrella company used by the Roopani family to control an manage Core.

1588.  Anil is the CFO of Core.

1589.  Core operates at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1590.  Prime also operates out of 4001 W. Sam Houston Parkway North, Texas 77043.

1591.  Roop Clay Properties, LLC is listed as the owner of the property located at 4001 W Sam Houston Parkway North, Houston, Texas 77043.

1592.  Barketali owns Roop Clap Properties, LLC and its assets.

1593.  Prime and Core also operate from 2416 W Holcombe, Houston Texas 77030 and 19875 Southwest Freeway, Houston, Texas, 77479.

1594. On information and belief, the aforementioned properties are controlled by the Roopani family.

1595. Elite GP, LLC is a managing member of Core.

1596. Elite Holdco, L.P. is a managing member of Core.

1597. Elite HSR, LLC owns Elite Holdco, L.P.

1598. Elite Holdco, L.P. owns Prime Management.

1599. On information and belief, Prime Management controls the billing and accounts receivables for Prime.

1600. Sohail is the director and manager of Prime.

1601. Elite GP, LLC and Elite HS Holdco, L.P. are partners.

1602. Pioneer Healthcare, LLC owns Elite GP, LLC.

1603. The Roopani family/entities employed a convoluted, multifaceted corporate structure—achieved through the ownership and control of numerous entities (including Core—to obscure violations of the corporate practice of medicine and insulate themselves from liability for improper self-referrals, even while maintaining direct control of the Core clinic and Prime.

1604. This direct and absolute control over Core and Prime was used to implement a fraudulent scheme: dictating a predetermined treatment plan and systematically referring all patients to these other businesses owned and/or controlled by the Roopani's, including Prime, for subsequent treatment procedures and diagnostic testing. These subsequent procedures and tests were medically unnecessary, serving primarily to maximize revenue for the Roopani-controlled network rather than providing appropriate patient care. This practice represents an abuse of control, a violation of medical ethics, and a fraudulent scheme designed to dictate patient treatment for financial gain under the protection of an intentionally complex corporate veil.

256

1605.   The Count XVIII Defendants worked together, and with others, to advance the alleged racketeering operation.

1606.   The Count XVIII Defendants owned, operated and controlled Prime.  They created false medical records and invoices to support medically unnecessary services that were not rendered as represented, if at all.

1607.   The Count XVIII Defendants, with others, through Core and Prime, participated in an improper and unlawful patient referral scheme wherein Prime, and/or  owners, employees or agents were paid by the Count XVIII Defendants in cash or kind, for patient referrals.

1608.   Had the Count XVIII Defendants refrained from participating in the referral scheme which facilitated the administering of medically unnecessary services, by and through Prime, then Prime would not have been able to submit false records and invoices to the Allstate claimants as is set out in Exhibit 5.

1609.   The objective of the Prime Enterprise was to extract money from Allstate by using false and fraudulent bills and records to induce Allstate to rely on these misrepresentations when making payments that the Defendants ultimately received, deposited and reinvested into the overall scheme.

1610.   The mail fraud, wire fraud, and money laundering racketeering activities were related. The predicate acts all had the same objective: to defraud Allstate and other insurance companies. This was done by submitting false medical documentation through the U.S. Mail and/or interstate wires, which induced Allstate to rely on the Count XVIII Defendants' misrepresentations and make payments, which they deposited into various accounts that they controlled.

1611. The Count XVIII Defendants' repeated predicate acts occurred over a substantial period of time exceeding years before being detected by Allstate.

1612. Allstate would not have allocated payments for the Count XVIII Defendants' medical bills if it knew that the Defendants' medical documentation was fraudulent.

1613. The Count XVIII Defendants agreed to further, facilitate, support, and operate the Prime Enterprise.

1614. As such, the Count XVIII Defendants conspired to violate 18 U.S.C. § 1962(c).

1615. The purpose of the conspiracy was to obtain payments from Allstate for healthcare services provided to patients through Prime even though Prime was not eligible to collect such payments from Allstate because of the unlawful conduct engaged in by the Count XVIII Defendants.

1616. The Count XVIII Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the unlawful operation and control of Prime, the provision of false, fraudulent, and unnecessary healthcare services to Prime patients, and the creation and submission to Allstate of false medical documentation that materially misrepresented Prime's reimbursement eligibility.

1617. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments to (or for the benefit of) Prime as a result of the Count XVIII Defendants' unlawful conduct described herein.

1618. By virtue of the Count XVIII Defendants' violations of 18 U.S.C. § 1962(d), Allstate is entitled to recover from each of the Defendants identified, three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of the suit, including reasonable attorney's fees.

## COUNT XIX
## COMMON LAW FRAUD
### Against All Defendants

1619.　Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1620.　The scheme to defraud perpetrated by Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC, Clay Healthcare Services, LLC d/b/a Edloe Imaging - West Houston, Med Center Healthcare Services, L.P. d/b/a Edloe Imaging - Medical Center, Grand Parkway Imaging & Sleep Center, Inc. d/b/a Edloe Imaging - Sugar Land, Focus Medcare, Inc. d/b/a Edloe Imaging - Baytown, Pain Alleviation and Interventional Needs, PLLC, Centers for Pain Relief, PLLC, Olympic Spine and Joint, PLLC, Prime Orthopedic, PLLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count XIX Defendants"), was dependent upon a succession of material misrepresentations of fact that the Count XIX Defendants were actually and lawfully rendering medically necessary treatment and services and were entitled to collect payments from Allstate.

1621.　The false representations made by the Count XIX Defendants include, but are not limited to, those discussed in the medical documentation submitted to Allstate concerning the legitimacy of healthcare services purportedly provided to patients, and the actual ownership and control of Core, EHS-Clay, EHS-Med Center, EHS-Grand Parkway, EHS-Focus, PAIN, CPR, Olympic, and Prime.

259

1622. The Count XIX Defendants' representations were false or required disclosure of additional facts to render the information furnished not misleading.

1623. The misrepresentations were intentionally made by the Count XIX Defendants in furtherance of their scheme to defraud and deceive Allstate by submitting, causing to be submitted, and/or knowing that fraudulent claims for payment would be submitted to Allstate.

1624. The Count XIX Defendants' misrepresentations were known by them to be false, or were made in reckless disregard of the truth, and were made for the purpose of inducing Allstate to make payments for claims that are not compensable under Texas law.

1625. Allstate justifiably relied upon such material misrepresentations to its detriment in paying numerous non-meritorious bills for medical expenses pursuant to insurance claims and in incurring expenses related to the adjustment and processing of claims submitted by and on behalf of the Count XIX Defendants.

1626. As a direct and proximate result of the Count XIX Defendants' fraudulent representations and acts, Allstate has been damaged as previously described herein.

## COUNT XX
## CIVIL CONSPIRACY TO COMMIT FRAUD
### Against All Defendants

1627. Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1628. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC, Clay Healthcare Services, LLC d/b/a Edloe Imaging - West Houston, Med Center Healthcare Services, L.P. d/b/a Edloe Imaging - Medical Center, Grand Parkway Imaging & Sleep Center, Inc. d/b/a Edloe Imaging - Sugar Land, Focus

Medcare, Inc. d/b/a Edloe Imaging - Baytown, Pain Alleviation and Interventional Needs, PLLC, Centers for Pain Relief, PLLC, Olympic Spine and Joint, PLLC, Prime Orthopedic, PLLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count XX Defendants"), combined and concerted to accomplish the unlawful purpose of defrauding Allstate by submitting claims for payment to which they were not entitled because the Defendants, collectively, operated an unlawful self-referral scheme and a referral scheme with other providers. These schemes were used to submit claims for services that were never rendered or were not medically reasonable or necessary.

1629. The Count XX Defendants formed a meeting of the minds and worked together to achieve an unlawful purpose (namely, defrauding Allstate for personal gain).

1630. This purpose was known to all of the Count XX Defendants and intentionally pursued by them.

1631. The Count XX Defendants committed unlawful and overt acts by billing Allstate for services that were not actually provided as represented, were not reasonably necessary, were not lawfully rendered, were fraudulently billed, and by creating and disseminating false medical documentation to accompany their fraudulent bills.

1632. In reasonable reliance on the false medical documentation submitted by the Count XX Defendants, Allstate paid certain of the claims submitted before it knew about the Defendants fraudulent activity.

1633. All of the Count XX Defendants directly benefited from the payments made to Core, EHS-Clay, EHS-Med Center, EHS-Grand Parkway, EHS-Focus, PAIN, CPR, Olympic, and Prime.

261

1634. All of the Count XX Defendants actively and intentionally partook in a scheme to defraud Allstate and also encouraged and aided other Count XX Defendants in the commission of acts done for the benefit of all Count XX Defendants and to the unjustified detriment of Allstate.

1635. Accordingly, all of the Count XX Defendants are jointly and severally liable for the fraud perpetrated on Allstate by each other defendant pursuant to their conspiracy.

## COUNT XXI
### MONEY HAD AND RECEIVED
**Against All Defendants**

1636. Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1637. Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC, Clay Healthcare Services, LLC d/b/a Edloe Imaging - West Houston, Med Center Healthcare Services, L.P. d/b/a Edloe Imaging - Medical Center, Grand Parkway Imaging & Sleep Center, Inc. d/b/a Edloe Imaging - Sugar Land, Focus Medcare, Inc. d/b/a Edloe Imaging - Baytown, Pain Alleviation and Interventional Needs, PLLC, Centers for Pain Relief, PLLC, Olympic Spine and Joint, PLLC, Prime Orthopedic, PLLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D. (collectively, the "Count XXI Defendants") submitted claims to Allstate that caused Allstate to pay money based upon a reasonable belief in the veracity of the Count XXI Defendants' medical records and bills.

1638. The Count XXI Defendants wrongfully obtained and benefited from payments from Allstate through the fraudulent scheme detailed herein.

1639.   Goods and services billed by the Count XXI Defendants that were not actually provided as represented, were not reasonably necessary, were not lawfully rendered, or were fraudulently billed had no value.

1640.   Money that the Count XXI Defendants obtained from Allstate for goods and services that were not actually provided as represented, were not reasonably necessary, were not lawfully rendered, or were fraudulently billed belongs to Allstate in equity and good conscience, and should be returned to Allstate.

1641.   The Count XXI Defendants' retention of these payments would violate fundamental principles of justice, equity, and good conscience.

## COUNT XXII
### DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
**(Against Core MD Management, PLLC f/k/a Core MD Management, LLC, Clay Healthcare Services, LLC d/b/a Edloe Imaging - West Houston and d/b/a Elite Health Services-West Houston, Med Center Healthcare Services, L.P. d/b/a Edloe Imaging - Medical Center and d/b/a Elite Health Services – Medical Center, Grand Parkway Imaging & Sleep Center, Inc. d/b/a Edloe Imaging - Sugar Land and d/b/a Elite Health Services – Sugar Land, Focus Medcare, Inc. d/b/a Edloe Imaging - Baytown, Pain Alleviation and Interventional Needs, PLLC f/k/a Pain Alleviation and Interventional Needs, LLC, Centers for Pain Relief, PLLC, Olympic Spine and Joint, PLLC, and Prime Orthopedic, PLLC)**

1642.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-793 as if set forth fully herein.

1643.   Core MD Management, PLLC, Clay Healthcare Services, LLC d/b/a Edloe Imaging - West Houston, Med Center Healthcare Services, L.P. d/b/a Edloe Imaging - Medical Center, Grand Parkway Imaging & Sleep Center, Inc. d/b/a Edloe Imaging - Sugar Land, Focus Medcare, Inc. d/b/a Edloe Imaging - Baytown, Pain Alleviation and Interventional Needs, PLLC, Centers for Pain Relief, PLLC, Olympic Spine and Joint, PLLC, and Prime Orthopedic, PLLC (collectively, the "Count XXII Defendants") routinely engaged in the following unlawful activity:

263

- Unlawful and improper ownership and/or control of named medical facilities;

- Unlawful patient self-referral;

- Engaged in an unlawful and improper fee-splitting and patient referral agreements with others, which involved illegal kickback payments;

- Ceded medical decision-making to unlicensed laypersons who dictate and control the healthcare services (consultations, treatment, and procedures) administered to Allstate claimants;

- Fraudulently billed for a medically unnecessary services pursuant to predetermined treatment protocol regardless of the Allstate claimants' individual medical needs, including unnecessary injections and other medical procedures purportedly performed at Core, PAIN, CPR, Olympic, and Prime;

- Fraudulently billed for services that were not rendered as represented;

- Fraudulently billed for services that were not rendered; and

- Collected and laundered payments issued by Allstate for the above referenced fraudulent services involving Allstate claimants.

1644.   Pursuant to Texas law, an insurer is liable to pay only for reasonable and necessary expenses arising out of a motor vehicle accident. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 876 (Tex. 2021); *Havgood v. De Escabedo*, 356 S.W.3d 390, 391 (Tex. 2011).

1645.   Moreover, a "health care provider commits unprofessional conduct if the health care provider . . . knowingly presents or causes to be presented a false or fraudulent claim for the payment of a loss under an insurance policy." Tex. Occ. Code § 105.002(a)(1).

1646.   Where a provider is unable to show that an expense has been incurred for a reasonably necessary product or service arising out of a motor vehicle accident, there can be no finding of a breach of the insurer's duty to pay, and thus no finding of liability with regard to that expense.

1647. The Count XXII Defendants submitted, continue to submit, and cause to be submitted claims for unnecessary and/or unlawfully rendered medical services to Allstate, and other claims remain pending with Allstate.

1648. The Count XXII Defendants will continue to submit and cause to be submitted claims to Allstate absent a declaration by this Court that their activities are unlawful and that Allstate has no obligation to pay pending and previously-denied claims submitted by or on behalf of any of the Count XXII Defendants.

1649. Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XXII Defendants billed for unlawful and medically unnecessary services that are not compensable under Texas law.

1650. Allstate also requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XXII Defendants were engaged in a fraudulent scheme whereby they billed for fraudulent, unnecessary, and unlawful services, and submitted unreasonable charges for the same to Allstate at all relevant times.

1651. As such, the Count XXII Defendants have no standing to submit, pursue, or receive benefits, or any other payment from Allstate, and Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XXII Defendants cannot seek payment from Allstate for benefits under any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the fraudulent conduct detailed in the within Complaint.

1652. Allstate further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XXII Defendants cannot balance bill or otherwise seek

265

payment from any person insured under an Allstate policy or for whom Allstate is the responsible payor related to the fraudulent conduct detailed in the within Complaint.

## X.　DEMAND FOR RELIEF

WHEREFORE, plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate North American Insurance Company, Allstate Vehicle and Property Insurance Company, and Allstate County Mutual Insurance Company respectfully pray that judgment enter in their favor as follows:

**COUNT I**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**CORE MD MANAGEMENT, PLLC F/K/A CORE MD MANAGEMENT, LLC**
**ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a)　AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)　AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)　GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)　GRANT all other relief this Court deems just.

**COUNT II**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**CORE MD MANAGEMENT, PLLC F/K/A CORE MD MANAGEMENT, LLC**
**ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS**

266

**Holdco L.P., Elite GP, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a) AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c) GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT III**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**CLAY HEALTHCARE SERVICES, LLC D/B/A EDLOE IMAGING - WEST HOUSTON AND D/B/A ELITE HEALTH SERVICES-WEST HOUSTON ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a) AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c) GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT IV**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**CLAY HEALTHCARE SERVICES LLC D/B/A EDLOE IMAGING - WEST HOUSTON AND D/B/A ELITE HEALTH SERVICES-WEST HOUSTON ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Elite Health, LLC, Elite HSR, LLC, Elite HS**

**Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a)    AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT V
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### MED CENTER HEALTHCARE SERVICES, L.P. D/B/A EDLOE IMAGING - MEDICAL CENTER AND D/B/A ELITE HEALTH SERVICES – MEDICAL CENTER ENTERPRISE
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a)    AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT VI
### VIOLATIONS OF 18 U.S.C. § 1962(d)

**MED CENTER HEALTHCARE SERVICES, L.P. D/B/A EDLOE IMAGING - MEDICAL CENTER AND D/B/A ELITE HEALTH SERVICES – MEDICAL CENTER ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a) AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c) GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT VII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
**GRAND PARKWAY IMAGING & SLEEP CENTER, INC. D/B/A EDLOE IMAGING - SUGAR LAND AND D/B/A ELITE HEALTH SERVICES – SUGAR LAND ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a) AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c) GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT VIII**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**GRAND PARKWAY IMAGING & SLEEP CENTER, INC. D/B/A EDLOE IMAGING -**
**SUGAR LAND AND D/B/A ELITE HEALTH SERVICES – SUGAR LAND**
**ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC**
**FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS**
**Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management,**
**LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a)    AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

**COUNT IX**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**FOCUS MEDCARE, INC. D/B/A EDLOE IMAGING - BAYTOWN ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC,**
**FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS**
**Holdco, L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management,**
**LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

270

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT X
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### FOCUS MEDCARE, INC. D/B/A EDLOE IMAGING - BAYTOWN ENTERPRISE
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XI
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### PAIN ALLEVIATION AND INTERVENTIONAL NEEDS, PLLC F/K/A PAIN ALLEVIATION AND INTERVENTIONAL NEEDS, LLC ENTERPRISE
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

271

(a)    AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

**COUNT XII**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**PAIN ALLEVIATION AND INTERVENTIONAL NEEDS, PLLC F/K/A PAIN ALLEVIATION AND INTERVENTIONAL NEEDS, LLC ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a)    AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

**COUNT XIII**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**CENTERS FOR PAIN RELIEF, PLLC ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

272

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

**COUNT XIV**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**CENTERS FOR PAIN RELIEF, PLLC ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

**COUNT XV**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**OLYMPIC SPINE AND JOINT, PLLC ENTERPRISE**
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a)    AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XVI
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### OLYMPIC SPINE AND JOINT, PLLC ENTERPRISE
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a)    AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XVII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### PRIME ORTHOPEDIC, PLLC ENTERPRISE
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

274

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XVIII
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### PRIME ORTHOPEDIC, PLLC ENTERPRISE
**(Against Sunny Trail Investments, LLC d/b/a Edloe Ventures, Pioneer Healthcare, LLC, FMCH, LLC d/b/a Elite Health Services, Edloe Health, LLC, Elite HSR, LLC, Elite HS Holdco L.P., Elite GP, LLC, Core MD Management, PLLC f/k/a Core MD Management, LLC, Sohail Roopani, Barketali Roopani, Anil Roopani, and Rahil Roopani, M.D.)**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XIX
### COMMON LAW FRAUD
### Against All Defendants

(a)     AWARD Allstate its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

275

(b)     AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

## COUNT XX
### CIVIL CONSPIRACY TO COMMIT FRAUD
**Against All Defendants**

(a)     AWARD Allstate its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

## COUNT XXI
### MONEY HAD AND RECEIVED
**Against All Defendants**

(a)     AWARD Allstate restitution in an amount to be determined at trial; and

(b)     GRANT all other relief this Court deems just.

## COUNT XXII
### DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
**(Against Core MD Management, PLLC f/k/a Core MD Management, LLC, Clay Healthcare Services, LLC d/b/a Edloe Imaging - West Houston and d/b/a Elite Health Services-West Houston, Med Center Healthcare Services, L.P. d/b/a Edloe Imaging - Medical Center and d/b/a Elite Health Services – Medical Center, Grand Parkway Imaging & Sleep Center, Inc. d/b/a Edloe Imaging - Sugar Land and d/b/a Elite Health Services – Sugar Land, Focus Medcare, Inc. d/b/a Edloe Imaging - Baytown, Pain Alleviation and Interventional Needs, PLLC f/k/a Pain Alleviation and Interventional Needs, LLC, Centers for Pain Relief, PLLC, Olympic Spine and Joint, PLLC, and Prime Orthopedic, PLLC)**

(a)     DECLARE that Allstate has no obligation to pay pending and previously-denied insurance claims submitted by Core MD Management, PLLC f/k/a Core MD Management, LLC, Clay Healthcare Services, LLC d/b/a Edloe Imaging - West Houston and d/b/a Elite Health Services-West Houston, Med Center Healthcare Services, L.P. d/b/a Edloe Imaging - Medical

276

Center and d/b/a Elite Health Services – Medical Center, Grand Parkway Imaging & Sleep Center, Inc. d/b/a Edloe Imaging - Sugar Land and d/b/a Elite Health Services – Sugar Land, Focus Medcare, Inc. d/b/a Edloe Imaging - Baytown, Pain Alleviation and Interventional Needs, PLLC f/k/a Pain Alleviation and Interventional Needs, LLC, Centers for Pain Relief, PLLC, Olympic Spine and Joint, PLLC, and Prime Orthopedic, PLLC.

(b)    DECLARE that Core MD Management, PLLC f/k/a Core MD Management, LLC, Clay Healthcare Services, LLC d/b/a Edloe Imaging - West Houston and d/b/a Elite Health Services-West Houston, Med Center Healthcare Services, L.P. d/b/a Edloe Imaging - Medical Center and d/b/a Elite Health Services – Medical Center, Grand Parkway Imaging & Sleep Center, Inc. d/b/a Edloe Imaging - Sugar Land and d/b/a Elite Health Services – Sugar Land, Focus Medcare, Inc. d/b/a Edloe Imaging - Baytown, Pain Alleviation and Interventional Needs, PLLC f/k/a Pain Alleviation and Interventional Needs, LLC, Centers for Pain Relief, PLLC, Olympic Spine and Joint, PLLC, and Prime Orthopedic, PLLC cannot seek payment from Allstate (or any Allstate Insured) pursuant to any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the fraudulent conduct detailed in the within Complaint;

(c)    DECLARE that Core MD Management, PLLC f/k/a Core MD Management, LLC, Clay Healthcare Services, LLC d/b/a Edloe Imaging - West Houston and d/b/a Elite Health Services-West Houston, Med Center Healthcare Services, L.P. d/b/a Edloe Imaging - Medical Center and d/b/a Elite Health Services – Medical Center, Grand Parkway Imaging & Sleep Center, Inc. d/b/a Edloe Imaging - Sugar Land and d/b/a Elite Health Services – Sugar Land, Focus Medcare, Inc. d/b/a Edloe Imaging - Baytown, Pain Alleviation and Interventional Needs, PLLC f/k/a Pain Alleviation and Interventional Needs, LLC, Centers for Pain Relief, PLLC, Olympic

277

Spine and Joint, PLLC, and Prime Orthopedic, PLLC cannot balance bill or otherwise seek payment from any person insured under an Allstate policy or for whom Allstate is the responsible payor related to the fraudulent conduct detailed in the within Complaint; and

(d)    GRANT such other relief as this Court deems just and appropriate under Texas law and the principles of equity.

## JURY TRIAL DEMAND

The plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate North American Insurance Company, Allstate Vehicle and Property Insurance Company and Allstate County Mutual Insurance Company, demand a trial by jury on all claims.

[SIGNATURE PAGE FOLLOWS]

KING, TILDEN, MCETTRICK & BRINK, P.C.

*/s/ Nathan A. Tilden*

_____

Nathan A. Tilden
ntilden@ktmpc.com
Douglas D. McInnis
dmcinnis@ktmpc.com
350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214

Attorneys for the Plaintiffs,
*Allstate Insurance Company,*
*Allstate Indemnity Company,*
*Allstate Property and Casualty Insurance Company,*
*Allstate Fire and Casualty Insurance Company,*
*Allstate North American Insurance Company,*
*Allstate Vehicle and Property Insurance Company, and*
*Allstate County Mutual Insurance Company*

Dated: April 10, 2026

**CERTIFICATE OF SERVICE**

I, Nathan A. Tilden, hereby certify that on April 10, 2026, I did file via CM/ECF the **Plaintiffs' Complaint and Demand for Jury Trial.** I hereby certify that, upon issuance of the Summons by the Court, the Complaint and related documents will be served in accordance with Federal Rule of Civil Procedure 4 upon the following Defendants:

| | |
|---|---|
| Anil Roopani<br>4615 Merwin St<br>Houston, TX 77027 | Barketali Roopani<br>3 Enclave Manor Dr.<br>Sugar Land, TX 77479 |
| Centers For Pain Relief, PLLC<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 | Clay Healthcare Services, LLC<br>d/b/a Edloe Imaging - West Houston<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 |
| Core MD Management, PLLC<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 | Edloe Health, LLC<br>4001 W Sam Houston Pkwy N<br>Ste. 140<br>Houston, TX 77043 |
| Elite GP, LLC<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 | Elite HS Holdco, L.P.<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 |
| Elite HSR, LLC<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 | FMCH, LLC<br>d/b/a Elite Health Services<br>c/o Sohail Roopani<br>455 Julie Rivers Drive<br>Sugar Land, TX 77478 |
| Focus Medcare, Inc.<br>d/b/a Edloe Imaging - Baytown<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 | Grand Parkway Imaging & Sleep Center, Inc.<br>d/b/a Edloe Imaging - Sugar Land<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 |
| Med Center Healthcare Services, L.P.<br>d/b/a Edloe Imaging - Medical Center<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 | Olympic Spine and Joint, PLLC<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 |
| Pain Alleviation and Interventional Needs, PLLC<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 | Pioneer Healthcare, LLC<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 |

| | |
|---|---|
| Prime Orthopedic, PLLC<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 | Rahil Roopani, M.D.<br>1800 116th Ave. NE<br>Suite 102<br>Bellevue, WA 98004 |
| Sohail Roopani<br>4001 W Sam Houston Pkwy N<br>Suite 110<br>Houston, TX 77043 | Sunny Trail Investments, LLC<br>d/b/a Edloe Ventures<br>c/o Legalinc Corporate Services Inc.<br>10601 Clarence Dr., Ste. 250<br>Frisco, TX 75033 |

Date: April 10, 2026

*/s/ Nathan A. Tilden*

_____

Nathan A. Tilden